## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAREN A. CHRISTIANSEN, on behalf of herself and all others similarly situated, | Civil Action No. 09-civ-1951 (DC) |
| Plaintiff, | |
| v. | |
| JEFFREY R. IMMELT, BRACKETT B. DENNISTON, III,PAMELA DALEY, KATHRYN A. CASSIDY,JAMIE S. MILLER, JOHN KRENICKI, JOHN F. LYNCH, JOHN G. RICE, and GENERAL ELECTRIC COMPANY, | |
| Defendants. | |
| BRUCE MORGAN, individually and on behalf of all Others Similarly Situated, | Civil Action No. 09-civ-2084 (DC) |
| Plaintiff, | |
| v. | |
| GENERAL ELECTRIC COMPANY, and JEFFREY R. IMMELT, | |
| Defendants. | |
| JAMES KLEIN, on behalf of himself and all others similarly situated, | Civil Action No. 09-civ-2582 (DC) |
| Plaintiff, | |
| v. | |
| GENERAL ELECTRIC COMPANY, JEFFREY R. IMMELT, KEITH S. SHERIN, and JAMIE S. MILLER, | |
| Defendants. | |

DENIS G. PARE, on behalf of himself and
all others similarly situated,

             Plaintiff,

v.

JEFFREY R. IMMELT, BRACKETT B.
DENNISTON, III, PAMELA DALEY,
KATHRYN A. CASSIDY, JAMIE S.
MILLER, JOHN KRENICKI, JOHN F.
LYNCH, JOHN G. RICE, and GENERAL
ELECTRIC COMPANY,

             Defendants.

Civil Action No. 09-civ-2566 (DC)

---

CITY OF BROCKTON
CONTRIBUTORY RETIREMENT
SYSTEM, Individually and
On Behalf of All Others Similarly Situated,

             Plaintiff,

v.

GENERAL ELECTRIC CO., JEFFREY R.
IMMELT, KEITH SHERIN, BRACKETT
B. DENNISTON, PAMELA DALEY,
KATHRYN A. CASSIDY, JAMIE S.
MILLER, JOHN KRENICKI JR., JOHN F.
LYNCH, JOHN G. RICE, MICHAEL
NEAL, James I. Cash, Jr., William M.
Castell, Ann M. Fudge, Claudio X.
Gonzalez, Andrea Jung, Alan G. Lafley,
Robert W. Lane, Ralph S. Larsen, Rochelle
B. Lazarus, Sam Nunn, Roger S. Penske,
Robert J. Swieringa, Robert C. Wright,
Douglas A. Warner iii, GOLDMAN
SACHS & Co., BANC OF AMERICA
SECURITIES LLC, CITIGROUP
GLOBAL MARKETS INC., DEUTSCHE
BANK SECURITIES INC., J.P. MORGAN
SECURITIES INC., MORGAN
STANLEY INC., BARCLAYS CAPITAL

Civil Action No. 09-civ-3787 (DC)

INC., CREDIT SUISSE SECURITIES
(USA) LLC, UBS SECURITIES LLC,
ABN AMRO INC., BANCA IMI S.p.A.,
BNP PARIBAS SECURITIES CORP.,
DAIWA SECURITIES AMERICA INC.,
HSBC SECURITIES (USA) INC., ING
FINANCIAL MARKETS LLC, LLOYDS
TSB BANK PLC, MERRILL LYNCH,
PIERCE FENNER & SMITH INC.,
MITSUBISHI UFJ SECURITIES
INTERNATIONAL plc, MIZUHO
SECURITIES USA INC., SANTANDER
INVESTMENT SECURITIES INC., SG
AMERICAS SECURITIES, LLC,
BLAYLOCK ROBERT VAN LLC,
CASTLEOAK SECURITIES L.P.,
SAMUEL A. RAMIREZ & CO. INC.,
UTENDAHL CAPITAL GROUP, L.L.C.
and THE WILLIAMS CAPITAL GROUP,
L.P.,

                    Defendants.

BIMAL K. GUPTA and POONAM                    Civil Action No. 09-civ-4130
GUPTA, on behalf of themselves and all
others similarly situated,

                    Plaintiffs,

v.

JEFFREY R. IMMELT and GENERAL
ELECTRIC COMPANY,

                    Defendants.

ROBERT SCHUYLER WATSON,
Individually and on behalf of all others
similarly situated,

            Plaintiff,

v.

