## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAREN A. CHRISTIANSEN, on behalf of herself and all others similarly situated, | Civil Action No. 09-civ-1951 (DC) |
| Plaintiff, | ECF Case |
| v. | |
| JEFFREY R. IMMELT, BRACKETT B. DENNISTON, III,PAMELA DALEY, KATHRYN A. CASSIDY,JAMIE S. MILLER, JOHN KRENICKI, JOHN F. LYNCH, JOHN G. RICE, and GENERAL ELECTRIC COMPANY, | |
| Defendants. | |
| BRUCE MORGAN, individually and on behalf of all Others Similarly Situated, | Civil Action No. 09-civ-2084 (DC) |
| Plaintiff, | ECF Case |
| v. | |
| GENERAL ELECTRIC COMPANY, and JEFFREY R. IMMELT, | |
| Defendants. | |
| JAMES KLEIN, on behalf of himself and all others similarly situated, | Civil Action No. 09-civ-2582 (DC) |
| Plaintiff, | ECF Case |
| v. | |
| GENERAL ELECTRIC COMPANY, JEFFREY R. IMMELT, KEITH S. SHERIN, and JAMIE S. MILLER, | |
| Defendants. | |

|  |  |
|---|---|
| DENIS G. PARE, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>JEFFREY R. IMMELT, BRACKETT B. DENNISTON, III, PAMELA DALEY, KATHRYN A. CASSIDY, JAMIE S. MILLER, JOHN KRENICKI, JOHN F. LYNCH, JOHN G. RICE, and GENERAL ELECTRIC COMPANY,<br><br>                    Defendants. | Civil Action No. 09-civ-2566 (DC)<br><br>ECF Case |
| CITY OF BROCKTON CONTRIBUTORY RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>v.<br><br>GENERAL ELECTRIC CO., JEFFREY R. IMMELT, KEITH SHERIN, BRACKETT B. DENNISTON, PAMELA DALEY, KATHRYN A. CASSIDY, JAMIE S. MILLER, JOHN KRENICKI JR., JOHN F. LYNCH, JOHN G. RICE, MICHAEL NEAL, James I. Cash, Jr., William M. Castell, Ann M. Fudge, Claudio X. Gonzalez, Andrea Jung, Alan G. Lafley, Robert W. Lane, Ralph S. Larsen, Rochelle B. Lazarus, Sam Nunn, Roger S. Penske, Robert J. Swieringa, Robert C. Wright, Douglas A. Warner iii, GOLDMAN SACHS & Co., BANC OF AMERICA SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., DEUTSCHE BANK SECURITIES INC., J.P. MORGAN SECURITIES INC., MORGAN STANLEY INC., BARCLAYS CAPITAL | Civil Action No. 09-civ-3787 (DC)<br><br>ECF Case |

INC., CREDIT SUISSE SECURITIES
(USA) LLC, UBS SECURITIES LLC,
ABN AMRO INC., BANCA IMI S.p.A.,
BNP PARIBAS SECURITIES CORP.,
DAIWA SECURITIES AMERICA INC.,
HSBC SECURITIES (USA) INC., ING
FINANCIAL MARKETS LLC, LLOYDS
TSB BANK PLC, MERRILL LYNCH,
PIERCE FENNER & SMITH INC.,
MITSUBISHI UFJ SECURITIES
INTERNATIONAL plc, MIZUHO
SECURITIES USA INC., SANTANDER
INVESTMENT SECURITIES INC., SG
AMERICAS SECURITIES, LLC,
BLAYLOCK ROBERT VAN LLC,
CASTLEOAK SECURITIES L.P.,
SAMUEL A. RAMIREZ & CO. INC.,
UTENDAHL CAPITAL GROUP, L.L.C.
and THE WILLIAMS CAPITAL GROUP,
L.P.,

                      Defendants.

---

Bimal K. Gupta and Poonam Gupta, on
behalf of themselves and all others
similarly situated,

                      Plaintiffs,

v.

JEFFREY R. IMMELT and GENERAL
ELECTRIC COMPANY,

                      Defendants.

Civil Action No. 09-civ-4130 (DC)

ECF Case

|  |  |
|---|---|
| ROBERT SCHUYLER WATSON,<br>Individually and on behalf of all others<br>similarly situated,<br><br>     Plaintiff,<br>v.<br><br>GENERAL ELECTRIC COMPANY and<br>JEFFREY R. IMMELT,<br><br>     Defendants. | Civil Action No. 09-civ-4152 (DC)<br><br>ECF Case |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF
THE STATE UNIVERSITIES RETIREMENT SYSTEM OF ILLINOIS FOR
CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF,
AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL AND
<u>IN OPPOSITION TO ALL COMPETING MOTIONS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................ii-iv

PRELIMINARY STATEMENT ...................................................................1

ARGUMENT .................................................................................4

    I.       ALL OF THE ABOVE-CAPTIONED ACTIONS
           SHOULD BE CONSOLIDATED ......................................4

           A.     All of the Above-Captioned Actions - Including
                 *Brockton* – Involve Common Questions
                 of Fact and Law .......................................................4

           B.     Consolidation will Prevent the Risk of
                 Inconsistent Adjudications and Promote
                 Judicial Economy..................................................10

    II.      SURS IS THE MOST ADEQUATE PLAINTIFF ............11

           A.     SURS Has the Largest Financial Interest
                 Of Any Movant .......................................................12

