**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| KAREN A. CHRISTIANSEN, on behalf of herself and all others similarly situated, | ) ) ) ) | ECF Case |
| | | Case No. 09 Civ. 1951 (DC) |
| Plaintiff, | ) ) | Honorable Denny Chin |
| vs. | ) ) | Oral Argument Requested |
| JEFFREY R. IMMELT, BRACKETT B. DENNISTON, III, PAMELA DALEY, KATHRYN A. CASSIDY, JAMIE S. MILLER, JOHN KRENICKI, JOHN F. LYNCH, JOHN G. RICE, and GENERAL ELECTRIC COMPANY, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |
| BRUCE MORGAN, on behalf of himself and all others similarly situated, | ) ) ) | Case No. 09 Civ. 2084 (DC) |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| GENERAL ELECTRIC COMPANY and JEFFREY R. IMMELT, | ) ) ) | |
| Defendants. | ) | |

[Caption continues to next page]

**MOVANT JACK ANTARAMIAN'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF HIS MOTION TO CONSOLIDATE RELATED
ACTIONS, TO BE APPOINTED LEAD PLAINTIFF, AND
FOR APPROVAL OF HIS SELECTION OF COUNSEL**

| | | |
|---|---|---|
| DENIS G. PARE, on behalf of himself and all others similarly situated, | ) ) ) | Case No. 09 Civ. 2566 (DC) |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| JEFFREY R. IMMELT, BRACKETT B. DENNISTON, III, PAMELA DALEY, KATHRYN A. CASSIDY, JAMIE S. MILLER, JOHN KRENICKI, JOHN F. LYNCH, JOHN G. RICE, and GENERAL ELECTRIC COMPANY, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |
| JAMES KLEIN, on behalf of himself and all others similarly situated, | ) ) | Case No. 09 Civ. 2582 (DC) |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| GENERAL ELECTRIC COMPANY, JEFFREY R. IMMELT, KEITH S. SHERIN, and JAMIE S. MILLER, | ) ) ) ) | |
| Defendants. | ) | |
| BIMAL K. GUPTA and POONAM GUPTA, on behalf of themselves and all others similarly situated, | ) ) ) | Case No. 09 Civ. 4130 (DC) |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | |
| JEFFREY R. IMMELT and GENERAL ELECTRIC COMPANY, | ) ) ) | |
| Defendants. | ) | |

[Caption continues on next page]

ROBERT SCHUYLER WATSON, on )    Case No. 09 Civ. 4152 (DC)
behalf of himself and all others similarly )
situated, )
  )
                            Plaintiff, )
  )
                vs. )
  )
GENERAL ELECTRIC COMPANY and )
JEFFREY R. IMMELT, )
  )
                        Defendants. )

## Table of Contents

I.      INTRODUCTION ...................................................................................... 1

II.     ARGUMENT ............................................................................................ 1

     A.      SURS Has Failed to Provide the Court with Sufficient Proof That
          Consolidating the Dividend Actions with *Brockton* Is Appropriate ........... 2

     B.      Mr. Antaramian Has the Largest Financial Interest in This Litigation ....... 4

          (1)     Under the *Lax* Test, Mr. Antaramian Demonstrates That He Has a
               Larger "Financial Interest" Than Other Movants ............................ 4

          (2)     The Loss Causation Theory Does not Preempt Mr. Antaramian's
               Damages Because He Suffered Recoverable Losses Based on
               Partial Curative Disclosures ............................................................ 5

          (3)     SURS Lacks a Legal and Factual Basis to Employ the Damage
               Calculation Method Based on the 90-Day Look-Back Provision ... 6

     C.      Mr. Antaramian Satisfies Federal Rule of Civil Procedure 23 and Is
          Therefore Entitled to the Statutory Presumption of Lead Plaintiff ............ 8

     D.      SURS' Adequacy Is Questionable Because It May Have Abdicated Its
          Oversight Role to Berman DeValerio, Which Performs Free Monitoring
          Services for SURS ...................................................................................... 9

III.    CONCLUSION ...................................................................................... 10

**Cases**

*Caiafa v. Sea Containers, Ltd.*, Nos. 06 Civ. 2565 (RMB), 2006 U.S. Dist. LEXIS 57776, (S.D.N.Y. Aug. 14, 2006).................................................................................................7

