```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

IN RE GENERAL ELECTRIC              :
SECURITIES LITIGATION
                                    :
- - - - - - - - - - - - - - - - - -x
                                    :
THIS DOCUMENT RELATES TO            :

- - - - - - - - - - - - - - - - - -x
                                    :
KAREN A. CHRISTIANSEN,
                                    :
               Plaintiff,                        MEMORANDUM DECISION
                                    :
         - against -                             09 Civ. 1951 (DC)
                                    :
JEFFREY R. IMMELT et al.,
                                    :
               Defendants.
                                    :
- - - - - - - - - - - - - - - - - -x
                                    :
         AND RELATED CASES
                                    :
- - - - - - - - - - - - - - - - - -x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/29/'09

**APPEARANCES:**      (See last page.)

**CHIN, District Judge**

       Before the Court are seven related securities class actions alleging that General Electric Company ("GE") misled investors about the stability of GE's financial services subsidiary, GE Capital, and GE's resultant ability to continue its century-old tradition of paying substantial stock dividends. The class actions cumulatively allege violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder as well as §§ 11, 12(a)(2), and 15 of the Securities Act of 1933.

Before the Court are three competing motions for consolidation, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; appointment of lead plaintiff, pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and approval of lead plaintiff's choice of lead counsel, pursuant to Federal Rule of Civil Procedure 23. For the following reasons, the seven cases are consolidated; the State Universities Retirement System of Illinois ("SURS") is appointed lead plaintiff; and SURS's selection of lead and liaison counsel is approved. All other motions pending before the Court related to these actions are denied.

## BACKGROUND

The allegations of the complaints are assumed to be true for purposes of these motions. They are summarized as follows:

GE, a global technology, media, and financial services company, has paid a quarterly dividend to investors every year since 1899 and has not cut its dividend since 1938. Its subsidiary, GE Capital, operates in commercial finance, consumer finance, leasing and real estate services.

Beginning in September 2008, GE misled its investors about the true credit quality of GE Capital. GE publicly forecast $5 billion in earnings for GE Capital in 2009 while hiding billions of troubled assets on its books. GE also falsely assured investors of the company's financial ability to pay dividends of $0.31 per share. Despite public statements

promising to maintain GE's current dividend during 2009, on February 27, 2009, GE cut its dividend by 68%, to $0.10 per share.

As a result, GE's stock price plunged from $9.10 per share at close on February 26, 2009 to $7.60 per share on March 2, 2009. On March 5, 2009, GE's Chief Financial Officer announced that roughly 98% of GE Capital's assets were carried at historic cost and not marked to market. On this news, GE stock price fell further, closing at $6.66 per share. Finally, on March 18, 2009, GE held a conference call with investors disclosing for the first time that "large amounts of GE Capital's loans are to borrowers with junk, or sub investment grade, ratings." On these disclosures, GE stock price fell $1.00. Class members have suffered damages as a result of defendants' wrongful acts and omissions.

The first of the seven class action complaints was filed on March 3, 2009. The additional cases and these motions followed.[1]

### DISCUSSION

A.  **Consolidation**

I conclude that consolidating the seven class actions serves the interest of judicial economy and will not prejudice

---

[1] The individual actions include: Morgan v. General Electric Co. and Jeffrey R. Immelt, No. 09 Civ. 2084; Pare v. Immelt et al., No. 09 Civ. 2566; Klein v. General Electric Co. et al., No. 09 Civ. 2582; City of Brockton Contributory Retirement System v. General Electric Co. et al., No. 09 Civ. 3787; Gupta v. Immelt and General Electric Co., No. 09 Civ. 4130; and Watson v. General Electric Co. et al., No. 09 Civ. 4152.

members of the class. Accordingly, the seven cases are hereby consolidated.

