## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re General Electric Co. Sec. Litig. | ) **Civ. No. 09-CIV-1951 (DLC)**<br>) ECF CASE<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, APPROVAL OF NOTICE TO THE SETTLEMENT CLASS AND CERTIFICATION OF THE SETTLEMENT CLASS <u>FOR SETTLEMENT PURPOSES ONLY</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................. ii

I.     PRELIMINARY STATEMENT ............................................................................... 1

II.    DESCRIPTION OF THE LITIGATION .................................................................. 2

III.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL........... 6

       A.    The Proposed Settlement Is the Result of Well Grounded, Good Faith,
             Arm's-Length Negotiations ..................................................................... 7

       B.    The Proposed Settlement Falls Within the Range of Reasonableness and
             Merits Issuance of Notice and a Hearing on Final Approval................................ 8

IV.    THE COURT SHOULD APPROVE THE FORM OF THE NOTICE AND PLAN
       FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS...................................... 9

V.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
       SETTLEMENT PURPOSES UNDER RULES 23(a) AND (b)(3) ................................. 11

       A.    The Settlement Class Members Are Too Numerous to Be Joined ...................... 12

       B.    Common Questions of Law and Fact Exist ................................................. 13

       C.    Lead Plaintiff's Claims Are Typical of Those of the Settlement Class............... 14

       D.    Lead Plaintiff and Lead Counsel Will Fairly and Adequately Protect the
             Interests of the Settlement Class.............................................................. 15

       E.    The Requirements of Rule 23(b)(3) Are Satisfied in this Action ...................... 17

             1.    Common Questions of Law and Fact Predominate ................................. 17

             2.    A Class Action Is Superior to Other Available Methods for the Fair
                   and Efficient Adjudication of this Controversy ..................................... 18

VI.    PROPOSED SCHEDULE OF EVENTS ...................................................................... 19

VII.   CONCLUSION.......................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*In re "Agent Orange" Prod. Liab. Litig.*,
  818 F.2d 145 (2d Cir. 1987)....................................................................................13

*Amchem Prods., Inc., v. Windsor,*
  521 U.S. 591, 625 (1997).........................................................................................17

*In re Antibiotic Antitrust Actions*,
  333 F. Supp. 291 (S.D.N.Y. 1971) ..........................................................................11

*In re Arakis Energy Corp. Sec. Litig.,*
  No. 95 Civ. 3431 (ARR), 1999 WL 1021819 (E.D.N.Y. Apr. 27, 1999)................17

*Aramburu v. Healthcare Fin. Servs.,*
  No. 02 CV 6535 (ARR), 2005 WL 990995 (E.D.N.Y. Apr. 14, 2005)............. 11-12

*In re AT & T Mobility Wireless Data Services Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) .......................................................................11

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988)..................................................................................................18

*Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco
  Managed Care,*
  504 F.3d 229, 245 (2d Cir. 2007).............................................................................15

*In re Checking Account Overdraft Litig.,*
  275 F.R.D. 654 (S.D. Fla. 2011) ..............................................................................11

*In re Checking Account Overdraft Litig.,*
  No. 09-MD-02036-JLK, 2012 WL 4174502 (S.D. Fla. Sept. 19, 2012) .................11

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473, 483 (2d Cir. 1995)...............................................................................12

*Cross v. 21st Century Holding Co.*,
  No. 00 Civ. 4333 (MBM), 2004 WL 307306 (S.D.N.Y. Feb. 18, 2004)................12

*In re Currency Conversion Fee Antitrust Litig.*,
  MDL Nos. 1409, M 21-95, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006)................6

*In re Drexel Burnham Lambert Grp.*,
  960 F.2d 285 (2d Cir. 1992)......................................................................................15

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
   89 F.R.D. 87 (S.D.N.Y. 1981) ...................................................................13

*In re Gen. Elec. Co. Sec. Litig.*,
   857 F. Supp. 2d 367 (S.D.N.Y. 2012) ................................................ 13-14, 18

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................9

*In re Independent Energy Holdings PLC*,
   No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ..............7

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) .................................................................6

*In re Interpublic Sec. Litig.*,
   No. 02 Civ. 6527 (DLC), 2003 WL 22509414 (S.D.N.Y. Nov. 6, 2003)...............15

*In re Interpublic Sec. Litig.*,
   Nos. 02-6527, 03-1194, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ..................6

*Leung v. Home Boy Rest. Inc.*,
   No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861 (S.D.N.Y. Feb.18, 2009).........7

*Malta v. Fed. Home Loan Mortg. Corp.*,
   No. 10-CV-1290 BEN (NLS), 2013 WL 444619 (S.D. Cal. Feb 5, 2013)............11

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002)...................................................................17

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................ 6-7, 8, 9

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) ...............................................................13

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   191 F.R.D. 369 (S.D.N.Y. 2000) ..............................................................14