GENERAL ELECTRIC COMPANY and
JEFFREY R. IMMELT,

           Defendants.

Civil Action No. 09-civ-4152

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE STATE UNIVERSITIES RETIREMENT SYSTEM OF ILLINOIS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF COUNSEL AS LEAD COUNSEL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .........................................................ii-iv

PRELIMINARY STATEMENT .......................................................1

STATEMENT OF FACTS ................................................................3

ARGUMENT...................................................................................4

    I.    THE RELATED ACTIONS SHOULD BE
        CONSOLIDATED...........................................................4

    II.   THE COURT SHOULD APPPOINT SURS
        AS LEAD PLAINTIFF OF THE CLASS ........................7

        A.    SURS Has Met The Procedural
             Requirements of the PSLRA....................................7

        B.    SURS Has The Largest Known Financial
             Interest In The Relief Sought By
             The Class.................................................................8

        C.    SURS Is A Sophisticated Institutional
             Investor That Satisfies The Requirements
             Of Rule 23................................................................9

             1.   SURS Satisfies the Typicality
                  Requirements of Rule 23 ....................................10

             2.   SURS Satisfies the Adequacy
                  Requirement of Rule 23 ......................................11

    III.  THE COURT SHOULD APPROVE SURS'
        SELECTION OF LEAD COUNSEL.............................13

CONCLUSION...............................................................................13

# TABLE OF AUTHORITIES

## CASES

*Constance Sczesny Trust v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y. 2004) ......................................................9

*Glauser v. EVCI Career Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ...............................................5, 10

*In re Cendant Corp. Litig.*,
    264 F.3d 201, 276 (3d Cir. 2001)...............................................13

*In re Doral Fin. Corp. Sec. Litig.*,
    414 F. Supp. 2d 398 (S.D.N.Y. 2006)............................................1

*In re Initial Pub. Offering Sec. Litig*,
    214 F.R.D. 117 (S.D.N.Y. 2002) ...........................................8, 10, 11

*In re Olsten Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ............................................7, 9

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) ....................................................5, 7

*Olsen v. New York Cmty. Bancorp, Inc.*,
    233 F.R.D. 101 (E.D.N.Y. 2005) ...........................................6, 10, 11

## UNREPORTED DECISIONS

*Corwin v. Seizinger*,
    No. 07 Civ. 6728(DC), 2008 WL 123846,
    (S.D.N.Y. Jan. 8, 2008) ...............................................................8-9

*In re Bear Stearns Cos., Sec., Derivative & ERISA Litig.*,
    07-CIV-10453, 2009 WL 50132,
    (S.D.N.Y. Jan. 5, 2009).............................................................1, 5

*In re McDermott Int'l, Inc. Sec. Litig.*,
    No. 08 Civ. 9943(DC), 2009 WL 579502,
    (S.D.N.Y. Mar. 6, 2009) ...............................................................8

*In re Orion Sec. Litig.,*
    No. 08 Civ. 1328(RJS), 2008 WL 2811358,
    (S.D.N.Y. July 8, 2008) ..................................................................5

*Lowinger v. Global Cash Access Holdings, Inc.,*
    No. 08 Civ. 3516(SWK), 2008 WL 2566558,
    (S.D.N.Y. June 26, 2008)...........................................................5, 10

*Vladimir v. Bioenvision Inc.,*
    07 CIV. 6416, 2007 WL 4526532,
    (S.D.N.Y. Dec. 21, 2007)...........................................................12

## STATUTES & RULES

Fed. R. Civ. P. 6(a)(3) ....................................................................7

Fed. R. Civ. P. 23(a) ......................................................................

15 U.S.C. § 77z-1(a)(3)....................................................................7

15 U.S.C. § 77z-1(a)(3)(A)...............................................................8

15 U.S.C. § 77z-1(a)(3)(A)(i)...........................................................7

15 U.S.C. § 77z-1(a)(3)(B)(i) .......................................................2, 8

15 U.S.C. § 77z-1(a)(3)(B)(ii) .........................................................4

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) ..................................................2, 8

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc) ...............................................9