           B.     SURS Satisfies the Requirements of Rule 23 ........17

    III.    ANTARAMIAN'S MOTION SHOULD BE
           DENIED AS HE IS INCAPABLE OF
           ADEQUATELY REPRESENTING
           THE INTERESTS OF THE CLASS .................................18

CONCLUSION..........................................................................19

## **TABLE OF AUTHORITIES**

### **CASES**

*Constance Sczesny Trust v. KPMG LLP*,
　　223 F.R.D. 319 (S.D.N.Y. 2004) .................................................12

*Dura Pharmaceuticals, Inc. v. Broudu*,
　　544 U.S. 336 (2005)............................................................. *passim*

*Glauser v. EVCI Center Colls. Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) ........................................................4

*In re Fuwei Sec. Litig.*,
　　247 F.R.D. 432 (S.D.N.Y. 2008) ................................................8

*In re Olsten Corp. Sec. Litig.*,
　　3 F. Supp. 2d 286 (E.D.N.Y. 1998) ................................... *passim*

*In re Veeco Instruments Inc. Sec. Litig.*,
　　233 F.R.D. 330 (S.D.N.Y. 2005) ..............................................14, 18

*Johnson v. Celotex Corp.*,
　　899 F.2d 1281 (2d Cir. 1990).....................................................4

*Kaplan v. Gelfond*,
　　240 F.R.D. 88 (S.D.N.Y. 2007) .................................................8, 11

*Olsen v. New York Cmty. Bancorp, Inc.*,
　　233 F.R.D. 101 (E.D.N.Y. 2005) ................................................8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust
v. LaBranche & Co..*,
　　229 F.R.D. 395 (S.D.N.Y. 2004) ................................................8

### **UNREPORTED DECISIONS**

*Bhojwani v. Pistiolis*,
　　06 Civ. 13761, 2007 WL 2197836,
　　(S.D.N.Y. June 26, 2007)............................................................8

*Boyd v. Novastar Fin., Inc.*,
　　No. 07-0139-CV-W-ODS, 2007 U.S. Dist. LEXIS 49528,
　　(W.D. Mo. July 9, 2007).............................................................14

*Corwin v. Seizinger*,
   No. 07 Civ. 6728(DC), 2008 WL 123846,
   (S.D.N.Y. Jan. 8, 2008)...............................................................12

*Eichenholtz v. Verifone Holdings, Inc.*,
   No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633,
   (N.D. Cal. Aug. 22, 2008).........................................................14

*Ferrari v. Impath, Inc.*,
   No. 03 Civ. 5667, 2004 WL 1637053,
   (S.D.N.Y. July 20, 2004) ..........................................................12

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
   08-MDL-1963, 2009 WL 50132,
   (S.D.N.Y. Jan. 5, 2009)................................................................6

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06 Civ. 1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878
   (E.D.N.Y. Mar. 2, 2007) ...........................................................13

*In re Hollinger Int'l., Inc. Sec. Litig.*,
   04 C 0834, 2006 WL 1806382,
   (N.D. Ill. June 28, 2006) ...........................................................16

*In re Orion Sec. Litig.*,
   No. 08 Civ. 1328(RJS), 2008 WL 2811358,
   (S.D.N.Y. July 8, 2008) ...............................................................8

*In re McDermott Int'l, Inc. Sec. Litig.*,
   No. 08 Civ. 9943(DC), 2009 WL 579502,
   (S.D.N.Y. Mar. 6, 2009) .......................................................12, 18

*Jolly Roger Offshore Fund LTD. v. BKF Capital Group, Inc.*,
   07 Civ. 3923, 2007 WL 2363610,
   (S.D.N.Y Aug. 16, 2007) ...........................................................17

*Kops v. NVE Corp.*,
   Civ. 06-574, 2006 WL 2035508,
   (D. Minn. July 19, 2006).......................................................13, 18

*Lowinger v. Global Cash Access Holdings, Inc.*
   No. 08 Civ. 3516(SWK), 2008 WL 2566558,
   (S.D.N.Y. June 26, 2008).........................................................4, 7

*Pinkowitz v. Elan Corp.*,
   PLC, 02 Civ. 865, 2002 WL 1822118,
   (S.D.N.Y. July 29, 2002) .............................................................8

iii

*Vladimir v. Bioenvision Inc.*,
    07 CIV. 6416, 2007 WL 4526532,
    (S.D.N.Y. Dec. 21, 2007) ...........................................................17

## STATUTES & RULES

Fed. R. Civ. P. 23 ...................................................................3, 17

Fed. R. Civ. P. 42 ......................................................................10

Fed. R. Civ. P. 42(a) ...........................................................1, 2, 4

15 U.S.C. § 10(b) ...............................................................5, 6, 7, 9

15 U.S.C. § 10(b)(5) ...................................................................6

15 U.S.C. § 11 ............................................................................5

15 U.S.C. § 12(a)(2) ...................................................................5

15 U.S.C. § 15 ............................................................................5

15 U.S.C. § 20(a) ...............................................................5, 6, 7, 9

15 U.S.C. § 21D(a)(3)(B) ..........................................................1

15 U.S.C. § 77z-1(a)(3) ............................................................11

15 U.S.C. § 77z-1(a)(3)(B) ........................................................1

15 U.S.C. § 77z-1(a)(3)(B)(i) ..................................................11

15 U.S.C. § 78u-4(a)(3) ........................................................1, 11

15 U.S.C. § 78u-4(a)(3)(B) ........................................................1

15 U.S.C. § 78u-4(a)(3)(B)(i) ..................................................11

15 U.S.C. § 78u-4(e) ...........................................................3, 15

## OTHER AUTHORITIES

H.R. Conf. Rep. No. 104-369, at 34,
    104 Cong. 1 Sess. (1995), *reprinted in*
        1995 U.S.C.C.A.N. 730, 733 (Nov. 28, 1995) ...........................17

The State Universities Retirement System ("SURS") of Illinois respectfully submits this memorandum in further support of its motion for an Order: (1) consolidating the above-captioned securities class actions (the "Actions") pursuant to Fed. R. Civ. P. 42(a); (2) appointing SURS as Lead Plaintiff pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B) and Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (3) approving SURS' selection of Berman DeValerio as Lead Counsel for the Class.  SURS further submits this memorandum in opposition to all competing motions.