*Comervse Tech. Inc. Sec. Litig.*, No. 06 Civ. 1825, U.S. Dist. LEXIS 14878, (E.D.N.Y. Mar. 2, 2007) ....................................................................................................................5

*Garber v. Randell*, 477 F.2d 711 (2d Cir. 1973) ............................................................2, 5

*In re Hollinger Int'l, Inc. Sec. Litig.*, No. 04C-0834, 2006 U.S. Dist. LEXIS 47173, (N.D. Ill. June 28, 2006).........................................................................................................7

*In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670 n.29 (D.N.J.  2006)............................6

*Iron Worker's Local No. 25 Pension Fund v. Credit-Based Asset Servicing and Securitization*, *LLC*, No. 08 Civ. 10841, 2009 U.S. Dist. LEXIS 44821 (S.D.N.Y. May 27, 2009).................................................................................................................2, 8

*Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) .....................................................3

*Kops v. NVE Corp.*, Civil File Nos. 06-0574 *et al.*, 2006 U.S. Dist. LEXIS 49713, (D. Minn. July 17, 2006) ...................................................................................................5

*Lax v. First Merchs. Acceptance Corp.*, Nos. 97 Civ 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 11, 1997) ...............................................................................3

*Ocean Ships, Inc. v. Stiles*, No. 00 Civ 5469 (RCC), 2003 U.S. Dist. LEXIS 20876, (S.D.N.Y. Nov. 18, 2003)...........................................................................................3

*Ribozyme Pharms., Inc. Sec. Litig.*, 192 F.R.D. 656 (D. Colo. 2000)................................6

**Statutes**

15 U.S.C. § 78u-4 ..............................................................................................................5

15 U.S.C. § 78u-4(e) ..........................................................................................................5

## I.    INTRODUCTION

The oppositions to Jack Antaramian's motion make two baseless attempts to challenge Mr. Antaramian's presumptive lead plaintiff status.  The State University Retirement System of Illinois ("SURS") and the Eimer Group first argue that Mr. Antaramian cannot establish loss causation because he sold all his shares of Defendant General Electric Company ("GE") stock four days before GE's February 27, 2009 announcement that it would cut its dividend.  But this argument ignores the undisputed fact that the loss causation doctrine only limits damages where a plaintiff sells all his stock "before the relevant truth begins to leak out."  *Dura Pharms., Inc. v Broudu*, 544 U.S. 336, 342 (2005).  Here partial curative disclosures are alleged to have been made between January 23, 2009 and February 23, 2009 in *City of Brockton Contributory Retirement System v. General Electric Co. et al.*, No. 09 Civ. 3787 (DC), and in the related securities class actions (the "Dividend Actions").  During that period, Mr. Antaramian sold the bulk of his GE stock.  Thus, the loss causation argument fails.

Equally unavailing is SURS' attempt to measure Mr. Antaramian's "financial interest" under the 90-day look-back provision in the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  Two courts, including one in this District, have rejected identical arguments because the 90-day look-back provision applies only to damages, not to lead plaintiff motions.

These meritless arguments cannot change the fact that whatever class period is used, Mr. Antaramian lost $3,420,800 as a result of the fraud alleged in the underlying actions.  Nor can SURS establish that Mr. Antaramian is an inadequate representative for the entire class, regardless of whether the Court consolidates *Brockton* with the Dividend

Actions.  In fact, SURS has serious adequacy problems due to the monitoring services its proposed lead counsel, Berman DeValerio, performs for institutional investors.  In a recent decision, Judge Rakoff refused to appoint an institutional investor as lead plaintiff because counsel's monitoring services for the institution created a conflict of interest and contravened the PSLRA's purpose of eliminating attorney-driven litigation.  *Iron Worker's Local No. 25 Pension Fund v. Credit-Based Asset Servicing and Securitization*, *LLC*, No. 08 Civ. 10841, 2009 U.S. Dist. LEXIS 44821, at *7 (S.D.N.Y. May 27, 2009).  In contrast, the record demonstrates that Mr. Antaramian is a typical class member who can adequately represent the interests of the entire class.  Accordingly, the Court should appoint Mr. Antaramian Lead Plaintiff.