1.  **Applicable Law**

Consolidation is appropriate where there are actions involving "common question[s] of law or fact" pending before the Court. See Fed. R. Civ. P. 42(a). "Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." Kaplan v. Gelfond, 240 F.R.D. 88, 91 (S.D.N.Y. 2007). Consolidation promotes judicial convenience and avoids unnecessary costs to the parties. See Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990); In re Bear Stearns Cos., Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig., 08 M.D.L. No. 1963 (RWS), 2009 WL 50132, at *4 (S.D.N.Y. Jan. 5, 2009). In deciding whether to consolidate related cases, "[a] judge must balance the gains in judicial efficiency with any threats of prejudice and confusion." Ocean Ships, Inc. v. Stiles, No. 00 Civ. 5469 (RCC), 2003 WL 22741457, at *1 (S.D.N.Y. Nov. 19, 2003).

2.  **Application**

Five motions for consolidation were initially filed in this matter. Of the five initial movants, three urged the Court to consolidate all seven actions: (1) SURS; (2) Benson Duruaku, who, by motion dated May 22, 2009, withdrew his motions and

instead moved in support of SURS's motions; and (3) the Kirk Group, which has failed to oppose or reply to competing motions.[2] The remaining two movants, Jack Antaramian and, collectively, Daniel Eimer and Ligia DeAndrade ("Eimer") argue that only six actions -- which they refer to as the "dividend actions" -- should be consolidated.  They would exclude City of Brockton Contributory Retirement System v. General Electric Co. et al., No. 09 Civ. 3787.  Thus, there is no opposition to consolidating the six dividend actions.  The movants dispute only whether Brockton should be consolidated as well.  Antaramian and Eimer argue that the dividend actions should proceed separately from Brockton because the dividend actions identify a similar and shorter class period, name the same defendants, and allege violations solely of the Exchange Act while Brockton extends the class period, adds defendants, and alleges violations of the Securities Act relating to an October 1, 2008 offering.  I find these arguments unavailing.

First, there is substantial overlap in the complaints.  The Brockton complaint's first paragraph summarizing the allegations reads:  "Defendants falsely stated that GE would maintain its $0.31 per share dividend, while concealing that the Company did not have sufficient cash on hand and cash flow to

---

[2] The Kirk Group's motions to consolidate, serve as lead plaintiff, and for approval of its selected lead counsel are considered withdrawn.  Even if the Court were to consider the motions, the Kirk Group would not have been selected lead plaintiff as its estimated loss ($237,000) is considerably less than the loss suffered by other movants.

achieve that goal." The Brockton action, therefore, incorporates fully the allegations of the dividend actions. The contention that Brockton's allegations concerning the October 2008 offering makes the case sufficiently distinct to proceed separately is not persuasive. The seven actions contain common questions of fact and law.

Second, consolidating the actions is the most efficient course. Allowing the dividend actions to proceed separately from Brockton would result in duplicative efforts, wasting both the Court's time and the parties' time and money.

Third, consolidating Brockton with the derivative actions will not result in confusion or prejudice. Antaramian and Eimer correctly note that Brockton differs from the dividend actions because it alleges Securities Act violations not included in the dividend actions, names additional defendants, and identifies a lengthier class period. The additional time period, allegations, and defendants, however, are de minimis for two reasons: (1) Brockton does not take anything away from the dividend actions, but only adds to it, and (2) Brockton's additions are in line with the overarching allegations of the dividend actions -- that defendants misrepresented the financial security of GE in violation of federal securities laws, thereby artificially inflating the price of the stock and causing shareholders significant financial damages. When the lead plaintiff files a consolidated complaint, all differences will be resolved while the tone and direction of the lawsuit will remain

unchanged. See Olsen v. New York Cmty. Bancorp, Inc., 233 F.R.D. 101, 105 (E.D.N.Y. 2005). For all of these reasons, the seven related cases are hereby consolidated.

B.  **Lead Plaintiff**

    1.  **Applicable Law**

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") requires the court to appoint a "lead plaintiff" in private securities class actions who is "the member . . . of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). This provision of the PSLRA was intended to ensure that parties with "significant financial interests in the litigation" would oversee securities class actions and control the management of such suits, including the selection of counsel. In re McDermott Int'l Sec. Litig., No. 08 Civ. 9943 (DC), 2009 WL 579502, at *1 (S.D.N.Y. Mar. 6, 2009).