*In re PaineWebber Ltd. P'ships Litig.*,
   147 F.3d 132 (2d Cir. 1998)......................................................................6

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) .........................................................7, 9, 11

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)................................................................12, 15

*In re Sadia, S.A. Sec. Litig.*,
    269 F.R.D. 298 (S.D.N.Y. 2010) ....................................................................14

*In re Salomon Analyst Metromedia Litig.*,
    544 F.3d 474 (2d Cir. 2008)..........................................................................18

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................11

*In re SCOR Holding (Switzerland) AG Litig.*,
    537 F. Supp. 2d 556 (S.D.N.Y. 2008)..................................................... *passim*

*Toure v. Central Parking Sys. of New York*,
    No. 05 Civ. 5237 (WHP), 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) .............15

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ............................................................15, 18

*In re Vivendi Universal, S.A., Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) .......................................................... *passim*

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S.Ct. 2541 (2011)..................................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)...........................................................................6, 7

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ..........................................................15, 16, 19

## STATUTES

15 U.S.C. §§ 78u-4 ...........................................................................................1

15 U.S.C. § 78u-4(a)(4) .....................................................................................9

15 U.S.C. § 78u-4(a)(7) ...................................................................................10

Fed. R. Civ. P. 23(a) ................................................................................11, 17

Fed. R. Civ. P. 23(a)(1)..............................................................................12, 13

Fed. R. Civ. P. 23(a)(2)..............................................................................13, 14

Fed. R. Civ. P. 23(a)(3).....................................................................................14

Fed. R. Civ. P. 23(a)(4).....................................................................................15

Fed. R. Civ. P. 23(b) .........................................................................................17

Fed. R. Civ. P. 23(b)(3).................................................................................11, 17, 18

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................9, 11

Fed. R. Civ. P. 23(c)(3)............................................................................................10

Fed. R. Civ. P. 23(e) ..................................................................................................6

Fed. R. Civ. P. 23(e)(1)........................................................................................9, 11

Fed. R. Civ. P. 23(g)................................................................................................15

Fed. R. Civ. P. 23(g)(1)(A)......................................................................................16

Fed. R. Civ. P. 23(g)(1)(B)......................................................................................16

## I.    **PRELIMINARY STATEMENT**

Lead Plaintiff, the State Universities Retirement System of Illinois ("Lead Plaintiff" or "SURS") respectfully submits this memorandum in support of its unopposed motion seeking preliminary approval, class certification and other relief (the "Motion") in connection with a settlement reached with Defendants General Electric Company ("GE" or the "Company"),[1] Jeffrey Immelt ("Immelt") and Keith Sherin ("Sherin") (collectively, "Defendants").

After extensive investigation and discovery, including the review of roughly 2 million pages of documents and interviews of numerous witnesses, as well as two arm's-length in-person mediation sessions facilitated by the Hon. Daniel H. Weinstein (Ret.), an experienced and highly respected mediator and former California State Court Judge, Lead Plaintiff and Defendants have agreed to settle all claims against Defendants in this Action in exchange for a payment of $40 million.  The terms of the Settlement are set forth in the Stipulation of Settlement and its accompanying exhibits.

Lead Plaintiff's Motion seeks an order granting:

- Preliminary approval of the settlement of claims against Defendants in this class action, as set forth in the Stipulation of Settlement;

- Approval of the form, substance, and the requirements of the proposed postcard notice, full notice and summary notice of settlement, appended as Exhibits A, B, and C to the proposed preliminary approval order, and the means and methods for disseminating notice, as comporting with due process and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§ 78u-4 *et seq.*

- Preliminary certification of a settlement class (the "Settlement Class") consisting of all Persons that, from September 25, 2008 through March 19, 2009, inclusive (the "Class Period"), purchased or otherwise acquired GE Common Stock either in the open market and/or traceable to a registration statement.

---

[1]    All capitalized terms not otherwise defined herein have the same meaning as that set forth in the Stipulation and Agreement of Settlement dated April 29, 2013, ("Stipulation of Settlement") submitted contemporaneously herewith as Exhibit 1 to the Declaration of Joseph J. Tabacco ("Tabacco Decl.").

- Appointment of SURS as Class Representative and Berman DeValerio as Class Counsel; and

- Scheduling a hearing at which final approval of the Settlement, plan of allocation and an award of attorneys' fees and reimbursement of expenses may be considered.

Lead Plaintiff has agreed to settle this class action with Defendants for $40 million in cash. This substantial proposed settlement represents an excellent result for the Settlement Class, particularly given the numerous and substantial risks the Lead Plaintiff faced in this litigation. Although Lead Plaintiff believes the claims it has asserted are meritorious, and Defendants believe their defenses are meritorious, the parties both recognize the uncertainty and the risk attendant to any litigation – especially a complex class action such as this – and the difficulties, substantial expense and length of time necessary to prosecute the litigation through class certification, expert discovery, summary judgment motions, trial, post-trial motions and appeals. Based upon their respective consideration of these and other relevant factors, the Settling Parties have settled the Action on the terms and conditions set forth in the Stipulation of Settlement.