15 U.S.C. § 77z-1(a)(3)(B)(v)..........................................................13

15 U.S.C. § 78u-4(a)(3) ...................................................................7

15 U.S.C. § 78u-4(a)(3)(A)...............................................................8

15 U.S.C. § 78u-4(a)(3)(A)(i)...........................................................7

15 U.S.C. § 78u-4(a)(3)(B)(i) .......................................................2, 8

15 U.S.C. § 78u-4(a)(3)(B)(ii) .........................................................4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ........................................................2, 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)....................................................9

15 U.S.C. § 78u-4(a)(3)(B)(v) ...........................................................13

## OTHER AUTHORITIES

H.R. Conf. Rep. No. 104-369, at 34, 104 Cong. 1 Sess. (1995),
*reprinted in* 1995 U.S.C.C.A.N. 730, 733 (Nov. 28, 1995)........................2, 12, 13

Statement of Managers – The "Private Securities Litigation Reform
Act of 1995," 141 Cong. Rec. H13691-08, at H13700, ............................13

## PRELIMINARY STATEMENT

The State Universities Retirement System ("SURS") of Illinois respectfully submits this memorandum in support of its motion for an Order: (1) consolidating the above-captioned securities class actions (the "Actions") pursuant to Fed. R. Civ. P. 42(a); (2) appointing SURS as Lead Plaintiff pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B) and Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (3) approving SURS' selection of Berman DeValerio as Lead Counsel for the Class.

Presently pending before the Court are seven related securities class actions brought on behalf of purchasers of General Electric Co.'s ("GE" or the "Company") common stock from September 25, 2008 through and including March 19, 2009 ("Class Period")[1] for violations of the Exchange Act and for investors who purchased common stock issued pursuant to secondary offering of $12 billion of GE common stock on October 1, 2008 and ending on October 7, 2008 (the "October Offering") for violations of the Securities Act.

---

[1] Although some of the above-captioned actions allege a shorter class period, counsel on behalf of SURS submits that the longer Class Period asserted in *City of Brockton Contributory Retirement System v. General Electric Co., et al.*, Civil Action No. 09-CIV-3787 (the "Brockton Action") is the most appropriate. Moreover, courts, when faced with multiple class periods at the lead plaintiff stage, have adopted the rule that chooses the most inclusive class period. *See, e.g., In re Bear Stearns Cos., Sec., Derivative & ERISA Litig.*, 07-CIV-10453, 2009 WL 50132, *8 (S.D.N.Y. Jan. 5, 2009) (adopting the longer class period for purposes of determining which movant had the largest financial interest seeking appointment as lead plaintiff); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402-3 (S.D.N.Y. 2006) (adopting longer Class Period at lead plaintiff stage because "it encompasses more potential class members" and noting that narrowing the Class Period, if appropriate at all, should be done at a later stage in the litigation). Thus, for purposes of determining lead plaintiff, SURS adopts the longest Class Period asserted in the Actions.

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(i); 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation and also makes a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

SURS respectfully submits that it believes that it is the "most adequate plaintiff" since SURS suffered losses in the amount of $3,240,256 based on a first-in, first-out ("FIFO") analysis and $2,745,575 based on a last-in, first-out ("LIFO") analysis from its trading in GE securities during the Class Period.[2]  In light of the significant transactions and losses incurred by SURS, SURS believes it has the largest financial interest in the relief sought by this litigation – an interest believed to be greater than that of any competing movant.

Further, SURS satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, as SURS' claims are typical of the other members of the proposed Class and SURS will fairly and adequately represent the Class.  Indeed, SURS, a large, sophisticated public pension fund, is precisely the sort of institutional investor Congress envisioned would head up securities class actions when it enacted the PSLRA.  *See* H.R. Conf. Rep. No. 104-369, at 34, 104 Cong. 1 Sess. (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (Nov. 28, 1995) ("increasing the role of institutional investors in class actions will ultimately benefit the class and courts by improving the quality of

---

[2] A copy of the PSLRA-required Certification submitted by SURS is attached as Exhibit C to the Declaration of Jeffrey C. Block ("Block Decl."). This Certification sets forth the transactions of SURS in GE securities during the relevant period. In addition, charts reflecting calculations of SURS' financial losses from its trading in GE securities are attached as Exhibit D to the Block Decl.

representation in securities class actions"). SURS is also ideally suited to serve as Lead Plaintiff since, having purchased GE common stock during the Class Period and pursuant to GE's October Offering, SURS is capable of representing both the investors who purchased shares on the open market as well as those who purchased shares in the October Offering. In addition, SURS has selected and retained Berman DeValerio, a law firm with significant experience in prosecuting securities fraud class actions, to serve as Lead Counsel for the Class.