## PRELIMINARY STATEMENT

The following five motions seeking consolidation, in some form or another, and appointment as lead plaintiff and/or lead counsel are before the Court: (1) SURS; (2) Jack Antaramian ("Antaramian"); (3) William K. Kirk and William P. Manca di Villahermosa ("Kirk/Villahermosa"); (4) Daniel Eimer and Ligia DeAndrade ("Eimer/DeAndrade"); and (5) Benson Duruaku ("Duruaku").

All of the above-captioned actions should be consolidated since all of the cases involve common questions of law and fact and consolidation will prevent the risk of inconsistent adjudications and promote judicial economy.  Two of the movants, Antaramian and Eimer/DeAndrade, argue against consolidation of *City of Brockton Contributory Retirement System v. General Electric Co., et al.*, Civil Action No. 09-CIV-

1

3787 (DC) (S.D.N.Y. filed on Apr. 15, 2009) with the other, so-called "Related"[1] or "Dividend Actions." This argument should be rejected since all of the actions – including *Brockton* - involve "common question[s] of law or fact" arising from the alleged misrepresentation of GE's poor financial condition and, therefore, the Fed. R. Civ. P. 42(a) standard for consolidation is readily met.

In addition, SURS' motion should be granted since it is the presumptive lead plaintiff of all the movants seeking lead plaintiff status in the instant litigation having lost approximately $3.2 million on its GE common stock purchases. Although an individual movant – Antaramian – alleges that he suffered total losses of approximately $3.4 million, Antaramian sold all of his stock <u>before</u> the first alleged curative disclosure in the class period he relies on and therefore his losses were not caused by disclosure of the alleged fraud.[2] According to the United States Supreme Court decision in *Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 346 (2005), an investor may only recover losses from sales occurring after a disclosure which reveals the fraud and causes a stock drop, that is, any losses must be proximately caused by the alleged fraud. All of the above-captioned actions, except for *Brockton*, allege that the first curative disclosure occurred on February 27, 2009. Since Antaramian sold all of his shares on or before February 23, 2009 – *five days* before the first curative disclosure – Antaramian has not suffered any recoverable loss under the federal securities law. *See* Exh. C to the Declaration of Albert Y. Chang, Dkt. No. 25, *Christiansen v. Immelt, et al.*, Civ. No. 09-cv-1951 (S.D.N.Y. filed May 4,

---

[1]  It should be noted that Antaramian and Eimer/DeAndrade's reference to all of the actions except the *Brockton* action as "Related Actions" ignores this Court's May 1, 2009 entry accepting *Brockton* as related to the other actions.

[2]  Antaramian relies on the class period of December 16, 2008 through February 27, 2009 asserted in the *Gupta v. Immelt* complaint and opposes consolidation of the *Brockton* action. The only corrective disclosure alleged in *Gupta* is on February 27, 2009; thus Antaramian sold all of his stock before any corrective disclosure and has not suffered any recoverable losses.

2

2009) ("Chang Decl."). Under Antaramian's own legal theory of recovery, he did not suffer any loss as a result of defendants' actions because he sold all of his shares before the truth was revealed.

But even if Antaramian adopts the allegations contained in *Brockton* and abandons his opposition to consolidation, Antaramian's losses fall well short of SURS' $3.2 million financial stake in the litigation. Under the PSLRA's "look-back" provision, a class member's losses are limited to the average price after a corrective disclosure. 15 U.S.C. § 78u-4(e). Here, GE's stock price increased after Antaramian's sales so his recoverable losses decrease under the PSLRA. In fact, Antaramian's losses – according to the plain language of the PSLRA – would actually be approximately $1.8 million, far less than the losses suffered by SURS.[3]

Accordingly, SURS has the largest financial interest in the instant litigation and, since it also readily satisfies the adequacy and typicality requirements of Fed R. Civ. P. 23, should be appointed as Lead Plaintiff of the Class. *See* Opening Br. at 9-12, Dkt. No. 30, *Christiansen v. Immelt, et al.*, Civ. No. 09-cv-1951 (S.D.N.Y. filed May 4, 2009). As the **sole** institutional investor seeking lead plaintiff status, SURS is the most adequate to lead the instant litigation. This Court should therefore approve SURS' motion seeking consolidation, appointment as Lead Plaintiff, and its selection of Lead Counsel.

---

[3]   As discussed in more detail below, SURS has re-calculated its losses using the class period end date adopted by Antaramian as well as taken into consideration the January 23, 2009 partial disclosure in order to have an apples-to-apples comparison between the losses alleged by Antaramian and SURS. These revised calculations are attached as Exhibits A and B to the Declaration of Jeffrey C. Block ("Block Decl."). By using identical methodologies, SURS losses exceed those of Antaramian's.