## II.    ARGUMENT

### A.    SURS Has Failed to Provide the Court with Sufficient Proof That Consolidating the Dividend Actions with *Brockton* Is Appropriate

The interest of the Dividend Class is best served if the Dividend Actions proceed separately from *Brockton* because consolidation may cause unnecessary delay in the Dividend Actions.   Arguing for consolidation, SURS ignores three key differences between *Brockton* and the Dividend Actions:   (1) *Brockton* implicates dozens more defendants than the six Dividend Actions combined; (2) *Brockton*'s class period is more than twice the length of the class period in the Dividend Actions; and (3) *Brockton* asserts claims under the Securities Act of 1933, while the Dividend Actions do not.  Aside from conclusory remarks, SURS does not offer facts to support its argument that, in light of the materials differences between *Brockton* and the Dividend Actions, consolidation "will not slow down or complicate the discovery process."  SURS Opp. Br. at 11.

Nor does SURS submit any authority where the courts consolidated actions over objections in similar situations.  Each case relied upon by SURS presents facts different from those before the Court.[1]  Because SURS fails to carry its burden of proof, the Court should refuse to consolidate *Brockton* with the Dividend Actions.  *See Garber v. Randell*, 477 F.2d 711, 716 (2d Cir. 1973) (reversing order to consolidate a party who had "relatively narrow and limited" involvement in the underlying securities fraud actions); *see also Ocean Ships, Inc. v. Stiles*, No. 00 Civ. 5469 (RCC), 2003 U.S. Dist. LEXIS 20876, at **3-4 (S.D.N.Y. Nov. 18, 2003) (Casey, J.) (the party moving for consolidation bears the burden of proof).

Mr. Antaramian recognizes that, despite SURS' failure to carry its burden, the Court may *sua sponte* consolidate the Dividend Actions with *Brockton*.  Should the Court choose to do so, Mr. Antaramian seeks appointment as Lead Plaintiff for the entire class in the consolidated actions.

---

[1] *See Lowinger v. Global Cash Access Holdings, Inc.*, No. 08 Cv. 3516 (SWK), 2008 U.S. Dist. LEXIS 49169, at **4-5 & n.1 (S.D.N.Y. June 26, 2008) (Kram, J.) (consolidating actions arising from the same underlying events during the same class periods in the absence of any objections); *In re Bear Stearns Cos.*, Nos. 08 M.D.L. 1963 (RWS), 2008 U.S. Dist. LEXIS 106327, at **23-24 (S.D.N.Y. Jan. 5, 2009) (Sweet, J.) (consolidating actions that implicated similar defendants despite different class periods); *In re Orion Securities Litigation*, No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *8 (S.D.N.Y. July 8, 2008) (Sullivan, J.) (consolidating in the absence of objections); *Kaplan v. Gelfond*, 240 F.R.D. 88 (S.D.N.Y. 2007) (Buchwald, J.) (same); *Olsen v. New York Cmty. Bancorp*, 233 F.R.D. 101, 105 (E.D.N.Y. 2005) (same).

**B.    Mr. Antaramian Has the Largest Financial Interest in This Litigation**

**(1)    Under the *Lax* Test, Mr. Antaramian Demonstrates That He Has a Larger "Financial Interest" Than Other Movants**

The competing movants do not dispute that during whatever class period is used, Mr. Antaramian purchased and sold 900,000 shares of GE stock. *See* Chang Decl. Exs. B-C. Of that amount, 700,000 shares were on February 3 and 23, 2009. Thus, Mr. Antaramian did not sell the bulk of his GE stock until after January 23, 2009, when the first alleged curative disclosures were made. *See id.*

Nor do the competing movants dispute that courts have developed a four-factor *Lax* test for determining the size of a proposed lead plaintiff's "financial interest": (1) the gross number of shares purchased; (2) the net number of shares purchased; (3) the net funds spent; and (4) the net loss. *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (Buchwald, J.) (citing *Lax v. First Merchs. Acceptance Corp.*, Nos. 97 Civ. 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 11, 1997) (Coar, J.)). In applying the *Lax* test, courts have consistently placed the heaviest emphasis on the fourth factor. *Id.* at 94. Here, consideration of the fourth factor supports appointing Mr. Antaramian as Lead Plaintiff because his losses are $3,420,800 – over $600,000 higher than SURS' losses of $2,745,575 calculated under the last-in-first-out ("LIFO") methodology preferred in this District.[2]

Unable to change these facts, the competing movants advance two flawed theories to challenge Mr. Antaramian's presumptive lead plaintiff status. As discussed below, however, neither theory has any merit.