Determination of the "most capable" class representative entails a two-step process. First, the PSLRA sets forth a rebuttable presumption that "the most adequate plaintiff" is the person who or group that (a) has either filed the complaint or made a motion for appointment as lead plaintiff, (b) has "the largest financial interest in the relief sought by the class," and (c) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In deciding which proposed lead plaintiff has "the largest financial interest in the relief sought by the

class," courts consider four factors: "(i) the gross number of shares purchased; (ii) the net number of shares purchased; (iii) the net funds spent; and (iv) the net loss."  In re McDermott Int'l, 2009 WL 579502, at *2; see also In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 121 (S.D.N.Y. 2002).

As for the requirements of Rule 23, at this stage a proposed lead plaintiff need only make a "preliminary showing" that it will satisfy the typicality and adequacy requirements of Rule 23.  Kaplan, 240 F.R.D. at 94; In re Initial Pub. Offering, 214 F.R.D. at 121.

Second, other members of the purported class may try to rebut the statutory presumption by showing that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of "unique defenses."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### 2. **Application**

#### a. **Presumptive Lead Plaintiff**

The following putative class members have timely moved for appointment as lead plaintiff:

-- Antaramian, represented by Johnson Bottini, LLP as lead counsel and Horwitz, Horwitz & Paradis as liaison counsel

-- Eimer, represented by Harwood Feffer LLP

-- SURS, represented by Berman DeValerio as lead counsel and Lowey Dannenberg Cohen & Hart, P.C. as liaison counsel

Eimer moved to serve as lead plaintiff of the dividend actions only. Thus, his motion to serve as lead plaintiff of the consolidated class is moot and hereby denied.[3] Accordingly, the contenders for lead plaintiff are SURS and Antaramian.

In determining the presumptive lead plaintiff, the Court looks to the movant with the largest financial interest in the relief sought. The largest financial interest is determined by considering the gross number of shares purchased, net number of shares purchased, net funds spent, and net loss. Here, Antaramian purchased 900,000 gross shares and 0 net shares, spent $12,947,100, and claims losses of $3,420,800. (Chang Decl. Ex. B). SURS purchased 553,066 gross shares and 194,390 net shares, spent $4,941,346, and claims losses of $2,745,575. (Block Decl. Ex. D). Courts have generally placed the greatest emphasis on the last factor: the loss suffered by the movant. See Kaplan, 240 F.R.D. at 93 (citing cases). By his own calculation, Antaramian's loss is the greatest. Opposing movants, however, argue that Antaramian's loss is significantly less than claimed. For the following reasons, I agree and conclude that SURS has shown the greatest loss at this preliminary stage.

First, SURS and Eimer argue, relying on Dura Pharm., Inc. v. Broudo, 544 U.S. 336 (2005), that Antaramian has not suffered any recoverable loss because he sold all of his shares

---

[3] Even if Eimer had moved to serve as lead plaintiff of a consolidated class including Brockton, his motion would have been denied as his stated loss ($322,445) is significantly less than the other movants.

before the February 27, 2009 curative disclosure.  In <u>Dura Pharm., Inc.</u>, the Supreme Court recognized that "if . . . the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."  544 U.S. at 342.  SURS's and Eimer's argument is not entirely persuasive because the <u>Brockton</u> complaint -- albeit the very complaint Antaramian moved to proceed separately from -- alleges that a partial disclosure occurred on January 23, 2009 and Antaramian did not sell the bulk of his shares until February 23, 2009.  Loss causation "does not require full disclosure and can be established by partial disclosure during the class period which causes the price of shares to decline."  <u>Montoya v. Mamma.com Inc.</u>, No. 05 Civ. 2313 (HB), 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005) (emphasis omitted).  Thus, SURS's and Eimer's argument does not definitively detract from Antaramian's stated loss because <u>Brockton</u> alleges there was an earlier partial disclosure.