## II.    **DESCRIPTION OF THE LITIGATION**

This Action was commenced on March 3, 2009 by the filing of an initial complaint alleging that the Defendants, the former Underwriter Defendants and other individuals violated the federal securities laws. Thereafter, several additional securities class action complaints were filed and subsequently consolidated into this Action by order dated July 29, 2009. On July 29, 2009, the Court also appointed SURS as Lead Plaintiff and approved its selection of Berman DeValerio as Lead Counsel to represent the putative class.

Following a detailed investigation that included, among other things, the review and analysis of documents filed by GE with the Securities and Exchange Commission, press releases, news reports and other public statements issued by Defendants, and consultation with experts,

Lead Plaintiff filed the Consolidated Class Action Complaint for Violations of the Federal Securities Laws on October 2, 2009 (the "Complaint").  The Complaint generally alleged, among other things, violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder along with violations of Section 11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act") by making alleged misstatements and omissions during the Class Period as to the financial health of the Company.  In particular, the Complaint alleged, *inter alia*, that the value of GE Capital's assets were inflated, that the quality of GE's holdings in subprime and non-investment grade loans was overstated, that GE Capital maintained insufficient reserves, and that the Company's financial position threatened its ability to maintain its AAA rating and pay its quarterly dividend.  In addition to the Defendants, the Complaint named additional officers and directors of the Company as defendants as well as several underwriters in connection with GE's secondary stock offering in October 2008.  The Complaint further alleged that Lead Plaintiff and other Settlement Class Members purchased or acquired GE Common Stock during the Class Period at artificially inflated prices and were damaged thereby.

On November 24, 2009, Defendants filed motions to dismiss the Complaint.

On April 28, 2010, this matter was reassigned from United States District Court Judge Denny Chin to United States District Court Judge Richard J. Howell.

While the motions to dismiss were pending, on June 9, 2010, Lead Plaintiff filed a Second Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "SAC"), including additional allegations concerning conversations between Immelt and former United States Treasury Secretary Henry Paulson about GE's issuance of commercial paper and based on Paulson's recently published book *On The Brink*.

On June 16, 2010, the Court entered an Order deeming Defendants' pending motions to dismiss as withdrawn, and on June 30, 2010, Defendants filed revised and amended motions to dismiss.  On November 23, 2010, the Court heard oral argument on the revised and amended motions to dismiss.  On January 12, 2012, the Court entered a Memorandum Opinion and Order (the "January 2012 Opinion") granting in part and denying in part the motions to dismiss.  The Court sustained Exchange Act claims against GE, Immelt, and Sherin, and sustained Securities Act claims against GE, Immelt, Sherin, the Underwriter Defendants, and the remaining Individual Defendants.

On January 26, 2012, Defendants moved for partial reconsideration of the January 2012 Opinion and for judgment on the pleadings seeking the dismissal of all Securities Act and certain Exchange Act claims.  On February 7, 2012, this matter was reassigned to the Honorable Denise L. Cote.  On February 29, 2012, Defendants filed answers denying the substantive allegations in the SAC.

On April 18, 2012, the Court entered an Opinion and Order denying GE and Sherin's motion for partial reconsideration and for judgment on the pleadings as to the Exchange Act claims against them.  However, the Court granted all Defendants' motion to dismiss the Securities Act claims.  As a result of this ruling, the only remaining claims were Exchange Act violations against GE, Immelt and Sherin.

Discovery then commenced, including the production of roughly 2 million pages of documents by Defendants and third-parties.  On May 9, 2012, Lead Plaintiff moved for leave to amend the SAC as to the Securities Act claims.  On July 12, 2012, the Court denied this motion.

In July 2012, the parties participated in a settlement conference in New York City with Judge Weinstein (ret.), an experienced and highly respected mediator.  This initial settlement

negotiation did not result in a resolution of the Action.  The parties continued the discovery process and agreed to resume settlement discussions at a later date.

On November 2, 2012, Lead Plaintiff filed a motion to amend the SAC to truncate the class period to January 23, 2009, and add additional allegations concerning loss causation. During a January 11, 2013 hearing, Lead Plaintiff withdrew the motion to amend and the Court set a briefing schedule providing Defendants with an opportunity to file a motion for judgment on the pleadings.

On January 25, 2013, Defendants filed a motion for judgment on the pleadings for failing to plead loss causation.  On February 8, 2013, Lead Plaintiff filed its opposition.  Defendants filed their reply on February 15, 2013.  The Court had not ruled on this motion at the time the parties agreed to settle this matter.