As such, SURS respectfully requests that the Court consolidate the above-captioned actions, appoint SURS as Lead Plaintiff of the Class and grant their selection of Berman DeValerio as Lead Counsel.

## STATEMENT OF FACTS

Defendant GE is a corporation with its principal place of business in Fairfield, Connecticut. GE operates as a technology, media, and financial services company worldwide. The Company produces a variety of items, from aircraft engines to medical imaging equipment, and is incorporated in New York. GE has paid a quarterly dividend to investors every year since 1899, and has not cut its dividend since 1938.

GE has a massive financial services arm, GE Capital, which operates in commercial finance, consumer finance, leasing and real estate services, and is GE's largest segment. GE Capital is incorporated in Delaware.

The actions charge that GE misled its investors concerning the financial stability of the Company's financing subsidiary, GE Capital. In particular, it is alleged that GE misled investors as to the true credit quality of GE Capital and that this division had billions of troubled assets on its books for which GE did not properly account for and hid

3

from investors. As a result of the problems at GE Capital, GE was forced to dramatically cut its quarterly dividend, contrary to the prior public statements made by GE executives.

On February 27, 2009, GE surprised investors when it announced that it would cut its common stock dividend by over a third, to $0.10 per share, for the second half of 2009. In reaction to this news, GE's stock price plunged from $9.10 per share at close on February 26, 2009 to $7.60 per share on Monday, March 2, 2009. On March 5, 2009 GE's stock price fell to its lowest level in years, to close at $6.66 per share, when defendant Sherin, GE's CFO, said on CNBC's "Squawk Box" segment that roughly 98% of GE Capital's assets are carried at historic cost and are not marked to market. Finally, on March 18, 2009 GE held a conference call with investors to provide further details as to the make up of GE Capital. GE disclosed, for the first time, that "[l]arge amounts of GE Capital's loans are to borrowers with junk, or sub investment grade, ratings." *Brockton* Complaint ¶91. GE's stock price fell from $10.54 per share to $9.54 per share on the disclosures. As a result of defendants' wrongful acts and omissions, SURS and other members of the Class have suffered significant damages.

## ARGUMENT

### I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 77z-1(a)(3)(B)(ii); 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *Id.*

4

Courts have broad discretion under Rule 42(a) of the Federal Rules of Civil Procedure to consolidate actions and, in making that determination, "are to consider whether judicial economy favors consolidation." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007). "Consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports." *Lowinger v. Global Cash Access Holdings, Inc.*, No. 08 Civ. 3516(SWK), 2008 WL 2566558, at *1 (S.D.N.Y. June 26, 2008) (citing *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006)).

Moreover, "[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *Kaplan*, 240 F.R.D. at 91; *see also In re Bear Stearns*, 2009 WL 50132 at *6-7 (rejecting argument that differing class periods and ways in which parties acquired shares prevented consolidation); *In re Orion Sec. Litig.*, No. 08 Civ. 1328(RJS), 2008 WL 2811358, at *3 (S.D.N.Y. July 8, 2008) (finding consolidation appropriate even though complaints alleged different securities law violations and named different defendants).

As stated previously, seven securities class action complaints have been filed in the U.S. District Court for the Southern District of New York on behalf of investors that purchased or acquired shares in GE stock:

| **Case Number** | **Abbreviated Case Name** | **Date Filed** |
|---|---|---|
| 09-CIV-1951 | *Christiansen v. Immelt, et al.* | 03/03/2009 |
| 09-CIV-2084 | *Morgan v. General Electric Co., et al.* | 03/06/2009 |

5

| 09-CIV-2566 | *Pare v. Immelt, et al.* | 03/19/2009 |
|---|---|---|
| 09-CIV-2582 | *Klein v. General Electric Co., et al.* | 03/20/2009 |
| 09-CIV-3787 | *City of Brockton Contributory Retirement Sys. v. General Electric Co., et al.* | 04/14/2009 |
| 09-CIV-4130 | *Gupta, et al. v. Immelt, et al.* | 04/27/2009 |
| 09-CIV-4152 | *Watson v. General Electric Co., et al.* | 04/28/2009 |