3

**ARGUMENT**

### I. ALL OF THE ABOVE-CAPTIONED ACTIONS SHOULD BE CONSOLIDATED

Pursuant to Fed. R. Civ. P. 42(a), *all* of the above-captioned cases should be consolidated because they share common questions of law and fact, name overlapping defendants, and allege largely overlapping class periods. *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 293 (E.D.N.Y. 1998) ("[F]acts and legal issues need not be identical to warrant consolidation."). The Second Circuit has found that "Rule 42(a) of the Federal Rules of Civil Procedure empowers a trial judge to consolidate actions for trial when there are common questions of law or fact to avoid unnecessary costs or delay." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

Moreover, "courts have taken the view that considerations of judicial economy favor consolidation." *Id.* at 1285; *see also In re Olsten*, 3 F. Supp. 2d at 292 ("Consolidation is generally ordered so long as any confusion or prejudice does not outweigh efficiency concerns.") (internal citation omitted). "Consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports." *Lowinger v. Global Cash Access Holdings, Inc.*, No. 08 Civ. 3516(SWK), 2008 WL 2566558, at *1 (S.D.N.Y. June 26, 2008) (citing *Glauser v. EVCI Center Colls. Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006)).

### A. All of the Above-Captioned Actions – Including *Brockton* – Involve Common Questions of Fact and Law

While two of the competing movants seeking lead plaintiff status - Antaramian and Eimer/DeAndrade - argue against consolidation of the *Brockton* action with the so-called "Dividend Actions," these arguments are wholly unpersuasive due to the overwhelming common questions of law and fact that exist between all of the actions.

The gist of all the actions – whether GE misled investors with respect to its financial condition and ability to maintain its quarterly dividend – are the same.   On March 3, 2009, the first complaint, *Christiansen v. Immelt, et al.*, Civil Action No. 09-CIV-1951, was filed in the instant litigation alleging violations under §§ 10(b) and 20(a) of the Exchange Act.   Following this, numerous "copy cat" complaints were filed virtually identical to the *Christiansen* complaint.   On April 14, 2009, the *Brockton* action was filed alleging a slightly longer class period against additional defendants and which, in addition to the Exchange Act violations, brought claims for violations of §§ 11, 12(a)(2) and 15 of the Securities Act.

None of these slight differences detract from the fact that *Brockton* is based on substantially the same set of facts and shares common legal questions with all of the actions.   For instance, to the extent the class periods overlap, all of the above-captioned cases, including *Brockton*, rely on the same public statements and reports.   More specifically, all of the complaints cite to GE's February 27, 2009 press release disclosing that the Company was cutting its quarterly dividend by one-third despite the Company's prior statements to the contrary.   *See* Brockton Compl. ¶ 84, Christiansen Compl. ¶ 26, Pare Compl. ¶ 26, Klein Compl. ¶ 33, Morgan Compl. ¶ 28, Watson Compl. ¶ 28, Gupta Compl. ¶ 13.

Second, *Brockton* covers the same class of investors allegedly harmed in the "Dividend Actions."   Almost all of the "Dividend Actions" were brought on behalf of purchasers of GE common stock between January 23, 2009 and February 27, 2009.   One action, adopted by Antaramian, *Gupta v. Immelt, et al.*, Civil Action No. 09-CIV-4130 (S.D.N.Y. filed on Apr. 27, 2009), begins the class period on December 16, 2008.   The

*Brockton* action merely expands the actions by extending the class period at the start by an additional three months and lengthening it at the end by twenty days to address additional alleged misstatements about GE's financial condition that inflated the market price of GE securities.  As such, the same class of investors covered by the "Dividend Actions" is also covered by *Brockton*.

Third, *all* of the above-captioned actions – including the *Brockton* complaint – allege violations of §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder, against nearly identical defendants.[4]  Lastly, there is no indication that any of the defendants will be harmed by consolidation of *Brockton* with the other actions.

In a recent decision in this Court, *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.* three plaintiffs opposed consolidation of their allegedly "distinct" actions from the other pending securities actions.  08 M.D.L. 1963, 2009 WL 50132 at *6-7 (S.D.N.Y. Jan. 5, 2009).  Two such plaintiffs argued that their actions, based on a more limited class period, were sufficiently distinct from the other lawsuits such that they should proceed separately. These plaintiffs argued that they purchased their Bear Stearns stock on March 10, 2008 after company executives denied any liquidity crisis only to have Bear Stearns admit 4 days later that it had run out of cash.  Like plaintiffs Antaramian and Eimer/DeAndrade here, the plaintiffs there asserted that their claims were sufficiently straight-forward and distinct and should not be bogged down with the complex allegations asserting fraud in a broader class period.

---

[4]   With respect to the Exchange Act violations alleged in the above-captioned actions, the *Brockton* complaint only names **one** additional defendant – Defendant John G. Rice, GE's Vice Chairman - not named in any of the so-called "Dividend Actions."