---

[2] As demonstrated in the updated loss sheet, attached as Exhibit 4 to the Supplemental Declaration of Albert Y. Chang ("Supplemental Decl."), SURS' updated losses are now smaller, at $2,570,935.

>     **(2)    The Loss Causation Theory Does not Preempt Mr.
>             Antaramian's Damages Because He Suffered Recoverable
>             Losses Based on Partial Curative Disclosures**

Relying on *Dura*, the competing movants argue that Mr. Antaramian has suffered no recoverable losses since he sold all his GE stock by February 23, 2009 – four days before GE's February 27, 2009 announcement that it would cut its dividend.  Even if applicable to a lead plaintiff motion, however, *Dura* applies only in situations where the shareholder plaintiff "sells the shares quickly *before* the relevant truth begins to leak out." *Dura*, 544 U.S. at 342 (emphasis added).  This is not the case here because, when Mr. Antaramian sold 100,000 shares on February 9, 2009 and 600,000 shares on February 23, 2009, partial curative disclosures are alleged to have already been leaked.  According to the *Klein* complaint, on February 6, 2009, "information began to seep into the market regarding GE's ability to pay the announced dividend." *Klein* Compl. ¶ 30.  On February 23, 2009, market analysts stated that GE's dividend was "highly vulnerable to a material cut as early as third quarter." *Id.* ¶¶ 31-32.  Moreover, *Brockton* alleges that GE made partial curative disclosure about the dividend cut as early as January 23, 2009.  *Brockton* Compl. ¶¶ 81-83.[3]  The *Brockton* complaint, of course, was drafted and filed by SURS' counsel.  Thus, SURS' argument that Mr. Antaramian sold before any partial curative disclosure is a particularly meritless, as it is contradicted by the allegations of SURS' own counsel.

These facts render *Dura* inapplicable because, under *Dura* and its progeny, "loss causation does not require full disclosure and can be established by partial disclosure

---

[3] *Brockton* alleges these facts of partial disclosure in paragraphs 81 through 83 under a section of the complaint entitled "The Truth Emerges."  And *Brockton* alleges that "on this news, GE's stock price plunged by $1.45." *Brockton* Compl. ¶ 82.

during the class period." *Montoya v. Mamma.com Inc.*, No. 05 Civ. 2313 (HB), 2005 U.S. Dist. LEXIS 10224, **6-7 (S.D.N.Y. May 31, 2005) (Baer, J.).  By the same token, the two district court decisions cited by SURS are inapposite because neither involved any partial disclosure.  *See In re Comverse Tech. Inc. Sec. Litig.*, No. 06 Civ. 1825, 2007 U.S. Dist. LEXIS 14878, (E.D.N.Y. Mar. 2, 2007) (Garaufis, J) (excluding from financial interest calculation losses that were incurred "before [defendant's] misconduct was ever disclosed"); *Kops v. NVE Corp.*, Civil File Nos. 06-0574 *et al.*, 2006 U.S. Dist. LEXIS 49713, at *14 (D. Minn. July 17, 2006) (Davis, J.) (no partial disclosure).

> **(3)    SURS Lacks a Legal and Factual Basis to Employ the Damage Calculation Method Based on the 90-Day Look-Back Provision**

In an attempt to manipulate the "financial interest" calculation,[4] SURS invents a new calculation method that has been repeatedly rejected.  Unable to find support from the PSLRA's lead plaintiff provisions, SURS looks to subsection (e) under 15 U.S.C. § 78u-4, entitled "[l]imitation on damages." 15 U.S.C. § 78u-4(e).  Without any factual or legal support, SURS proposes that to determine Mr. Antaramian's "financial interest" in the litigation, the Court should calculate his damages based on the mean trading price of GE stock during the 90-day period following January 23, 2009, the earliest partial curative disclosure alleged in the underlying actions.  The Court should reject this proposal for three reasons.