        Second, SURS argues that the PSLRA's 90-day look-back provision, 15 U.S.C. § 78u-4(e), should be applied in calculating Antaramian's loss.  If the look-back provision is applied, SURS alleges that Antaramian's loss would decrease to $1,807,910 and SURS is the movant with the greatest loss.  (Block Decl. Ex. A).  In opposing this argument, Antaramian directs the Court's attention to <u>Varghese v. China Shenghuo Pharm. Holdings, Inc.</u>, which rejected an identical argument.  589 F. Supp. 2d 388, 396 n.5 (S.D.N.Y. 2008).  In <u>Varghese</u>, the Court held that "§

78u-4(e)(1) addresses the PSLRA's limitation on damages, not the methodology for determining a proposed lead plaintiff's financial interest in the relief sought." Id. Other courts in this district, however, have applied the look-back provision to this very type of motion, in direct contrast to Varghese. See In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 102, 102 n.43 (S.D.N.Y. 2005) (appointing as lead plaintiff movant that applied § 78u-4(e)(1) to its loss calculation); see also In re Nat'l Australia Bank Sec. Litig., No. 03 Civ. 6537 (BSJ), 2006 WL 3844465, at *8 (S.D.N.Y. Oct. 25, 2006) (determining that movant lacked standing as a result of application of § 78u-4(e)); Olsen v. New York Cmty. Bancorp, Inc., 233 F.R.D. 101, 106 n.5 (E.D.N.Y. Aug. 9, 2005) (mentioning in passing use of § 78u-4(e)(1) to calculate loss). I conclude that the 90-day look-back provision should be applied in calculating Antaramian's purported loss such that it totals $1,807,910.

Accordingly, SURS is the presumptive lead plaintiff. First, SURS has suffered the greatest loss. Second, SURS is the type of sophisticated institutional investor envisioned by Congress in the enactment of the PSLRA. See Ferrari v. Impath, Inc., No. 03 Civ. 5667 (DAB), 2004 WL 1637053, at *3 (S.D.N.Y. July 20, 2004). Third, SURS "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). SURS has made a preliminary showing that it can meet the adequacy and typicality requirements of Rule 23. SURS satisfies the typicality requirement because its claims

"arise[] from the same course of events" and make "similar legal arguments to prove the defendant[s'] liability" as the other putative class members. In re Bear Stearns, 2009 WL 50132, at *8 (defining standard for typicality); see Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 253 (S.D.N.Y. 2003). SURS satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel. See Kaplan, 240 F.R.D. at 94 ("The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.").

### b. Rebutting the Presumption

The statutory presumption in favor of SURS is not rebutted. The other movants for appointment as lead plaintiff have not shown that SURS will not fairly and adequately protect the interests of the class or that it, because of "unique defenses," is incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Antaramian argues that SURS _may_ have abdicated its oversight role to Berman DeValerio because Berman DeValerio _may_ perform free monitoring services for SURS. In a recent decision discussing this issue, Judge Rakoff found that such a free monitoring service "fosters the very tendencies toward

lawyer-driver litigation that the PSLRA was designed to curtail." <u>Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Serv. and Securitization, LLC</u>, Nos. 08 Civ. 10841 (JSR), 09 Civ. 1392 (JSR), 2009 WL 1444400, at *2 (S.D.N.Y. May 26, 2009). Judge Rakoff noted, however, that other district courts have not been troubled by these arrangements. <u>See id.</u> at *3. Moreover, <u>Iron Workers Local No. 25 Pension Fund</u> was not decided on these grounds and, because the two competing movants both had the benefit of free monitoring services, the Court appointed as lead plaintiff a movant that used a number of monitoring services.[4] <u>Id.</u> at *4. While the concerns raised by Judge Rakoff give me some pause, they are not dispositive in this case because (1) Antaramian has not alleged that Berman DeValerio actually performs this service for SURS and SURS has not had an adequate opportunity to respond; (2) if SURS is indeed monitored, it may be monitored by more than one law firm; and (3) whether monitoring by law firms truly presents a conflict of interest is an open question.