On January 30, 2013, the parties met again to mediate the case in New York City with the assistance of Judge Weinstein.  Following lengthy, arm's-length, and mediated negotiations, the Settling Parties reached an agreement to settle the claims against Defendants.

Before agreeing to the Settlement, Lead Plaintiff had conducted an extensive investigation into the events and transactions underlying the claims alleged in the SAC.  Lead Counsel analyzed the evidence adduced during its investigation and through discovery, which included reviewing and analyzing publicly available information and data concerning GE, the review and analysis of roughly 2 million pages of documents from the parties and third-parties, and consulting with experts on damages, materiality and causation issues.  Lead Counsel also researched the applicable law with respect to Lead Plaintiff's claims, the claims against Defendants and Defendants' potential defenses.  Thus, at the time the agreement to settle was

reached, Lead Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of Lead Plaintiff's and the Defendants' positions.

## III.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis.  Approval of a proposed settlement is within the Court's discretion, to be exercised in accordance with public policy that strongly favors pretrial settlement of class action lawsuits.  *In re Interpublic Sec. Litig.*, Nos. 02-6527, 03-1194, 2004 WL 2397190, at *7 (S.D.N.Y. Oct. 26, 2004); *see also In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).

The Court "must determine whether the terms of the proposed settlement warrant preliminary approval.… [by] mak[ing] 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate."  *In re Currency Conversion Fee Antitrust Litig.*, MDL Nos. 1409, M 21-95, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (citation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

As this Court has explained:

> In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.  Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.  Once preliminary approval is bestowed, the second step of the process ensues. . . .

*NASDAQ,* 176 F.R.D. at 102 (citations omitted); *see also In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

In essence, the Court should determine whether the settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard."

6

*NASDAQ*, 176 F.R.D. at 102 (citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("The Court's function now is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.") (internal quotation marks omitted).

>        A.      **The Proposed Settlement Is the Result of Well**
>                <u>**Grounded, Good Faith, Arm's-Length Negotiations**</u>

A presumption of fairness applies to a proposed class settlement that is the result of arm's-length negotiations between counsel knowledgeable in complex class litigation. *Wal-Mart Stores*, 396 F.3d at 116; *see also Leung v. Home Boy Rest. Inc.*, No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861, *1 (S.D.N.Y. Feb.18, 2009) (preliminary approval appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties . . ."). The Settlement is the product of just such rigorous arm's-length negotiations. The Settling Parties negotiated twice in separate face-to-face lengthy sessions then followed up with several telephone conversations with Judge Weinstein, who has assisted in numerous other complex securities class action mediations. "[T]hat the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable." *In re Independent Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (citation omitted).

Moreover, the Settlement was reached only after completion of: (1) Lead Plaintiff's initial pre-filing factual investigation; (2) Lead Plaintiff's analysis of GE's public filings and public statements; (3) Lead Plaintiff's review of news articles and analyst reports about GE; (4) interviews of confidential witnesses; (5) exhaustive briefing on Defendants' motions to dismiss and judgment on the pleadings; (6) the review and analysis of roughly 2 million pages of

documents provided by the parties and non-parties; (7) consultations with consultants and experts on damages, materiality and loss causation issues; and (8) two rounds of mediation and intensive settlement negotiations.  Thus, the Settlement was not achieved until the Settling Parties had sufficient familiarity with the issues in the case to evaluate its merits and agree on a settlement figure that was both acceptable to Defendants and fair, reasonable and adequate to the Settlement Class.

    **B.**    **The Proposed Settlement Falls Within the Range of Reasonableness and Merits Issuance of Notice and a Hearing on Final Approval**

The proposed settlement is an excellent result given the numerous and substantial risks faced in this litigation.  In particular, Defendants filed a motion for judgment on the pleadings asserting that Lead Plaintiff had not pled loss causation as a matter of law.  Further, Defendants raised a number of arguments and defenses (which they would raise at summary judgment and trial) including that there were no actionable misstatements and omissions and that Lead Plaintiff would not be able to establish that Defendants acted with the requisite fraudulent intent.  Even assuming Lead Plaintiff could establish liability, Defendants would argue that any potential investment losses suffered by Lead Plaintiff and the Settlement Class were caused by external, independent factors, and not caused by Defendants' alleged conduct.   In the absence of a Settlement, the Settling Parties would present factual and expert testimony on each of these issues. There was considerable risk that the Court or jury would resolve the inevitable "battle of the experts" against Lead Plaintiff and the Settlement Class.