Consolidation of the Actions is appropriate since all of the actions assert similar claims based on the same or similar legal and factual allegations.[3] Here, all the actions charge GE with misleading its investors concerning the maintenance of the $.31 per share quarterly dividend. The so-called "Dividend Actions" assert a class period of January 23, 2009 through February 27, 2009. The *Brockton* action expands the action by lengthening the class period at the start by four months and lengthening it at the end by 20 days. The gist of the *Brockton* action is that financial problems at GE Capital were withheld from investors and those problems ultimately led to GE having to cut its quarterly dividend. All the Actions share a common legal question: to wit, whether defendants' misrepresentations violated federal securities laws and whether GE's stock price was artificially inflated. Moreover, any minor differences between the Actions can be resolved when the court-appointed lead plaintiff files a consolidated amended complaint. *See, e.g., Olsen v. New York Cmty. Bancorp, Inc.*, 233 F.R.D. 101, 105 (E.D.N.Y. 2005) (finding consolidation appropriate, noting differences could be resolved upon the filing of a consolidated amended complaint).

---

[3] On April 24, 2009, Robert I. Harwood, counsel for plaintiff Karen A. Christiansen, sent a letter to this Court suggesting that the Brockton Action should not be deemed related to what Mr. Harwood refers to as the "Dividend Actions." By Order date May 1, 2009, the Court accepted the *Brockton* action as a related action.

In addition, the interests of judicial economy weigh heavily in favor of consolidation given the substantial overlap of common questions of law and fact between all of the Actions. *Kaplan*, 240 F.R.D. at 92 (finding that differing causes of action, defendants, and class periods "do not outweigh the interests of judicial economy served by consolidation" and noting that "the 'consolidation of stockholders' suits often benefits both the courts and the parties by expediting pretrial proceedings, avoiding duplication of discovery, and minimizing costs.'") (citing *In re Olsten Sec. Litig.*, 3 F. Supp. 2d 286, 293-4(E.D.N.Y. 1998)). As such, the Court should consolidate the aforementioned cases and any others filed subsequent to this motion which purports to assert claims against defendants in connection with the above-mentioned allegations.

## II.   THE COURT SHOULD APPOINT SURS AS LEAD PLAINTIFF OF THE CLASS

### A.   SURS Has Met The Procedural Requirements of the PSLRA

The PSLRA sets forth detailed procedure for the selection of a lead plaintiff. *See* 15 U.S.C. § 77z-1(a)(3); 15 U.S.C. § 78u-4(a)(3). First, the plaintiff who files the initial complaint must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 77z-1(a)(3)(A)(i); 15 U.S.C. § 78u-4(a)(3)(A)(i). The plaintiff in the *Christiansen* action published a notice on *Globe Newswire* on March 4, 2009, the day after the initial complaint was filed. *See* Block Decl., Exh. A. This notice, in accordance with the PSLRA, indicated that applications for lead plaintiff must be made no later than 60 days from the date on which the notice was published.[4] Plaintiff in the *Brockton*

---

[4] The notice incorrectly states that the lead plaintiff application deadline is Saturday, May 2, 2009, when, pursuant to Fed. R. Civ. P. 6(a)(3), the actual deadline is the following Monday, May 4, 2009. On March 6,

7

action also published a notice on April 15, 2009, which advised the class that the class period was being expanded. See Block Decl. Exh. B.

The PSLRA then provides that any member or members of the purported class may move the court to serve as lead plaintiff within 60 days after publication of the required notice. 15 U.S.C. § 77z-1(a)(3)(A); 15 U.S.C. § 78u-4(a)(3)(A). SURS has satisfied the procedural requirements of the PSLRA by filing a motion seeking lead plaintiff status within this requisite time frame.

### B.   SURS Has The Largest Known Financial Interest In The Relief Sought By The Class

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(i); 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to adopt a rebuttable presumption that the "most adequate plaintiff" is the movant with the "largest financial interest" in the relief sought by the Class, has made a *prima facie* showing that it is an adequate and typical class representative under Rule 23 of the Federal Rules of Civil Procedure, and, as discussed above, has either filed a complaint or a motion seeking lead plaintiff status. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Although the PSLRA does not define the term "largest financial interest," courts have considered the following four factors in making this determination: "(i) the gross number of shares purchased; (ii) the net number of shares purchased; (iii) the net funds spent; and (iv) the net loss." *In re McDermott Int'l, Inc. Sec. Litig.*, No. 08 Civ. 9943(DC), 2009 WL 579502, *2 (S.D.N.Y. Mar. 6, 2009) (citing *In re Initial Pub. Offering Sec. Litig*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002)); *accord Corwin v. Seizinger,*

---

2009, a subsequent notice was filed correctly indicating the May 4, 2009 lead plaintiff deadline. *See* Block Decl., Exh. A.