6

The Court held, however, that all of the actions should be consolidated. "Where, as here, multiple class actions are predicated on the defendants' purported misstatements and omissions (which allegedly result in inflated earnings and revenue) and the effect of such conduct on the price of [the Company's] stock when the conduct came to light, consolidation is appropriate." *Id.* at *6 (internal citation omitted). With respect to the differing class periods, the Court noted that all of the actions "allege that Defendants misrepresented and/or omitted to state material facts about the true status of [the Company]… and allege violations of Sections 10(b) and 20(a) of the Exchange Act" and that, "[w]ithout more, the fact that two complaints involve a more limited class period is not sufficient to prevent consolidation." *Id*

Likewise, in *Lowinger v. Global Cash Access Holdings, Inc.*, the Court faced a similar issue regarding whether to consolidate actions where, like here, a subsequent case was filed expanding the proposed class, naming additional defendants, and bringing additional claims for securities act violations. 08 CV 3516, 2008 WL 2566558 (S.D.N.Y. June 26, 2008). Despite these differences, the district court found that consolidation was nonetheless warranted, noting that (1) both of the claims cover individuals who purchased shares during a specified time period; (2) the complaints rely on the same public statements and reports in support of their fraud allegations; (3) both of the claims seek recovery under the same statutory provision for securities law violations; and (4) there was no indication that any of the defendants would be prejudiced by consolidation. *Id.* at *2. The Court specifically noted that one complaint's "more expansive definition of the class, allegations of additional securities law violations, and inclusion of additional defendants do not make consolidation of the two cases inappropriate." *Id.*

7

Other courts have as a matter of course consolidated securities fraud actions arising generally from the same set of facts. *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation."); *Olsen v. New York Cmty. Bancorp, Inc.*, 233 F.R.D. 101, 105 (E.D.N.Y. 2005) (ordering consolidation, noting that none of the differences in class periods, defendants, and claims, "which can be resolved when the appointed lead plaintiff files a consolidated complaint, detracts from the overwhelming factual and legal similarities among the cases"); *In re Orion Sec. Litig.*, No. 08 Civ. 1328(RJS), 2008 WL 2811358, at *3 (S.D.N.Y. July 8, 2008) (finding consolidation appropriate even though complaints alleged different securities law violations).[5]

Just as in the foregoing cases, consolidation of *Brockton* with the so-called "Dividend Actions" is warranted since all of the actions are predicated on defendants' purported misstatements and omissions concerning GE's maintenance of its quarterly dividend payments, the effect said misstatements and omissions had on the price of GE stock when the truth was revealed, and all seek recovery under the Exchange Act for defendants' violations of the federal securities laws. Moreover, the same reasoning asserted by Antaramian in support of consolidating the so-called "Dividend Actions" applies equally to the *Brockton* complaint. Antaramian, for instance, asserts that

---

[5] *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 435 (S.D.N.Y. 2008) (consolidating cases with differing facts, legal claims, and defendants); *Pirelli Armstrong Tire Corp.Retiree Med. Benefits Trust v. LaBranche & Co.,* 229 F.R.D. 395, 402 (S.D.N.Y. 2004) (consolidating cases with differing class periods and defendants); *Bhojwani v. Pistiolis*, 06 CIV. 13761, 2007 WL 2197836, at *3 (S.D.N.Y. June 26, 2007) (differing class periods); *Pinkowitz v. Elan Corp.*, PLC, 02 CIV. 865, 2002 WL 1822118, at *3-4 (S.D.N.Y. July 29, 2002) (differing claims and defendants).

consolidation of the "Dividend Actions" is appropriate since "each complaint alleges that GE made various statements indicating its intention to pay substantial stock dividends in 2009." Antaramian Br. at p. 7, Dkt. No. 24 *Christiansen v. Immelt, et al.*, Civ. No. 09-cv-1951 (S.D.N.Y. filed May 4, 2009). This reasoning, however, applies equally to the *Brockton* complaint since *Brockton* also alleges that defendants made various statements about GE's intention to pay substantial stock dividends in 2009. *Compare, e.g.,* Brockton Compl. ¶¶ 3, 68, 69, 71-72, 75-78, 80, 83-84 *with* Christiansen Compl. ¶¶ 16, 24; Pare Compl. ¶¶ 16, 24; Klein Compl. ¶¶ 15, 23-28; Morgan Compl. ¶¶ 9, 16-19, 22-27, 30-31, Gupta Compl. ¶¶ 8-9, 11-12; Watson Compl. ¶¶ 9, 16-18, 22-27, 30-32. Antaramian further asserts that consolidation is appropriate as "each complaint seeks redress on behalf of all purchasers of GE common stock who were damaged as a result of [] GE's alleged false promises to pay dividends." Antaramian Br. at p. 8. Again, this reasoning applies equally to *Brockton* since the *Brockton* complaint also seeks redress on behalf of all investors in GE common stock who were damaged as a result of defendants' false promises to pay its dividend. *See, e.g.*, *Brockton* Compl. ¶¶ 3-4.

Thus, despite the differing class periods, defendants, and claims, even the most cursory comparison of the *Brockton* complaint with the so-called "Dividend Actions" demonstrates that they share a common fact pattern that defendants misrepresented and omitted material facts about GE's financial status and the Company's ability to maintain its dividend. Likewise, all of the above-captioned actions present the common legal questions of whether such conduct violated §§10(b) and 20(a) of the Exchange Act. Accordingly, all of the actions involve common questions of law and fact.