First, at least two courts – including one in this District – have refused to import § 78u-4(e)'s damage calculation into the "financial  interest" analysis to be employed on a

---

[4] In its opposition papers, SURS purports to conduct an "apples-to-apples" comparison of financial interest.  As indicated in the exhibits to the Block Declaration, however, SURS calculated its losses based on the beginning date of the *Brockton* class period and the end date of the Dividend Actions class period.  *See* Block Decl. Ex. B. Such manipulation of class periods is merely an effort to maximize SURS' losses.

lead plaintiff motion under § 78u-4(a)(3)(B).    In *Varghese v. China Shenghuo Pharmaceutical Holdings, Inc.*, the court rejected a proposal identical to the one advanced by SURS here.  589 F. Supp. 2d 388, 396 n.5 (S.D.N.Y. 2008) (Marrero, J.).  The *Varghese* court reasoned that "§ 78u-4(e)(1) addresses the PSLRA's limitation on *damages*, not the methodology for determining a proposed lead plaintiff's financial interest in the relief sought."  *Id.* (citing *In re Ribozyme Pharms., Inc. Sec. Litig.*, 192 F.R.D. 656, 661-62 (D. Colo. 2000) (Babcock, J.)) (emphasis added).  This reasoning is sound because, had Congress intended to employ a damages calculation in the lead plaintiff selection process, Congress could have used the word "damage," instead of "financial interest" in § 78u-4(a)(3)(B)(iii)(I)(bb).  *See Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004) (describing the need to interpret a statute in a way that gives meaning to each word).  Thus, this Court should adopt the reasoning in *Varghese*.

Second, Congress enacted the 90-day look-back provision to "address the problem of 'windfall' damages."  *In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, 697 n.29 (D.N.J.  2006) (Brown, C.J.) (citing legislative history).  As demonstrated in his certification, Mr. Antaramian gained no windfall from trading GE stock during the class period, but instead incurred real losses as a result of the fraud alleged in the underlying actions.  *See* Chang Decl. Exs. C-D.[5]  Thus, § 78u-4(e) is inapplicable to calculating his damages.

---

[5] Both the 90-day look-back provision and the LIFO and FIFO (first-in-first-out) methodologies attempt to determine, among other things, whether a class memer could have actually made money rather than suffered losses during the class period.  One of the ways such methods accomplish this purpose is to examine how many shares the class member owned before the beginning of the class period.  Here, Mr. Antaramian did not own any GE shares prior to the beginning of the class period.

Third, SURS' proposed damage calculation is inherently unreliable because the selection of January 23, 2009 as a beginning date of the look-back period is arbitrary. At this pleadings stage, there is no proof that January 23, 2009 was the date of the earliest curative disclosure. Nor is the legal standard settled in determining when the look-back period should begin. *See In re Hollinger Int'l, Inc. Sec. Litig.*, No. 04C-0834, 2006 U.S. Dist. LEXIS 47173, at **42-43 (N.D. Ill. June 28, 2006) (Coar, J.). Reliability aside, SURS' proposal is part of its consistent effort to manipulate the class period and damage calculation for the sole purpose of enhancing its candidacy for lead plaintiff appointment. Thus, the Court should reject SURS' proposal.[6]

### C. Mr. Antaramian Satisfies Federal Rule of Civil Procedure 23 and Is Therefore Entitled to the Statutory Presumption of Lead Plaintiff

As demonstrated in his opening and opposition briefs, Mr. Antaramian is a typical class member because, like other class members, he purchased GE stock at artificially inflated prices during the class period and suffered damages as a result of his purchases. *Caiafa v. Sea Containers, Ltd.*, Nos. 06 Civ. 2565 (RMB) *et al.*, 2006 U.S. Dist. LEXIS 57776, at *6 (S.D.N.Y. Aug. 14, 2006) (Berman, J.). Furthermore, he shares with all class members the goal of maximizing class recovery and has selected experienced counsel to pursue the class claims. *See* Chang Decl. Exs. D, K. Accordingly, he meets Rule 23's typicality and adequacy requirements and is the presumptive lead plaintiff based on his financial interest. *Caiafa*, 2006 U.S. Dist. LEXIS 57776, at *8 n.3. Because the other movants have offered no evidence to challenge Mr. Antaramian's presumptive lead plaintiff status, the Court should appoint him Lead Plaintiff.

---

[6] Should the Court consider SURS' calculation under § 78u-4(e), Mr. Antaramian respectfully requests leave to submit further briefing on this issue.