In any event, Antaramian does not make as good a representative of the class as SURS because Antaramian (1) did not buy stock pursuant to the October offering, which is likely

---

[4] The Court found it less troubling that a number of free monitoring services were utilized instead of just one because, according to the Court, the conflict of interest is more significant if a monitoring firm is guaranteed to bring the potential lawsuit. <u>Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Serv. and Securitization, LLC</u>, Nos. 08 Civ. 10841 (JSR), 09 Civ. 1392 (JSR), 2009 WL 1444400, at *5 (S.D.N.Y. May 26, 2009).

to play a significant role in this litigation[5]; (2) opposed consolidation of the dividend actions with Brockton, which is the only action to allege violations of the Securities Act; (3) bought and sold all 900,000 shares of GE stock between December 26, 2008 and February 3, 2008; and (4) owned zero shares of stock on the date of the dividend cut announcement.

For all of these reasons, I appoint SURS lead plaintiff.

### c.   Lead Plaintiff's Selection of Counsel

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 87u-4(a)(3)(B)(iv). SURS has selected Berman DeValerio as lead counsel and Lowey Dannenberg Cohen & Hart, P.C. as liaison counsel.  The firms are highly experienced in prosecuting securities class actions. Accordingly, SURS's choice of counsel is approved.

### CONCLUSION

For the reasons set forth above, the seven related securities actions are consolidated.  SURS is appointed lead plaintiff and its choice for lead and liaison counsel is approved.  Lead counsel shall submit a proposed consolidation order on notice within ten days hereof.  The parties shall meet

---

[5] The Court recognizes that "nothing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims that may be made on behalf of all of the potential classes."  In re Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189, 204 (S.D.N.Y. 2003).

and confer within twenty days hereof to agree upon an initial case management order for submission to the Court, for its approval.

       SO ORDERED.

Dated:    New York, New York
            July 29, 2009

                                              DENNY CHIN
                                              United States District Judge

**APPEARANCES**

Attorneys for Plaintiff Jack Antaramian:

    JOHNSON BOTTINI, LLP
        By:  Francis A. Bottini, Jr., Esq.
             Albert Y. Chang, Esq.
    655 West Broadway, Suite 1400
    San Diego, CA  92101

    HORWITZ, HORWITZ & PARADIS
        By:  Michael A. Schwartz, Esq.
             Paul O. Paradis, Esq.
             Frank R. Schirripa, Esq.
    28 West 44th Street, 16th Floor
    New York, NY  10036

Attorneys for Plaintiffs Daniel Eimer and Ligia DeAndrade:

    HARWOOD FEFFER LLP
        By:  Robert I. Harwood, Esq.
             Samuel K. Rosen, Esq.
             Daniella Quitt, Esq.
    488 Madison Avenue, 8th Floor
    New York, NY  10022

Attorneys for Plaintiff The Kirk Group:

    LAW OFFICES OF BERNARD M. GROSS, P.C.
        By:  Deborah R. Gross, Esq.
             Robert P. Frutkin, Esq.
    Suite 450, Wanamaker Building
    100 Penn Square East
    Philadelphia, PA 19107

    ABBEY SPANIER RODD & ABRAMS, LLP
        By:  Karin E. Fisch, Esq.
             Nancy Kaboolian, Esq.
    212 East 39th Street
    New York, NY  10016

Attorneys for Plaintiff The State Universities Retirement System of Illinois:

    BERMAN DEVALERIO
        By:  Jeffrey C. Block, Esq.
             Abigail R. Romeo, Esq.
    One Liberty Square
    Boston, MA 02109
        By:  Joseph J. Tobacco, Jr., Esq.
    425 California Street
    Suite 2100
    San Francisco, CA 94104

```
            LOWEY DANNENBERG COHEN & HART, P.C.
                By:  Richard W. Cohen, Esq.
                     David C. Harrison, Esq.
            White Plains Plaza
            One North Broadway
            White Plains, NY 10601
```