As further indicia of its reasonableness, the Settlement exhibits none of the "obvious deficiencies" that could justify denying preliminary approval.  *NASDAQ*, 176 F.R.D. at 102.  In all respects, the terms embodied in the Stipulation of Settlement are customary in nature.  In particular, Lead Plaintiff's recovery from the settlement fund will be determined according to

precisely the same formula as the recoveries of other Settlement Class Members, with the

exception of any compensatory payment to the Lead Plaintiff approved by the Court, as

contemplated by 15 U.S.C. § 78u-4(a)(4). *See NASDAQ*, 176 F.R.D. at 102 (settlement may be

approved preliminarily where it "does not improperly grant preferential treatment to class

representatives or segments of the class"); *Prudential*, 163 F.R.D. at 209 (preliminary approval is

appropriate where "preliminary evaluation of the proposed settlement does not disclose grounds

to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class

representatives . . .") (citation omitted).

      Additionally, the Settlement was negotiated under the direction and with the direct and

substantial involvement of Lead Plaintiff.  This further strengthens the presumption of fairness.

*See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004)

(participation of sophisticated institutional investor lead plaintiffs in settlement process supports

approval of settlement).

**IV.     THE COURT SHOULD APPROVE THE FORM OF THE NOTICE
          AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS**

      Lead Plaintiff also requests that the Court approve the form and content of the proposed

Postcard Notice[2], Full Notice and Summary Notice (collectively, the "Notices").  (*See* Exhibits

A, B and C to the proposed Preliminary Approval Order, attached as Exhibit 2 to the Tabacco

Decl.).  Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notices apprise class members of the

nature of the action, the definition of the Settlement Class to be certified, the class claims and

issues, and the claims that will be released.  The Notices also advise that a Settlement Class

---

[2]   Given that GE has over 10 billion shares outstanding and in an effort to save significant administration costs associated with printing and mailing the Full Notice and Proof of Claim form to Settlement Class Members, Lead Plaintiff proposes to send the Postcard Notice to Settlement Class Members, which shall direct Settlement Class Members to the Claims Administrator's website where a downloadable form of the Full Notice and Proof of Claim form shall be posted.  The Claims Administrator shall provide a copy of the Full Notice and/or Proof of Claim form to any Settlement Class Member who so requests a copy thereof.

Member may enter an appearance through counsel if desired, notes that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadline for doing so), and further describes (i) the binding effect of a judgment on Settlement Class Members under Rule 23(c)(3), (ii) how to object to the proposed Settlement and/or requested attorneys' fees, and (iii) how to make a claim.

The Postcard Notice and Full Notice also satisfy the PSLRA's separate disclosure requirements by, *inter alia*: stating the amount of the Settlement on both an aggregate and average per share basis; stating the amount of attorney's fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; and providing the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel who will be available to answer questions from Settlement Class Members. *See* 15 U.S.C. § 78u-4(a)(7). In addition, the Full Notice provides a brief statement explaining the reasons why the Settling Parties are proposing the Settlement. The Postcard Notice, Full Notice and Summary Notice also disclose the date, time and location of the final Settlement Hearing and the deadlines for submitting Proof of Claim forms and any objections to the Settlement, the Plan of Allocation, or to Lead Counsel's requested attorney's fees and expenses. These disclosures are thorough and should be approved.

Lead Plaintiff also requests that the Court approve the appointment of A.B. Data, Ltd. as Claims Administrator. A.B. Data, Ltd. has extensive relevant experience and is a nationally recognized notice and claims administration firm. A.B. Data, Ltd.'s staff consists of experienced certified public accountants, information technology specialists and various other professionals with substantial experience in notice and claims administration.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement, voluntary dismissal, or compromise]."  The proposed Notice plan readily meets these standards and is typical of Notice plans in similar actions.  *See In re AT & T Mobility Wireless Data Services Sales Tax Litig.,* 789 F. Supp. 2d 935 (N.D. Ill. 2011) (postcard notice to over nine million former customers approved); *Malta v. Fed. Home Loan Mortg. Corp.,* No. 10-CV-1290 BEN (NLS), 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) (postcard notice to over 5.8 million eligible claimants approved).  *See also In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) (preliminary approval of postcard notice); *In re Checking Account Overdraft Litig.*, No. 09-MD-02036-JLK, 2012 WL 4174502 (S.D. Fla. Sept. 19, 2012) (final approval of postcard notice); *Schulte v. Fifth Third Bank,* 805 F. Supp. 2d 560, 596 (N.D. Ill. 2011) (final approval of postcard notice); *In re Antibiotic Antitrust Actions*, 333 F. Supp. 291, 293 (S.D.N.Y. 1971) (approving postcard notice).

## V.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES UNDER RULES 23(a) AND (b)(3)

In granting preliminary approval of the Settlement, the Court should also preliminarily certify the Settlement Class under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *Prudential*, 163 F.R.D. at 205.  "The law in the Second Circuit favors the liberal construction of Rule 23 … and courts may exercise broad discretion when they determine

whether to certify a class." *Aramburu v. Healthcare Fin. Servs.,* No. 02 CV 6535 (ARR), 2005 WL 990995, at *2 (E.D.N.Y. Apr. 14, 2005) (citation omitted).