No. 07 Civ. 6728(DC), 2008 WL 123846, at *2 (S.D.N.Y. Jan. 8, 2008); *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004) (citing *In re Olsten Corp.* 3 F. Supp. 2d at 295).

In light of each of these factors, SURS believes that it has the largest financial interest in this litigation. Specifically, SURS (1) purchased 553,066 gross shares of GE securities during the Class Period, (2) purchased 194,390 net shares during the Class Period, (3) expended a net of $4,941,346 on GE securities during the Class Period, and (4) suffered a loss of $3,240,256 using a FIFO calculation and $2,745,575 based on a LIFO calculation.[5] *See* Block Decl., Exh. D. At this time, SURS is not aware of any other investor who intends to file a motion for appointment as lead plaintiff in these Actions who has larger losses. Accordingly, SURS believes that it has the largest financial interest in the relief sought by the Class.

### C.    SURS Is A Sophisticated Institutional Investor That Satisfies The Requirements Of Rule 23

The PSLRA requires that the movant with the largest financial interest must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). "As for the requirements of Rule 23, at this stage a proposed lead plaintiff need only make a 'preliminary showing' that it will satisfy the typicality and adequacy requirements of Rule 23." *In re McDermott*, 2009 WL 579502, at *2 (citing *In re Initial Pub. Offering* 214 F.R.D. at 121). In this case, SURS satisfies both requirements.

---

[5]    FIFO and LIFO are the two principal accepted methods for calculating approximate losses for purposes of appointing a Lead Plaintiff under the PSLRA. Under the FIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the earliest and moving chronologically forward (hence, "first in, first out"). Under the alternative LIFO method, the sales are offset against the movant's inventory of stock acquisitions, starting with the latest and moving chronologically backward (hence, "last in, first out").

### 1.   SURS Satisfies the Typicality Requirements of Rule 23

SURS claims are typical of the claims of other Class members.  "Typicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." *Lowinger*, 2008 WL 2566558 at *3 (citing *In re Initial Pub. Offering* 214 F.R.D. at 121).  For instance, SURS, like other Class members, seeks to hold defendants liable for the consequences of their violations of the federal securities laws.  In addition, there are no facts which indicate any conflicts of interest between SURS and the other Class members.  Indeed, the events and course of conduct that give rise to SURS' claims are the same events and course of conduct that give rise to the claims of the Class; to wit, the false and misleading statements and failure to disclose significant material adverse facts about GE's financial well-being, primarily as a result of the financial problems at GE Capital, and the Company's ability to maintain its common stock dividend.  As a result of these material misstatements and/or omissions, SURS, like the other Class members, purchased GE securities at artificially inflated prices.

In fact, SURS is particularly suited to serve as lead plaintiff since it purchased GE shares on the open market and pursuant to the October Offering.  SURS is thus able to represent investors harmed both as a result of the materially misleading statements and/or omissions in the October Offering materials as well as those harmed as a result of having purchased shares on the open market during the Class Period.  *See, e.g., Olsen*, 233 F.R.D. at 108 (finding typicality satisfied where lead plaintiff movants acquired their shares both on the open market and through a stock merger, ensuring that all available legal theories were represented).  Lastly, SURS suffered losses as a result of the alleged misconduct.  *See, e.g., Glauser*, 236 F.R.D. at 188-89 (finding a Lead Plaintiff movant's

claim to be typical where the movant "like all class members, (1) purchased or acquired [the Company's] securities during the proposed class period, (2) at prices allegedly artificially inflated by Defendants' false and misleading statements and/or omissions, and (3) suffered damages thereby.").

### 2.   SURS Satisfies the Adequacy Requirement of Rule 23

SURS likewise satisfies the adequacy requirement of Rule 23.  The adequacy requirement is satisfied where "class counsel is qualified, experienced, and generally able to conduct the litigation," "the class members' interests are not antagonistic to one another" and "the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Olsen* 233 F.R.D. at 109 (citing *In re Initial Pub. Offering*, 214 F.R.D. at 121).  SURS satisfies each of these elements of the adequacy requirement.