**B.**     **Consolidation will Prevent the Risk of Inconsistent Adjudications and Promote Judicial Economy**

Antaramian and Eimer/DeAndrade's proposed strategy of proceeding separately from the *Brockton* action, despite the overlapping claims and factual allegations, would create the exact type of chaos Rule 42 and the PSLRA seeks to prevent. In fact, such separation would stall pretrial proceedings, increase case duplication and force parties and witnesses to be deposed in multiple proceedings. Absent consolidation, this Court will be in the position of having to choose two sets of lead plaintiffs and appoint two sets of attorneys in factually and legally overlapping cases involving many of the same parties. This is highlighted by the fact that SURS purchased shares during both class periods and, as such, could potentially be appointed as lead plaintiff in both cases. Under this rationale, the parties and the Court would be unnecessarily burdened by having to file separate Amended Complaints in factually and legally overlapping cases, respond to separate Motions to Dismiss filed by the same Defendants and eventually conduct overlapping discovery (including depositions of the same individuals) arising from and relating to the same course of conduct – defendants' misrepresentations and omissions regarding GE's financial status and ability to maintain its quarterly dividend and try the same facts twice.

Additionally, the alleged confusion and prejudice plaintiffs in the so-called "Dividend Actions" may experience if the actions are consolidated is merely hypothetical and hardly outweighs the very real risk of inconsistent judgments and efficiency concerns noted above. Antaramian Br. at p. 8 ("plaintiffs in the Related Actions may be subjected to lengthier and more complex discovery if they are required to litigate in a consolidated case with the *Brockton* class"); Eimer/DeAndrade Br. at p. 5 ("confusion and prejudice

10

will outweigh efficiency for class members in the Related Actions because their discrete claim will be subsumed in a much larger action that, at a minimum, will include 25 investment bank defendants and their inevitable 25 additional law firms").   The concern with regard to the Securities Act claims is a red herring as claims relating to the common stock offering in October, 2008 will not slow down or complicate the discovery process.

Given the overlapping questions of law and fact, the concern that certain plaintiffs' claims would be subsumed into a larger action hardly outweighs the duplication of effort and wasteful expenditure of resources that would be inevitable should these cases proceed separately.   *See Kaplan*, 240 F.R.D. at 92 ("Given the overlapping questions of law and fact…, litigating a multitude of separate actions would only ensure the duplication of effort amongst parties and the needles expenditure of judicial resources").   Accordingly, consolidation of *Brockton* with the other actions is consistent with the "well-recognized" principle that "consolidation of stockholder suits often benefits both the courts and the parties by expediting pretrial procedures, avoiding duplication of discovery, and minimizing costs." *Id.* at 92 (citation omitted).   Based on the above, all of the actions should be consolidated.

## II.   <u>SURS IS THE MOST ADEQUATE PLAINTIFF</u>

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff.   15 U.S.C. § 77z-1(a)(3)(B)(i); 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA provides a rebuttable presumption that the "most adequate plaintiff" is the movant that has the "largest financial interest" in the relief sought by the Class and that otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 77z-1(a)(3); 15 U.S.C. § 78u-4(a)(3).   This presumption may be rebutted

upon proof that the plaintiff "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.*

### A.   SURS Has the Largest Financial Interest Of Any Movant

Although the PSLRA does not define the term "largest financial interest," courts in this Circuit have considered the following four factors in making this determination: "(i) the gross number of shares purchased; (ii) the net number of shares purchased; (iii) the net funds spent; and (iv) the net loss." *In re McDermott Int'l, Inc. Sec. Litig.*, No. 08 Civ. 9943(DC), 2009 WL 579502, at *2 (S.D.N.Y. Mar. 6, 2009) (Chin, J.)(citation omitted); *accord Corwin v. Seizinger*, No. 07 Civ. 6728(DC), 2008 WL 123846, at *2 (S.D.N.Y. Jan. 8, 2008); *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004) (quoting *Ferrari v. Impath, Inc.*, 03 CIV. 5667, 2004 WL 1637053, at *4 (S.D.N.Y. July 20, 2004) (citing *In re Olsten Corp.* 3 F. Supp. 2d at 296). These four factors are hereinafter referred to as the "*Olsten* factors."

Applying this four factor test, SURS has the largest financial interest. Although Antaramian alleges that he suffered total losses of approximately $3.4 million, according to *Dura Pharmaceuticals, Inc. v. Broudu*, he actually has not suffered **any** recoverable losses under the PSLRA since he sold all of his shares before any curative disclosure. 544 U.S. 336 (2005). In *Dura*, the Supreme Court held that, "as a matter of pure logic, at the moment the transaction takes place, the plaintiff has suffered no loss" and "if [] the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Id.* at 342. While *Dura* involved a motion to dismiss, courts in this Circuit have found that the same reasoning applies to

12

loss calculations done at the lead plaintiff stage.  In *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007), the court vacated a prior order appointing a lead plaintiff ("P&P") after an opposing movant argued that the magistrate judge erred by improperly including in its calculation losses for which P&P could not recover since most of P&P's losses resulted from "in-and-out" transactions.  In urging the court to consider only a portion of P&P's losses, the opposing movant argued that most of P&P's losses cannot be recovered in this litigation "because those losses were suffered before the alleged misconduct was revealed to the public, and thus could not have been caused by the misconduct at issue in this action." *Id.* at *12.  The court agreed.  In pertinent part, it stated:

> In short, it is clear that under *Dura* and its progeny, any losses that P&P may have incurred before Comverse's misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation. While the *Dura* Court decided a motion to dismiss, and not a lead plaintiff motion, the logical outgrowth of that holding is that any such losses must not be considered in the *recoverable* losses calculation that courts engage in when selecting a lead plaintiff.  (emphasis added)
>
> ***
>
> [W]here (as here) it is clear from the face of the pleadings that most of P&P's losses were suffered before any alleged corrective disclosure, the court would be abdicating its responsibility under the PSLRA if it were to ignore that issue at this stage.
>
> ***
>
> In short, *Dura* [and other cases cited therein], much like this case, require a court to make pre-discovery loss causation determinations regarding asserted claims (or parts of asserted claims) that are based on the facts alleged in the complaint.  And in this case, those facts fail to support a recoverable claim for the in-and-out losses that P&P suffered.