**D.    SURS' Adequacy Is Questionable Because It May Have Abdicated Its Oversight Role to Berman DeValerio, Which Performs Free Monitoring Services for SURS**

Even if SURS had the largest financial interest, which it does not, it is not an adequate or typical class representative.  Subsequent to the time that the opposition briefs in this case were filed, Judge Rakoff issued an order dated May 27, 2009 holding that an institutional investor could not be an adequate lead plaintiff in a PSLRA securities fraud class action lawsuit due to the fact that the institutional investor's counsel performed free "monitoring" services for the institution in exchange for the institution selecting such counsel to be its counsel in the securities case.  *See Iron Worker's Local No. 25 Pension Fund v. Credit-Based Asset Servicing and Securitization, LLC*, No. 08 Civ. 10841, 2009 U.S. Dist. LEXIS 44821 (S.D.N.Y. May 27, 2009).   Noting that the purpose of the PSLRA was to avoid lawyer-driven litigation, Judge Rakoff held that the free monitoring service  performed by counsel for the institutional investor represented "a clear incentive for [the law firm] to discover 'fraud' in investments it monitors and to recommend to the Fund's non-lawyer administrator (and, through him, to the trustees) that the Fund, at no cost to itself, bring a class action lawsuit.  In other words, the practice fosters the very tendencies toward lawyer-driven litigation that the PSLRA was designed to curtail." *Id.* at **7-8.  Given these issues, which  caused the court to "also question[] whether the seeming conflict of interest inherent in this arrangement violated ethical prohibitions," (*id.* at *8), Judge Rakoff refused to appoint the institutional investor as lead plaintiff because it was not an adequate lead plaintiff.

Here, lead plaintiff movant SURS also apparently receives free monitoring service from Berman DeValerio, its chosen counsel in this case.  Berman DeValerio's

website contains a separate section entitled "Institutional Investors" which confirms that "[n]early 70 public and union pension fund clients now retain Berman DeValerio as monitoring and evaluation counsel or as litigators in stock fraud lawsuits." *See* Supplemental Decl. Ex. 1.  Berman DeValerio's website further states:

> "**Monitoring**.  More than two dozen institutions have engaged Berman DeValerio to electronically review their transactions and alert staff to relevant cases. This free service allows the funds to gauge the extent of fraud-related damages quickly enough to meet legal deadlines.  Once a class action is filed, federal law gives investors 60 days to apply for designation as 'lead plaintiff,' or class representative."

> "**Evaluation**.  If losses due to fraud are significant, the firm conducts a thorough evaluation of the case using an in-house team of attorneys, investigators, and forensic accountants.  The firm then issues a detailed recommendation to the fund's staff covering options including:  filing a lead plaintiff motion, either alone or with another fund. . ."

*See* Supplemental Decl., Ex. 2.  Thus, Berman DeValerio performs the very monitoring activity for its institutional investors like SURS that Judge Rakoff determined could constitute a conflict of interest making the institutional investor an inadequate representative.  Therefore, SURS may be an inadequate representative and the Court should order an evidentiary hearing regarding the facts surrounding SURS' decision to seek appointment as a lead plaintiff in this case.

## III.    CONCLUSION

The oppositions to Mr. Antaramian's motion are riddled with inaccurate factual statements and faulty legal reasoning and thus cannot change the simple fact that Mr. Antaramian is the presumptive lead plaintiff because he lost over $3.4 million as a result of the fraud alleged in the underlying actions.  Nor can the opposition muster any proof that Mr. Antaramian is an inadequate class representative.  The Court should therefore appoint Mr. Antaramian Lead Plaintiff in the consolidated actions.

Dated:  June 2, 2009

Respectfully submitted,

JOHNSON BOTTINI, LLP

s/ Albert Y. Chang
_____
Francis A. Bottini, Jr.
Albert Y. Chang (AC-5415)
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone:  (619) 230-0063
Facsimile:  (619) 233-5535

*Proposed Lead Counsel and Attorneys for
Movant Jack Antaramian*

HORWITZ, HORWITZ & PARADIS
Paul O. Paradis (PP-9335)
Michael A. Schwartz (MS-2352)
Frank R. Schirripa (FS-1960)
28 West 44th Street, 16th Floor
New York, NY 10036
Telephone: (212) 404-2200
Facsimile: (212) 404-2226

*Proposed Liaison Counsel and Attorneys for
Movant Jack Antaramian*