Lead Plaintiff seeks preliminary certification of a class consisting of all Persons that, from September 25, 2008 through March 19, 2009, inclusive, purchased or otherwise acquired GE Common Stock either in the open market and/or pursuant or traceable to a registration statement.[3]

### A.     The Settlement Class Members Are Too Numerous to Be Joined

As required for class certification by Rule 23(a)(1), the members of the proposed class are so numerous that joinder of all its members would be "impracticable."  Impracticable does not mean impossible, and "[p]laintiffs are not obligated to prove the exact class size to satisfy numerosity." *Cross v. 21st Century Holding Co.,* No. 00 Civ. 4333 (MBM), 2004 WL 307306, at *1 (S.D.N.Y. Feb. 18, 2004) (citing *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993)). Lead Plaintiff may satisfy the numerosity requirement by "showing that a large number of shares were outstanding and traded during the relevant period." *See In re Vivendi Universal, S.A., Sec. Litig.,* 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (internal quotations and citation omitted).  Indeed, numerosity has been presumed at a level as low as forty (40) class members. *See In re SCOR Holding (Switzerland) AG Litig.,* 537 F. Supp. 2d 556, 570 (S.D.N.Y. 2008) (citing *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995)).

The Settlement Class satisfies the numerosity threshold here.  During the Class Period, more than 10 billion shares of GE Common Stock were outstanding, and GE shares were traded

---

[3] Excluded from the Settlement Class are: (i) the Defendants; the Officers and Directors of GE during the Class Period; the members of the Immediate Families of the Individual Defendants; any firm, trust, partnership, corporation, or entity in which any Defendant has a majority interest; the legal representatives, heirs, successors-in-interest, or assigns of any such excluded Person, provided that the Settlement Class shall not exclude any Investment Vehicle as defined herein; and (ii) any Person that would otherwise be a Settlement Class Member, but properly excludes himself, herself, or itself by submitting a valid and timely request for exclusion from the Settlement Class in accordance with the requirements set forth herein and in the Notice.

on the New York Stock Exchange. Based on this information, the Court can conclude that the Settlement Class likely includes thousands, if not tens of thousands, of members, and joinder of all these individuals would be impracticable. Therefore, Rule 23(a)(1) is satisfied.

### B.    Common Questions of Law and Fact Exist

As Rule 23(a)(2) requires, the claims of the members of the proposed class involve numerous common questions of law and fact. To establish commonality, class members must have "suffered the same injury," and "[t]heir claims must depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2545 (2011) (internal quotation and citation omitted). Class members' "common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id*. at 2551. The existence of just a single common legal or factual question is sufficient to satisfy Rule 23(a)(2). *Id*. at 2556; *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987) (same).[4] In securities fraud litigation, the "commonality requirement 'has been applied permissively.'" *Vivendi*, 242 F.R.D. at 84 (citation omitted).

Here, the Court has determined that Lead Plaintiff adequately alleged that Defendants made fraudulent material misrepresentations and omissions in GE's public securities filings and other public statements about a range of issues and with the requisite *scienter*. *In re Gen. Elec. Co. Sec. Litig.*, 857 F. Supp. 2d 367, 385-400 (S.D.N.Y. 2012). These purported material misrepresentations and omissions allegedly artificially inflated the price of GE's Common Stock,

---

[4] As one court observed, "individual issues will likely arise in this as in all class action cases. But to allow various secondary issues of plaintiffs' claim to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981); *see also In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 75 (S.D.N.Y. 2009) (stating that "predominance does not require a plaintiff to show that there are no individual issues").

similarly injuring each Settlement Class Member.  *Id.* at 398-99.  Thus, questions of fact and law

common to all members of the proposed Settlement Class include, *inter alia*: (i) whether

Defendants' alleged acts and omissions violated the federal securities laws; (ii) whether GE's

public filings with the SEC, press releases, conference calls, and other statements disseminated

by Defendants during the Class Period misrepresented or omitted material facts about GE; (iii)

whether Defendants acted knowingly, or with recklessness, in allegedly misrepresenting or

omitting those material facts; (iv) whether the market price of GE's Common Stock was

artificially inflated during the Class Period due to the alleged false and misleading statements or

omissions; (v) whether, with respect to Lead Plaintiff's and the Settlement Class's claims

pursuant to Section 20(a) of the Exchange Act, Defendants named in those claims were

controlling persons of GE; and whether Lead Plaintiff and other Settlement Class Members

suffered damages, as well as the appropriate measure thereof.