SURS is adequate to represent the Class because it has obtained counsel that is highly experienced in the area of securities litigation and class action lawsuits, its interests are perfectly aligned with those of the other Class members and are not antagonistic in any way, and SURS has a sufficient interest in the outcome of the case to ensure vigorous advocacy.  More specifically, SURS has retained Berman DeValerio to represent it in the instant Action.  Berman DeValerio has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors.  Counsel has the skill and knowledge that will enable them to prosecute this action effectively and expeditiously.  *See* Block Decl., Exh. E.

Moreover, there are no facts suggesting that any actual or potential conflict of interest or other antagonism exists between SURS and other members of the Class.  In fact, SURS has submitted a Certification in which it affirms its understanding of the

duties SURS owes to the members of the Class and has expressed its commitment to oversee the prosecution of the instant litigation. *See* Block Decl., Exh. C. Through this Certification, SURS accepts the fiduciary obligations it will undertake if appointed lead plaintiff in the Actions.

Lastly, SURS is a sophisticated institutional investor with a real financial interest in the litigation, thus ensuring SURS will vigorously advocate on behalf of the Class. SURS, a large public pension fund, serves over 70 employers in Illinois including state universities, community colleges, and state agencies. It employs more than 100 people in the state of Illinois and provides benefit services to over 180,000 members throughout the world. Thus, SURS is precisely the sort of plaintiff Congress envisioned would lead securities class actions when it enacted the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34, 104 Con. 1 Sess. (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (Nov. 28, 1995) ("increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts by improving the quality of representation in securities class actions"); *see also Vladimir v. Bioenvision Inc.*, 07 CIV. 6416, 2007 WL 4526532, at *3 (S.D.N.Y. Dec. 21, 2007) ("Congress decided that the PSLRA's objectives are best achieved when lead plaintiffs are institutional investors or others with large holdings at stake whose interests will be most strongly aligned with those of the class members.").

In sum, SURS, having suffered the largest financial interest and satisfying both the typicality and adequacy requirements of Rule 23, should be appointed as Lead Plaintiff of the Class.

### III.    THE COURT SHOULD APPROVE SURS' SELECTION OF LEAD COUNSEL

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to the approval of the Court.  15 U.S.C. § 77z-1(a)(3)(B)(v); 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention").  Consistent with Congressional intent, a court should not disturb the Lead Plaintiff's choice of counsel, unless it is "necessary to protect the interests of the plaintiff class." *See* Statement of Managers – The "Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H13691-08, at H13700, H. R. Conf. Rpt. No. 104-369, at 35, 104 Cong. 1 Sess. *reported in* 1995 U.S.C.C.A.N. 730, 734 (Nov. 28, 1995).

Here, SURS has selected Berman DeValerio to serve as Lead Counsel for the Class.  Berman DeValerio is highly-experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors.  Further, counsel has the skill and knowledge that will enable them to prosecute this action effectively and expeditiously.  *See* Block Decl., Exh. E.  The Court may be assured that by approving SURS' choice of counsel, the Class will receive the highest caliber of legal representation.

### CONCLUSION

SURS respectfully requests that the Court: (i) consolidate all related actions; (ii) appoint SURS as Lead Plaintiff of the Class pursuant to the PSLRA; (iii) approve its

selection of Berman DeValerio to serve as Lead Counsel for the Class; and (iv) grant

such other and further relief as the Court may deem just and proper.

Dated: May 4, 2009

LOWEY DANNENBERG COHEN & HART, P.C.

Richard W. Cohen (RC-5220)
David C. Harrison (DH-3834)
White Plains Plaza
One North Broadway
White Plains, NY 10601-2310
Telephone: 914-733-7239
Fax: 914-997-0035

*Proposed Liaison Counsel*

**BERMAN DEVALERIO**
Jeffrey C. Block (JBC-0387)
Abigail R. Romeo
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Fax: (617) 542-1194
Email: jblock@bermandevalerio.com

Joseph J. Tobacco, Jr. (JJT-1994)
425 California Street
Suite 2100
San Francisco, CA 94104
Telephone: (415) 433-3200
Fax: (415) 433-6382
Email: jtabacco@bermandevalerio.com

*Counsel for State University Retirement
System of Illinois and Proposed Lead
Counsel for the Class*

14