*Id.* at *13, 16, 18 (footnote omitted).  Other courts have applied *Dura* to exclude claimed losses from sales before the fraud was revealed.  *See, e.g., Kops v. NVE Corp.*, CIV. 06-574, 2006 WL 2035508, at *5 (D. Minn. July 19, 2006) (finding movant seeking

13

lead plaintiff status had not suffered any loss as a result of defendants' actions since movant sold all of his shares before any curative disclosure); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *11-12 (N.D. Cal. Aug. 22, 2008) (In discussing the "calculation mechanism," court states that it "finds no reason to include losses in its calculations that would later be considered uncompensable. Indeed, it is difficult, if not impossible, to demonstrate loss causation for shares bought *and* sold before the disclosure of the misstatements or omissions.") (emphasis in original).[6]

In the instant case, Antaramian has not suffered a recoverable loss under the PSLRA since he sold all of his shares before any curative disclosure. Although the *Brockton* complaint alleges that a partial disclosure occurred on January 23, 2009, Brockton Compl. ¶ 81, all of the other actions allege that the first curative disclosure occurred on February 27, 2009. *See* Christiansen Compl. ¶ 26, Pare Compl. ¶ 26, Klein Compl. ¶ 33, Morgan Compl. ¶ 28, Gupta Compl. ¶ 13, Watson Compl. ¶ 28. By arguing that Brockton should not be consolidated with the other actions, Antaramian has necessarily adopted the view that the first curative disclosure occurred on February 27, 2009. Yet, according to his certification, Antaramian sold all of his shares on February 23, 2009 – *five days* before the first alleged curative disclosure. *See* Exh. C to Chang

---

[6] *See also In re Veeco Instruments Inc. Sec. Litig.*, 233 F.R.D. 330, 333-34 (S.D.N.Y. 2005) ("Under the reasoning of the United States Supreme Court in [*Dura*], I question whether [group that sold all stock prior to issuance of curative disclosure] can prove loss causation – or, for that matter, loss. [That group] is, at the very least, subject to a unique defense to which Steelworkers is not subject."); *Boyd v. Novastar Fin., Inc.*, No. 07-0139-CV-W-ODS, 2007 U.S. Dist. LEXIS 49528, at *13 (W.D. Mo. July 9, 2007) (discussing calculation of financial interests and *Dura,* court held that "the number of shares purchased during the class period is less relevant than the *net* number of shares purchased during the class period, as the latter figure will represent the number of shares purchased after the fraud and held when the fraud was revealed") (emphasis in original).

Decl.  As such, *Dura* instructs that Antaramian has not suffered any recoverable losses from defendants' violations of the federal securities laws.

In the alternative, if Antaramian reverses course, adopts *Brockton* and argues that he suffered losses because a partial disclosure occurred on January 23, 2009, Antaramian's losses are nonetheless lower than SURS' losses when the PSLRA's 90-day look-back provision is applied in calculating his losses.  Under the PSLRA, recoverable losses are defined as:

(1) In general

Except as provided in paragraph (2), in any private action arising under this [chapter] in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

(2) Exception

In any private action arising under this [chapter] in which the plaintiff seeks to establish damages by reference to the market price of a security, if the plaintiff sells or repurchases the subject security ***prior*** to the expiration of the 90-day period described in paragraph (1), the plaintiff's damages ***shall not exceed the difference between the purchase or sale price paid or received***, as appropriate, ***by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security.***

15 U.S.C. § 78u-4(e) (emphasis added).

Since Antaramian sold all of his securities in GE "prior to the expiration of the 90-day period," his recoverable losses "shall not exceed the difference between the…the sale

15

price… received…and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission…." *See id.*; *see also In re Hollinger Int'l., Inc. Sec. Litig.*, 04 C 0834, 2006 WL 1806382, at *13 (N.D. Ill. June 28, 2006) (finding inadequate legal support "for the proposition that Congress intended for the ninety-day look back provision to apply only after the violation in question had been completely disclosed"). Based on the trading data provided by Antaramian, counsel for SURS was able to recalculate what his losses should have been under the PSLRA's 90-day look-back provision – at about $1.8 million. *See* Exh. B to the Chang Decl. Attached as Exhibit A to the Block Decl. are the revised loss calculations for Antaramian.[7]

Applying the *Olsten* factors, SURS demonstrably has the largest financial interest:

| Movants | Approximate Losses[8] | Gross Shares Purchased | Net Shares Purchased | Net Funds Expended |
|---------|----------------------|------------------------|----------------------|--------------------|
| **SURS** | **$2,772,024** | **472,166** | **302,566** | **$5,887,314** |
| Antaramian | $1,807,910 | 900,000 | 0 | $1,807,910 |
| Kirk/Villahermosa | $272,208 | 187,500 | 8,000 | $122,318 |
| Eimer/DeAndrade | $247,500 | 105,698 | 105,698 | $1,014,748 |
| Duruaku | $37,836 | 20,000 | 20,000 | $246,000 |

---

[7] In order to ensure an apples-to-apples comparison of the *Olsten* factors, counsel for SURS has also recalculated SURS' losses using the class period end date adopted by Antaramian and the January 23, 2009 partial disclosure. *See* Block Decl., Exh. B.