Courts in this District have routinely found that the above types of common questions

satisfy Rule 23(a)(2).[5]

C.      **Lead Plaintiff's Claims Are Typical of Those of the Settlement Class**

As Rule 23(a)(3) requires, "the claims . . . of the representative parties are typical of the

claims . . . of the class."   Here, Lead Plaintiff satisfies Rule 23(a)(3)'s typicality requirement

because "each class member's claim arises from the same course of events, and each class

member makes similar legal arguments to prove the defendant's liability."  *See SCOR*, 537

---

[5]      *See, e.g., SCOR*, 537 F. Supp. 2d at 571 ("whether the [d]efendants' public statements . . . contained
material misrepresentations or omissions in violation of Section 10(b), and whether [d]efendants acted with
scienter," are common questions that suffice to support a finding of commonality); *In re Sadia, S.A. Sec. Litig.*, 269
F.R.D. 298, 309 (S.D.N.Y. 2010); *Vivendi*, 242 F.R.D. at 84.  Where, as here, "the facts as alleged show that
Defendants' course of conduct concealed material information from an entire putative class, the commonality
requirement is met."  *See In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000); *Sadia*,
269 F.R.D. at 309 (finding that plaintiffs demonstrated commonality by alleging "a common course of conduct"
whereby defendants made material misrepresentations and omissions to the public).

F. Supp. 2d at 571 (citing *Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care*, 504 F.3d 229, 245 (2d Cir. 2007)).  "Typicality [ ] does not require that the situations of the named representatives and the class members be identical."  *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (quotation omitted).  Rather, so long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class," *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (citation omitted), "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Robidoux*, 987 F.2d at 937; *see also Toure v. Central Parking Sys. of New York*, No. 05 Civ. 5237 (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007).

Lead Plaintiff's claims are typical of the claims of absent members of the proposed Settlement Class because they all arise from "the same set of events":  Defendants' alleged material misstatements and omissions, which allegedly artificially inflated the value of GE Common Stock.  Typicality has been established in similar securities fraud cases, and it is established here.  *See, e.g., Vivendi*, 242 F.R.D. at 85; *In re Interpublic Sec. Litig.,* No. 02 Civ. 6527 (DLC), 2003 WL 22509414, at *3 (S.D.N.Y. Nov. 6, 2003).

> ### D.      Lead Plaintiff and Lead Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class

Rules 23(a)(4) and 23(g) are satisfied here because, as they require, (i) Lead Plaintiff's interests are not antagonistic to those of other Settlement Class Members, and (ii) Lead Counsel are qualified, experienced, and eminently able to conduct this Action.  *See In re The Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

Lead Plaintiff purchased GE Common Stock on the open market during the Class Period and allegedly suffered significant losses as a result of the same course of conduct that allegedly

injured other members of the Settlement Class.  Therefore, Lead Plaintiff's interest in

demonstrating Defendants' liability and maximizing possible recovery are aligned with the

interests of the absent class members.  *See, e.g., WorldCom*, 219 F.R.D. at 282 (finding that

"named plaintiffs' interests are directly aligned with those of the absent class members; they are

purchasers of WorldCom equity and debt securities who suffered significant losses as a result of

the investments").  Further, there is no evidence that Lead Plaintiff has interests antagonistic to

the interests of other members of the Settlement Class.

As for the adequacy of Class Counsel, a court must consider the following: "(i) the work

counsel has done in identifying or investigating potential claims in the action; (ii) counsel's

experience in handling class actions, other complex litigation, and the types of claims asserted in

the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel

will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  A court "may [also]

consider any other matter pertinent to counsel's ability to fairly and adequately represent the

interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Here, as the Court has previously concluded, Lead Counsel are highly experienced in

litigating securities class actions and will fairly and adequately prosecute the claims of the

Settlement Class.  *See* Memorandum Decision (Chin, J.) dated July 29, 2009, at 14 [Dkt. No. 48]

(appointing Berman DeValerio Lead Counsel and stating that the firm is "highly experienced in

prosecuting securities class actions"); *see also* Ex. E [Dkt. No. 31] (firm resume of Lead

Counsel).  Lead Counsel have further demonstrated their adequacy by the substantial work

undertaken in prosecuting this action, including defeating Defendants' motions to dismiss

Exchange Act claims, pursuing extensive discovery, hiring and working with experts in various

areas to prove the Settlement Class's allegations and successfully reaching a very favorable Settlement.

In view of these facts, Lead Plaintiff should be appointed Class Representative, and Lead Counsel should be appointed Class Counsel.

### E.     The Requirements of Rule 23(b)(3) Are Satisfied in this Action

In addition to the four requirements of Rule 23(a), a certifiable class must also satisfy one of the three subparts of Rule 23(b).  Lead Plaintiff here seeks class certification under Rule 23(b)(3), which establishes two requirements, commonly referred to as "predominance" and "superiority," both of which are satisfied here.