[8] These losses were calculated using the LIFO methodology. Using the FIFO method, SURS suffered an even greater loss of $3,956,242 while Antaramian's loss remained the same at $1,807,910. As such, under either methodology, SURS suffered a larger loss than the competing movants.

Since only one of the four *Olsten* factors – gross shares purchased – weighs in favor of Antaramian, SURS has the largest financial interest out of all the movants seeking lead plaintiff status.

**B.**      **SURS Satisfies the Requirements of Rule 23**

After determining who has the largest financial interest, the focus then turns to whether this movant satisfies the adequacy and typicality requirements of Fed. R. Civ. P. 23. *Jolly Roger Offshore Fund LTD. v. BKF Capital Group, Inc.*, 07 CIV. 3923, 2007 WL 2363610, at *3 (S.D.N.Y. Aug. 16, 2007) ("Once the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the [] statutory requirements" of Rule 23) (internal citation omitted).   As demonstrated in its moving papers, SURS readily satisfies both of these requirements. *See* Opening Brf. at 9-12, Dkt. No. 30, *Christiansen v. Immelt, et al.*, Civ. No. 09-cv-1951 (S.D.N.Y. filed May 4, 2009).

Moreover, as the only institutional investor seeking lead plaintiff status in the above-captioned actions, SURS is the most capable of effectively overseeing this litigation. *See* H.R. Conf. Rep. No. 104-369, at 34, 104th Con. 1st Sess. (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *see also Vladimir v. Bioenvision Inc.*, 07 CIV. 6416, 2007 WL 4526532, at *3 (S.D.N.Y. Dec. 21, 2007) ("Congress decided that the PSLRA's objectives are best achieved when lead plaintiffs are institutional investors or others with large holdings at stake whose interests will be most strongly aligned with those of the class members."). As such, SURS is entitled to the

rebuttable presumption that it is the most adequate plaintiff and, as no other movant will be able to rebut this presumption, should be appointed as Lead Plaintiff of the Class.

### III.   ANTARAMIAN'S MOTION SHOULD BE DENIED AS HE IS INCAPABLE OF ADEQUATELY REPRESENTING THE INTERESTS OF THE CLASS

In the alternative, if this Court should find that Antaramian has suffered a larger financial loss than SURS, his motion should nonetheless be denied because he would be incapable of adequately representing the interests of the class since Antaramian sold all of his shares before the end of the class period.  "A proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation." *Kops,* 2006 WL 2035508, at *6 (citation omitted); *In re McDermott Int'l.,* 2009 WL 579502, at *2 (noting that presumption may be rebutted "by showing that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is, because of 'unique defenses,' incapable of adequately representing the class.") (internal citation omitted).

As discussed above, Antaramian would be subject to a unique defense of loss causation because he sold all of his shares in GE before the end of the Class Period and, under Antaramian's theory of the case, before any curative disclosure occurred. *See, e.g., Kops*, 2006 WL 2035508, at *6 (noting that movant would be subject to a unique defense due to the sale of all of his shares before the end of the class period and the alleged revelation of the fraud on the market); *In re Veeco Instruments Inc. Sec. Litig.*, 233 F.R.D. at 333-34 (noting, in dicta, that movant would be subject to unique defense due to sale of stock prior to curative disclosure).    Thus, if Antaramian is appointed lead plaintiff, the issue of whether Antaramian even suffered a loss – let alone his ability to

prove loss causation – would inevitably become a focus of the litigation.   No such obstacle exists, however, with respect to the appointment of SURS as Lead Plaintiff.   As such, this Court should deny Antaramian's motion in favor of SURS' motion.

Moreover, by opposing consolidation of the *Brockton* action, Antaramian is implicitly indicating that he will not prosecute claims on behalf of GE investors who purchased shares between September 25, 2008 and December 16, 2008, those who purchased after February 27, 2009 and those who purchased in the October, 2008 common stock offering.   Since Antaramian will not represent the interests of the entire class, he cannot be deemed an adequate class representative and his motion should be denied.

## CONCLUSION

For all the above reasons, SURS respectfully requests that the Court consolidate all of the actions, appoint SURS as lead plaintiff over the consolidated action and approve its selection of lead counsel.


Dated: May 26, 2009                                      **LOWEY DANNENBERG COHEN**
                                                                    **& HART, P.C.**

                                                           Richard Cohen
                                                           David Harrison
                                                           White Plains Plaza
                                                           One North Broadway
                                                           White Plains, NY  10601-2310
                                                           Telephone:  914-733-7239
                                                           Fax:  914-997-0035

                                                           *Proposed Liaison Counsel*

                                                           - AND -

**BERMAN DEVALERIO**

/s/ Jeffrey C. Block
Jeffrey C. Block (JBC-0387)
Abigail R. Romeo
One Liberty Square
Boston, MA 02109
Telephone:  (617) 542-8300
Fax:  (617) 542-1194
Email:  jblock@bermandevalerio.com

Joseph J. Tabacco, Jr. (JJT-1994)
425 California Street
Suite 2100
San Francisco, CA 94104
Telephone: (415) 433-3200
Fax: (415) 433-6382
Email:  jtabacco@bermandevalerio.com

*Counsel for State University Retirement
System of Illinois and Proposed Lead
Counsel for the Class*