### 1.     Common Questions of Law and Fact Predominate

Under Rule 23(b)(3), questions of law or fact common to the members of a class must "predominate" over any questions affecting individual members.  The Second Circuit has stated that "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (citation omitted).   This test is "readily met in certain cases alleging … securities fraud," including this one. *See SCOR*, 537 F. Supp. 2d at 572 (quoting *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 625 (1997)).

In securities fraud class actions such as this "in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues." *In re Arakis Energy Corp. Sec. Litig.*, No. 95 Civ. 3431 (ARR), 1999 WL 1021819, at *10 (E.D.N.Y. Apr. 27, 1999). Here, the Court has sustained the SAC holding that it adequately alleges that Defendants, with

*scienter*, made material misstatements and omissions in public statements, which caused the Settlement Class to suffer losses. *In re Gen. Elec. Co. Sec. Litig.,* 857 F. Supp. 2d at 385-400. Lead Plaintiff anticipates, based on discovery, that those elements would be established through generalized proof that applies equally to each member of the Settlement Class. *See Veeco Instruments*, 235 F.R.D. at 240.

Moreover, Lead Plaintiff's Section 10(b) claims invoke the "fraud-on-the-market" doctrine, which presumes investors' reliance and precludes any argument that issues of individual reliance defeat class certification. *See In re Salomon Analyst Metromedia Litig*., 544 F.3d 474, 481 (2d Cir. 2008) ("where a defendant has (1) publicly made (2) a material misrepresentation (3) about stock traded on an impersonal, well-developed (*i.e.*, efficient) market, investors' reliance on those misrepresentations may be presumed.") (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 248 n.27 (1988)). Here, GE common shares were listed and actively traded on the NYSE, a highly efficient and automated market during the Class Period.

### 2.    A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Controversy

Rule 23(b)(3) further requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," and provides the following factors for consideration when determining whether a class action is superior:  (a) the interest of class members in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) whether it is desirable to concentrate litigation of claims in this forum; and (d) the manageability of a class action.  These factors favor certification here.

Given the size and geographical dispersion of the proposed Settlement Class and the likelihood that many purchasers will have sustained comparatively small losses, the

18

circumstances here are precisely those for which a class action is appropriate.  It also is desirable to consolidate the litigation of claims here because common legal and factual issues predominate, and the alternative – the individual adjudication of Settlement Class Members' claims – would be extremely burdensome and risk inconsistency.  *See WorldCom*, 219 F.R.D. at 304 (class action will avoid "disparate results, [and individual actions which] threaten to increase the costs of litigation for all parties exponentially.")

## VI.    PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff proposes the following schedule for the Settlement-related events in this case.  The proposed schedule in the right column is respectfully requested.[6]

| Event | Proposed Due Date |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members ("Notice Date") | 10 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice | 14 calendar days after the Notice Date and again 14 days thereafter |
| Deadline for filing of papers in support of approval of Settlement, Plan of Allocation, and Lead Counsel's request for attorneys' fees and expenses | 30 calendar days prior to Settlement Hearing |
| Deadline for submitting exclusion requests or objections | 21 calendar days prior to Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | [                    ] |
| Deadline for submitting claim forms | 120 calendar days after the Notice Date |

## VII.    CONCLUSION

For all of the foregoing reasons, Lead Plaintiff respectfully requests that this Court: (a) preliminarily approve the Settlement, including approving the form and substance of the

proposed forms of notice and directing that notice be given to the members of the Settlement Class; (b) preliminarily certify the Settlement Class; (c) appoint Lead Plaintiff and Lead Counsel as Class Representative and Class Counsel, respectively; (d) schedule a hearing at which approval of the Settlement, plan of allocation and an award of attorneys' fees and reimbursement of litigation expenses to Lead Counsel may be considered; and (e) grant such further relief as the Court deems just and proper.

Dated: April 29, 2013

Respectfully submitted,

**BERMAN DEVALERIO**

*/s/ Joseph J. Tabacco, Jr.*
Joseph J. Tabacco, Jr. (JJT-1994)
Nicole Lavallee
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200

Glen DeValerio (admitted *pro hac vice*)
Kathleen M. Donovan-Maher (admitted *pro hac vice*)
Kristin J. Moody (admitted *pro hac vice*)
Steven J. Buttacavoli (admitted *pro hac vice*)
Daryl D. Andrews (admitted *pro hac vice*)
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300

Kyle G. DeValerio (admitted *pro hac vice*)
3507 Kyoto Gardens Drive, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 835-9400

*Lead Counsel for Lead Plaintiff*
*State Universities Retirement System of Illinois*

---

[6] The only specific date that needs to be established is the date of the Settlement Hearing.

**LOWEY DANNENBERG COHEN & HART, P.C.**
Richard W. Cohen
White Plains Plaza
One North Broadway
White Plains, NY 10601
Telephone: (914) 733-7239

*Liaison Counsel for the Lead Plaintiff State Universities Retirement System of Illinois*