UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re General Electric Co. Sec. Litig.** | ) **Civ. No. 09-CIV-1951 (DLC)**<br>) ECF CASE<br>)<br>)<br>) |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR APPEAL BOND</u>**

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................................. 3

III. ARGUMENT ..................................................................................................................... 4

   A. A BOND IS APPROPRIATE AND NECESSARY .............................................. 5

      1. Hampe's Meritless Appeal Favors Requiring a Bond ................................ 5

      2. Hampe's Bad Faith Favors Requiring a Bond ............................................ 7

      3. Risk of Non-Payment Favors Requiring a Bond ..................................... 10

      4. Hampe's Financial Ability Favors Requiring a Bond.............................. 10

   B. THE APPEAL BOND SHOULD BE SET AT $54,700....................................... 10

      1. Appellate Costs ........................................................................................ 11

      2. Administrative Costs................................................................................ 11

IV. CONCLUSION................................................................................................................ 13

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Adsani v. Miller*,
  139 F.3d 67 (2d Cir.1998) ............................................................................................... 5

*Barnes v. Fleetboston Fin. Corp.*,
  No. 01-10395-NG, 2006 WL 6916834 (D. Mass. Aug. 22, 2006) ............................... 7

*Cellphone Termination Fee Cases*,
  180 Cal. App. 4th 1110 (2009),
  *rev. denied*, 2010 Cal. LEXIS 3458 (Apr. 14, 2010) ................................................... 8

*Eastwood Enters., LLC v. Farha*,
  No. 8:07-cv-1940-T-33EAJ, 2011 WL 2681915 (M.D. Fla. July 11, 2011) ............... 9

*Embry v. ACER Am. Corp.*,
  No. C 09-01808 JW, 2012 WL 3777163 (N.D. Cal. Aug. 29, 2012) .......................... 9

*Fleury v. Richemont North America, Inc.*,
  No. C-05-4525-EMC, 2008 WL 4680033 (N.D. Cal. Oct. 21, 2008) ....................... 10

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
  695 F. Supp. 2d 157 (E.D. Pa. 2010) ........................................................................... 9

*In re AOL Time Warner, Inc. Sec. Litig. (AOL)*,
  No. 02 Civ. 5575 (SWK), 2007 WL 2741033 (S.D.N.Y. Sept. 20, 2007) ............ 5, 12

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
  No. 09-md-2023 BMC, 2013 WL 4735641 (E.D.N.Y. Sept. 3, 2013) ...................... 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  281 F.R.D. 531 (N.D. Cal. 2012) ................................................................................. 8

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
  No. MDL 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003) .................................... 12

*In re Currency Conversion Fee Antitrust Litig. (CCF I)*,
  MDL No. 1409, 2010 WL 1253741 (S.D.N.Y. Mar. 5, 2010) ................... 2, 4, 11, 12

*In re Currency Conversion Fee Antitrust Litig. (CCF II)*,
  MDL No. 1409, 2012 WL 3879924 (S.D.N.Y. Aug. 28, 2012) ...................... 2, 11, 12

*In re Drexel Burnham Lambert Group, Inc.*,
  995 F.2d 1138 (2d Cir.1993) ........................................................................................ 4

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
  No. 09md2087 BTM (KSC), 2013 WL 5275618 (Sept. 17, 2013 S.D. Cal.) .......................... 3, 9

*In re Initial Public Offering Sec. Litig. (IPO)*,
  721 F. Supp. 2d 210 (S.D.N.Y.),
  *clarifying opinion*, 2010 WL 5186791 (S.D.N.Y. 2010) ...................................................... passim

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*,
  No. 11-md-2247-ADM-JJK, 2012 WL 3984542 (D. Minn. Sep. 11, 2012).............................. 12

*In re Wal-Mart Wage & Hour Empl. Practices Litig.*,
  MDL No. 1735, 2010 WL 786513 (D. Nev. Mar. 8, 2010) .......................................................... 9

*Miletak v. Allstate Ins. Co.*,
  No. C-06-3778-JW, 2012 WL 3686785 (N.D. Cal. 2012).......................................................... 12

*Moore v. Cnty. of Delaware*,
  586 F.3d 219 (2d Cir. 2009).......................................................................................................... 4

*United States v. Potamkin Cadillac Corp.*,
  689 F.2d 379 (2d Cir. 1982).......................................................................................................... 4

*World Trade Ctr. Props. LLC v. Certain Underwriters at Lloyd's of London*,
  650 F.3d 145 (2d Cir. 2011).......................................................................................................... 5

**Docketed**

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
  No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) ......................................................... 8

*Adams v. Morgan*,
  No. 12-56957 (9th Cir. Feb. 4, 2013)............................................................................................ 8

*Bandas Law Firm, PC, v. Conroy*,
  Nos. 06-15980, 06-16627 (9th Cir. Sept. 19 & 22, 2006)............................................................. 8

*Checkmate Strategic Group v. Yahoo! Inc.*,
  No. 05-cv-04588-CAS- FMO (C.D. Cal. Mar. 26, 2007) ............................................................ 8

*Checkmate Strategic v. Backwater Safari*,
  No. 07-5559 (9th Cir. July 31, 2007) ............................................................................................ 8

*Closson v. Bank of Am.*,
  No. A125963 (Cal. App. 1st Dist. June 23, 2011) ........................................................................ 8

*Conroy v. 3M Corp.*,
  No. C 00-2810 CW (N.D. Cal. Apr. 21, 2006) .......................................................................... 8, 9

*Dennings v. Clearwire Corp.*,
   No. 13-35491 (9th Cir. Sept. 27, 2013) .......................................................................... 8

*Fleury v. Richemont N. Am., Inc.*,
   No. 08-16724, 08-16995 (9th Cir. Dec. 9, 2008) ............................................................ 8

*Hale v. Wal-Mart Stores, Inc.*,
   No. WD71180 (Mo. Ct. App. W.D. Nov. 10, 2009) ....................................................... 8

*In re Am. Int'l Grp., Inc. Sec. Litig (AIG)*,
   No. 04 Civ. 8141 (DAB) (S.D.N.Y. Apr. 7 & 19, 2011) ........................................... 2, 11

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. M-02-1486-PJH (N.D. Cal. Oct. 31, 2006) .............................................................. 8

*In re Nutella Marketing & Sales Practices Litigation*,
   No. 3:11-cv-01086-FLW-DEA (D.N.J.) ............................................................ 2, 7, 8, 12

*In re: Managed Care Litig.*,
   No. 06-12354-E (11th Cir. May 9, 2006) ........................................................................ 8

*In re: Wal-Mart Stores, Inc. Wage & Hour Litig.*,
   No. 06-CV-02069 SBA (N.D. Cal. Nov. 6, 2010) .......................................................... 8

*In re: Wal-Mart Wage & Hour Emp't Practices Litig.*,
   No. 09-17648 (9th Cir. Aug. 10, 2010) ........................................................................... 8

*Kardonick v. JP Morgan Chase & Co.*,
   No. 10-cv-23235-WMH ............................................................................................. 7, 8

*Lochridge v. Bank of Am. Corp.*,
   No. 13-15170 (9th Cir. Apr. 1, 2013) .............................................................................. 8

*McDonough v. Toys "R" Us, Inc.*,
   No. 06-cv-242-AB (E.D. Pa. June 6, 2011 & Jan. 18, 2012) ...................................... 7, 8

*Pokorny v. Quixtar, Inc.*,
   No. 13-16454 (9th Cir. Sept. 13, 2013) ........................................................................... 8

*Savaglio v. Wal-Mart Stores, Inc.*,
   No. A128744 (Cal. App. 1st Dist. Oct. 18, 2010) ........................................................... 8

*Wilson v. Airborne, Inc.*,
   No. 08-56542 (9th Cir. Feb. 20, 2009) ............................................................................ 8

*Yoo v. Wendy's Int'l, Inc.*,
   No. 09-55554 (9th Cir. Oct. 26, 2009) ............................................................................ 8

**Statutes & Rules**

Fed. R. App. P. 38 .................................................................................................................. 4

Fed. R. App. P. 39 .................................................................................................................. 4

Fed. R. App. P. 7 .................................................................................................................... 4

I.      INTRODUCTION

Lead Plaintiff State Universities Retirement System of Illinois ("Lead Plaintiff")[1] respectfully requests that this Court order objector Clark Hampe ("Hampe") to post a bond of up to $54,700 to ensure payment of the costs that the Second Circuit is likely to impose as a result of his vexatious and meritless appeal of this Court's (i) Judgment and Order Settling Action Between Lead Plaintiff and the Settling Defendants; (ii) Order Approving the Plan of Allocation and (iii) Order awarding Attorneys' Fees and Expenses (ECF Nos. 221-23) (collectively, the "Orders").[2]

As detailed below, Hampe's appeal will harm Class members in two significant respects. First, merely by its pendency, this appeal will delay the distribution of the Settlement Funds to Class members for many months. Second, the appeal will result in increased costs that will further reduce the Net Settlement amount to be distributed to Class members, including additional administration costs and costs for compiling the appellate record, which may not be recovered unless a bond is posted.

By virtue of the fact that Hampe purchased 0.104 shares of General Electric common stock during the Class Period, Hampe is technically a member of the Class. While Lead Plaintiff recognizes the rights of all Class members to appeal an order approving a settlement agreement, it respectfully submits that a bond is appropriate under Rule 7 of the Federal Rules of Appellate Procedure here.

---

[1] All capitalized terms not otherwise defined herein have the same meaning as set forth in the Stipulation and Agreement of Settlement dated April 29, 2013 ("Stipulation"). ECF No. 194-1.

[2] While Hampe appears to appeal the Court's Order Approving the Plan of Allocation (ECF No. 221), he did not include any specific objections relating to this Order in his August 22, 2013 letter objection (ECF No. 218-6) (the "Hampe Obj.") to the Court.

As detailed below and as Lead Plaintiff explained in the papers filed in support of final approval of the Settlement, Hampe's objection to the Settlement lacked merit. Moreover, it is evident from the record that the Court thoughtfully considered each of the handful of objections made, including Hampe's objection, and concluded that the Settlement, plan of allocation and fee request, as amended, should be approved.[3] Given the deferential standard of review and this Court's careful consideration of all objections, Hampe's appeal is very likely to fail.

Appeal bonds are commonly awarded where, as here, appeals are filed by class members and counsel who have a history of objecting to class settlements. *See In re Initial Public Offering Sec. Litig. (IPO)*, 721 F. Supp. 2d 210, 214-16, 218 (S.D.N.Y.) (requiring "professional objectors" to post a bond for $25,000), *clarifying opinion*, 2010 WL 5186791 (S.D.N.Y. 2010); *In re Am. Int'l Grp., Inc. Sec. Litig (AIG)*, No. 04 Civ. 8141 (DAB), ECF Nos. 589, 591 (S.D.N.Y. Apr. 7 & 19, 2011) (granting a $17,274.60 bond) (Exs. 2-3 to the Tabacco Decl.); *In re Currency Conversion Fee Antitrust Litig. (CCF I)*, MDL No. 1409, 2010 WL 1253741, at *3 (S.D.N.Y. Mar. 5, 2010) (imposing a $50,000 bond); *In re Currency Conversion Fee Antitrust Litig. (CCF II)*, MDL No. 1409, 2012 WL 3879924, at *3 (S.D.N.Y. Aug. 28, 2012) (awarding a $25,000 bond).

Hampe has previously objected to several class action settlements around the country and, in each instance, has lodged conclusory statements without proving any substantive basis for his objection. In *In re Nutella Marketing & Sales Practices Litigation*, No. 3:11-cv-01086-FLW-DEA (D.N.J.), the Honorable Freda L. Wolfson of the United States District Court for the District of New Jersey labeled Hampe's appeal "meritless" and ordered Hampe and other objectors to post a $22,500 bond. Tabacco Decl. Ex. 4. Moreover, Hampe has retained

---

[3] Declaration of Joseph J. Tabacco, Jr. in Support of Lead Plaintiff's Motion for Appeal Bond, filed herewith ("Tabacco Decl."), Ex. 1 [9/6/13 Tr.] at 2:24-3:8, 7:21-8:4, 9:11-10:10.

2

Christopher A. Bandas of the Bandas Law Firm, P.C., who has been criticized by numerous courts for filing non-meritorious appeals on behalf of objectors. Indeed, one court recently concluded that attorney Bandas had admitted to appealing final approval of class settlements because "he was willing to wager that [a class representative] would gladly pay him somewhere in the neighborhood of $400,000 to make his objection go away – otherwise he could hold the settlement process up for two to three years through the appeal process." *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09md2087 BTM (KSC), 2013 WL 5275618, at *5 (Sept. 17, 2013 S.D. Cal.).

## II.     FACTUAL BACKGROUND

This Court held a preliminary approval hearing on May 8, 2013 to discuss the proposed $40 million settlement. During the hearing, the Court meticulously went through the proposed notice and made suggestions for revision. Tabacco Decl. Ex. 5 [5/8/13 Tr.] at 17:8-21:18.

Out of more than 3.7 million notices sent to putative Settlement Class members, only eight objections were filed, all by individual investors. Tabacco Decl. Ex. 1 [9/6/13 Tr.] at 2:24-3:8, 18:16-19.

On September 6, 2013, the Court held a hearing to consider the fairness of the Settlement and Lead Counsel's application for an award of attorneys' fees. The Court found the Notice to be "adequate." Tabacco Decl. Ex. 1 [9/6/13 Tr.] at 7:1-20. The Court also thoroughly considered and concluded that none of the objections required that the Settlement or Plan of Allocation be rejected. *Id*. at 2:24-3:8, 7:21-8:4, 9:11-10:10; Judgment and Order (ECF No. 223) at 4-5 ¶¶ 5-6; Order Approving Plan of Allocation (ECF No. 221) at 2 ¶ 2. The Court also assessed Lead Counsel's fee submission and approved the proposed attorneys' fees and expenses

with a slight reduction.  Tabacco Decl. Ex. 1 [9/6/13 Tr.] at 22:12-32:3.  None of the eight objectors, including Hampe, appeared at the fairness hearing.  *Id*. at 19:8-14.

Shortly following the hearing, the Court issued three separate orders approving the $40 million Settlement and Plan of Allocation, and awarding attorneys' fees.  ECF Nos. 221-23.  Hampe, who purchased less than one share of GE Common Stock during the Class Period, is the sole purported class member to appeal this Court's carefully considered approval of the Settlement and fee award.

### III. ARGUMENT

Pursuant to Rule 39 of the Federal Rules of Appellate Procedure, unless otherwise ordered, the appellant is automatically liable for costs if an appeal is dismissed or a judgment affirmed.[4]  Thus, for the reasons discussed below, it is likely that costs will be awarded against Hampe.[5]

In recognition of the harm to appellees facing frivolous appeals, Rule 7 allows district courts to "require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."  More specifically, the purpose of Rule 7 is "to protect the appellee from the risk of nonpayment by the appellant, if the appellee wins the appeal."  *CCF I*, 2010 WL 1253741, at *1.

---

[4] In addition, the Second Circuit may "award just damages and single or double costs to the appellee" upon a finding that an appeal is "frivolous." Fed. R. App. P. 38. *See also In re Drexel Burnham Lambert Group, Inc.*, 995 F.2d 1138, 1147 (2d Cir.1993) ("Sanctions may be imposed when one party proceeds with an argument 'totally lacking in merit, framed with no relevant supporting law, conclusory in nature, and utterly unsupported by the evidence.'" (quoting *United States v. Potamkin Cadillac Corp.*, 689 F.2d 379, 381-82 (2d Cir. 1982) (*per curiam*))).

[5] "An award of costs to a prevailing party is the norm and not the exception." *Moore v. Cnty. of Delaware*, 586 F.3d 219, 221 (2d Cir. 2009).  While the Second Circuit has the discretion to deny costs, there is no basis to believe that the Second Circuit would exercise this equitable discretion here.  *See, e.g,*, *id*. at 221 ("denial of costs may be appropriate where a losing party can demonstrate misconduct by a prevailing party, the public importance of the case, the difficulty of the issues presented, or its own limited financial resources").

The discretion to impose a Rule 7 appeal bond belongs to this Court, a district court "familiar with the contours of the case appealed," which is best placed to make a "determination of the likely outcome of the appeal." *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir.1998).

### A.     A BOND IS APPROPRIATE AND NECESSARY

In evaluating whether to grant a motion for an appeal bond, district courts generally consider the following factors: (1) the merits of the appeal; (2) whether the appellant has shown any bad faith or vexatious conduct; (3) the risk that the appellant would not pay appellee's costs if appellee wins the appeal and (4) the appellant's financial ability to post a bond. *In re AOL Time Warner, Inc. Sec. Litig. (AOL)*, No. 02 Civ. 5575 (SWK), 2007 WL 2741033, at *2 (S.D.N.Y. Sept. 20, 2007). For the reasons outlined below, the above factors weigh in favor of an appeal bond here, where the meritless appeal has the effect of delaying the settlement distribution and where the appellant might fail to pay the costs assessed on a losing appeal.

#### 1.     Hampe's Meritless Appeal Favors Requiring a Bond

To obtain reversal of this Court's settlement and fee approval, Hampe faces a daunting task. A court of appeal reviews a district court's approval of a settlement and plan of allocation and award of attorneys' fees under the deferential "abuse of discretion" standard. *See World Trade Ctr. Props. LLC v. Certain Underwriters at Lloyd's of London*, 650 F.3d 145, 151 (2d Cir. 2011) (appellate courts review a district court's settlement approval for abuse of discretion). Lead Plaintiff respectfully submits that Hampe cannot satisfy this burden.

This Court approved the Settlement, plan of allocation and awarded attorneys' fees based on a fully developed record and only after careful consideration of the substance of the eight objections received, including Hampe's letter objection. Tabacco Decl. Ex. 1 [9/6/13 Tr.] at 2:24-3:8, 7:21-8:4, 9:11-10:10; Hampe Obj. (ECF No. 218-6); Order Approving Plan of Allocation (ECF No. 221). Indeed, in response to Hampe's October 3, 2013 letter to the Court

5

requesting a ruling that his objection and notice of appeal were timely filed, the Court expressly stated in its October 9, 2013 order that it had considered Hampe's objections. ECF No. 225.

As Lead Plaintiff explained in connection with the fairness hearing and as discussed below, each of Hampe's four objections lacked merit.[6] First, Hampe complained that the procedures to object to the settlement were burdensome. Hampe Obj. at 1. However, the procedures here were typical of procedures in all securities class action settlements. Moreover, as evidenced by the fairness hearing, this Court considered every objection made regardless of the form or manner of the objection. Tabacco Decl. Ex. 1 [9/6/13 Tr.] at 2:24-3:7, 7:21-8:4, 9:11-10:10. Second, Hampe argued that Lead Plaintiff did not sustain its burden on class certification. Hampe Obj. at 1. However, this Court noted during the fairness hearing that, had the case moved forward, it was likely to be certified by the Court to proceed as a class action. Tabacco Decl. Ex. 1 [9/6/13 Tr.] at 21:14-18. Third, Hampe argued that the attorneys' fees were excessive. Hampe Obj. at 1. But the requested fees were entirely commensurate with typical percentage recoveries and constituted a negative multiplier. *See* Reply Br. at 8-10 (Section IV). Fourth, he complained that the release was broad because it precludes Class members from ever taking legal action regarding the narrowly-defined Released Claims if there is new evidence. Hampe Obj. at 2. However, since settlements are resolutions of disputes designed to provide peace to all parties, such a release is standard in class actions. Moreover, this Court carefully examined the language concerning the settlement release during the preliminary approval hearing to ensure that the release is limited to claims that "arise out of the transaction in GE common stock during the class period." Tabacco Decl. Ex. 5 [5/8/13 Tr.] at 2:25-4:1.

---

[6] Reply Memorandum of Law In Further Support of (A) Lead Plaintiff's Motion For Final Approval of Class Action Settlement and Plan of Allocation and Final Certification of The Settlement Class and (B) Lead Counsel's Application For An Award of Attorneys' Fees and Reimbursement of Expenses and Lead Plaintiff's Request For Reimbursement of Expenses ("Reply Br.") (ECF No. 217), at 7, 9.

On this record, it is highly likely that the Second Circuit will conclude that this Court soundly exercised its discretion and will affirm.

### 2. Hampe's Bad Faith Favors Requiring a Bond

This is not the first time that Hampe has appealed a class action settlement. *See In re Nutella Marketing & Sales Practices*, *supra*, ECF Nos. 79, 107 (Hampe's objection and Notice of Appeal) (D.N.J. June 8 & Aug. 30, 2012) (Exs. 6-7 to the Tabacco Decl.); *Kardonick v. JP Morgan Chase & Co.*, No. 10-cv-23235-WMH, ECF Nos. 341, 401 (Hampe's objection and Notice of Appeal) (S.D. Fla. Aug. 19 & Oct. 17, 2011) (Exs. 8-9 to the Tabacco Decl.); *McDonough v. Toys "R" Us, Inc.*, No. 06-cv-242-AB, ECF Nos. 752, 796 (Hampe's objection and Notice of Appeal) (E.D. Pa. June 6, 2011 & Jan. 18, 2012) (Exs. 10-11 to the Tabacco Decl.). In *Nutella*, Judge Wolfson found that Hampe and his co-objectors who "repeatedly raise objections in class actions around the country," among other things, (1) failed to provide "any substantial basis for their appeal"; (2) "failed to directly address *any* of the substantive arguments raised by the Plaintiffs" and (3) filed a brief that referred to a different matter. Tabacco Decl. Ex. 4.

Courts impose appeal bonds on objectors who, like Hampe, fail to proffer any support for their objections because such objectors "undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves." *IPO*, 721 F. Supp. 2d at 215-16. As noted by Judge Gertner, these "professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors." *Barnes v. Fleetboston Fin. Corp.*, No. 01-10395-NG, 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006).

Additionally, despite being an attorney himself (Tabacco Decl. Ex. 12), Hampe has retained counsel, Christopher A. Bandas of the Bandas Law Firm, with a long history of holding class plaintiffs hostage by appealing settlements, which buttresses this conclusion.[7] In fact, in each of Hampe's appeals, it has been his practice to file his objections and Notice of Appeal pro se and for his counsel, Mr. Bandas, to subsequently file an entry in the appellate court.[8] Mr. Bandas has been repeatedly chastised by courts, who have concluded that he pursues such appeals for his personal gain. *See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (the court observed that "Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate

---

[7] *See, e.g., Dennings v. Clearwire Corp.*, No. 13-35491 (9th Cir. Sept. 27, 2013) (appeal dismissed by summary affirmance after district court awarded $41,150 appeal bond and finding objections without merit, *see* 928 F. Supp. 2d 1270, 1271-72 (W.D. Wash. 2013)); *Pokorny v. Quixtar, Inc.*, No. 13-16454 (9th Cir. Sept. 13, 2013) (appeal of fee order in No. 3:07-cv-00201-SC (N.D. Cal. July 18, 2013) voluntarily dismissed); *Lochridge v. Bank of Am. Corp.*, No. 13-15170 (9th Cir. Apr. 1, 2013) (appeal of final approval order in No. 3:11-md-02269-TEH (N.D. Cal. Jan. 16, 2013) voluntarily dismissed); *Adams v. Morgan*, No. 12-56957 (9th Cir. Feb. 4, 2013) (appeal of final approval and fee order in *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) voluntarily dismissed); *Closson v. Bank of Am.*, No. A125963 (Cal. App. 1st Dist. June 23, 2011) (appeal of final order in No. CGC-04-436877 (San Francisco Super. Ct. Aug. 3, 2009) voluntarily dismissed); *In re: Wal-Mart Stores, Inc. Wage & Hour Litig.*, No. 06-CV-02069 SBA (N.D. Cal. Nov. 6, 2010) (objections withdrawn); *Savaglio v. Wal-Mart Stores, Inc.*, No. A128744 (Cal. App. 1st Dist. Oct. 18, 2010) (appeal of final approval order in No. C-835687 (Alameda Super. Ct. Apr. 8, 2010) voluntarily dismissed); *In re: Wal-Mart Wage & Hour Emp't Practices Litig.*, No. 09-17648 (9th Cir. Aug. 10, 2010) (appeal of final approval order in MDL No. 1735 (D. Nev. Nov. 2, 2009) dismissed by summary affirmance); *Cellphone Termination Fee Cases*, 180 Cal. App. 4th 1110 (2009) (judgment in *In re Cellphone Termination Fee Cases*, JCCP No. 4332 (Alameda Super. Ct. June 10, 2008) affirmed), *rev. denied*, 2010 Cal. LEXIS 3458 (Apr. 14, 2010); *Hale v. Wal-Mart Stores, Inc.*, No. WD71180 (Mo. Ct. App. W.D. Nov. 10, 2009) (appeal of final judgment in No. 01 CV 218710 (Mo. Cir. Ct. Jackson Cty. May 28, 2009) voluntarily dismissed); *Yoo v. Wendy's Int'l, Inc.*, No. 09-55554 (9th Cir. Oct. 26, 2009) (appeal of final approval and fee order in No. 07-cv-4515-FMC-JCx (C.D. Cal. Mar. 9, 2009) voluntarily dismissed); *Wilson v. Airborne, Inc.*, No. 08-56542 (9th Cir. Feb. 20, 2009) (appeal of final approval and fee orders in, No. 07-cv-00770 (C.D. Cal. Aug. 13, 2008) voluntarily dismissed); *Fleury v. Richemont N. Am., Inc.*, No. 08-16724, 08-16995 (9th Cir. Dec. 9, 2008) (appeals of final approval and bond orders in No. C-05-4525 EMC (N.D. Cal. July 3, 2008) voluntarily dismissed); *Checkmate Strategic v. Backwater Safari*, No. 07-5559 (9th Cir. July 31, 2007) (appeal of final order in *Checkmate Strategic Group v. Yahoo! Inc.*, No. 05-cv-04588-CAS- FMO (C.D. Cal. Mar. 26, 2007), voluntarily dismissed); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH (N.D. Cal. Oct. 31, 2006) (objections to final order withdrawn); *Bandas Law Firm, PC, v. Conroy*, Nos. 06-15980, 06-16627 (9th Cir. Sept. 19 & 22, 2006) (appeals of final approval and bond orders in *Conroy v. 3M Corp.*, No. C 00-2810 CW (N.D. Cal. Apr. 21, 2006) voluntarily dismissed); *In re: Managed Care Litig.*, No. 06-12354-E (11th Cir. May 9, 2006) (appeal of final approval order in No. 00-md- 01334-FAM (S.D. Fla. Mar. 15, 2006) voluntarily dismissed).

[8] *Compare* Tabacco Decl. Exs. 6-7 (Hampe's objection and Notice of Appeal in *Nutella* Action) *with id.* ¶ 16 & Ex. 13 (Bandas Law Firm appearance); *compare id.* Exs. 8-9 (Hampe's objection and Notice of Appeal in *Kardonick* Action) *with id.* ¶ 17& Ex. 14 (Bandas Law Firm appearance); *compare id.* Exs. 10-11 (Hampe's objection and Notice of Appeal in *McDonough* Action) *with id.* ¶ 18& Ex. 15 (Bandas Law Firm appearance).

8

changes to settlements, but does so for his own personal financial gain; . . . [and] has been excoriated by Courts for this conduct") (footnote omitted).[9]  Indeed, in *In re Hydroxycut*, *supra*, the Honorable Barry Ted Moskowitz recently struck Bandas' objection noting that: "Mr. Bandas said that he was willing to wager that [a class representative] would gladly pay him somewhere in the neighborhood of $400,000 to make his objection go away - otherwise, he could hold the settlement process up for two to three years through the appeal process."  2013 WL 5275618, at *5.

Several additional factors also support a finding that Hampe's appeal is vexatious.  First, courts recognize that the fact that the objector failed to appear at the final approval hearing supports a finding that the appeal is vexatious.  *See, e.g.*, *Eastwood Enters., LLC v. Farha*, No. 8:07-cv-1940-T-33EAJ, 2011 WL 2681915, at *1 (M.D. Fla. July 11, 2011) (granting a $25,000 appeal bond because the appellant filed a deficient and meritless objection and did not appear at the final settlement hearing); *In re Wal-Mart Wage & Hour Empl. Practices Litig.*, MDL No. 1735, 2010 WL 786513, at *1-2 (D. Nev. Mar. 8, 2010) (ordering each appellant to post a $500,000 appeal bond, citing the fact that none of these appellants appeared at the settlement approval hearing); *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 695 F. Supp. 2d 157, 167-68 (E.D. Pa. 2010) (ordering the appellant to post a $25,000 appeal bond and questioning the appellant counsel's motive for failing to attend the fairness hearing).

---

[9] *See also Embry v. ACER Am. Corp.*, No. C 09-01808 JW, 2012 WL 3777163, at *1-3 (N.D. Cal. Aug. 29, 2012) (Judge Ware held Bandas in contempt of court for failing to follow a court order and struck his objection to the parties' final settlement.); *Conroy v. 3M Corp.*, No. C 00-2810 CW, 2006 U.S. Dist. Lexis 96169, at *10 (N.D. Cal. Aug. 10, 2006) (Judge Wilken responded to yet another Bandas effort by noting that his "objections were patently frivolous: [his] cookie-cutter written objection bore no particular relationship to the circumstances of the settlement here, and at the hearing, [Bandas] erroneously referred to this case as involving 'defective' tape," which had nothing to do with the class claims or settlement).

Second, Hampe has no legitimate financial interest in the Settlement, further suggesting that his appeal is in bad faith. Given that Hampe owns less than one share of General Electric common stock (Hampe Obj. at 1), he would expect no meaningful recovery from any settlement related to GE, even if the case had settled for $1 billion.

### 3.   Risk of Non-Payment Favors Requiring a Bond

Where, as here, the objector does not reside in the location where the litigation takes place, this factor weighs in favor of requiring a bond. *See In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09-md-2023 BMC, 2013 WL 4735641, at *1 (E.D.N.Y. Sept. 3, 2013) (finding a risk of nonpayment when the appellant lived in Texas and the plaintiffs' counsel was located in New York and Illinois); *Fleury v. Richemont North America, Inc.*, No. C-05-4525-EMC, 2008 WL 4680033, at *7 (N.D. Cal. Oct. 21, 2008) (the fact that objector lived outside California and the Ninth Circuit "arguably would make it more difficult for the Settlings Parties to collect their costs should they prevail on their appeal").

Since Hampe resides in Texas, collection of any costs will be economically and procedurally difficult and weighs in favor of requiring a bond. *See* Tabacco Decl. Ex. 12.

### 4.   Hampe's Financial Ability Favors Requiring a Bond

It is the appellant's burden to show that he lacks the ability to post a bond. *See IPO*, 721 F. Supp. 2d at 213. Hampe is a lawyer who was admitted to practice in the state of Texas six years ago. *See* Tabacco Decl. Ex. 12. Thus, Lead Plaintiff would not expect Hampe to argue that he lacks the financial ability to post the bond as requested by Lead Plaintiff.

### B.   THE APPEAL BOND SHOULD BE SET AT $54,700

The appeal bond should be set at $54,700. This amount includes estimated (1) appellate costs of $5,700; and (2) additional settlement administration costs of $49,000.

### 1. Appellate Costs

Costs for purposes of Rule 7 include the taxable costs enumerated in Rule 39(e) of the Federal Rules of Appellate Procedure, such as costs in preparing and transmitting the appellate record. *IPO*, 721 F. Supp. 2d at 213. In *AIG*, Judge Batts granted the plaintiff's request for a $17,274.60 bond after the plaintiff filed a declaration, setting forth the basis for the estimated appellate costs. Tabacco Decl. Exs. 2-3. As detailed in the attached Tabacco declaration, Lead Plaintiff estimates that it will incur $5,700.00 just to copy and compile the voluminous appellate record. *Id.* ¶ 3. Hampe appears to challenge almost every aspect of the Settlement, so it will likely be necessary to submit a large record to the Court of Appeals covering most aspects of this four year litigation.[10] *Id.*

### 2. Administrative Costs

The Class will also incur claims administrative expenses due to the delay in distributing the settlement proceeds to the Class as a result of Hampe's appeal, thereby potentially depriving Class members of tens of thousands of dollars. The delay will result in over $49,000 in administrative costs alone. *See* Declaration of Eric J. Miller in Support of Lead Plaintiff's Motion For Appeal Bond ("Miller Decl."), filed herewith, ¶¶ 3-6. The Claims Administrator will be required to continuously maintain and update the settlement website and the designated toll-free telephone number. *Id*. ¶¶ 3-4. Further, some Class claimants will inevitably relocate during the pendency of the appeal. *Id*. These address changes will increase the claims processing costs. *Id*.

The Claims Administrator has estimated that this appeal will likely cause an additional $7,000-12-000 in monthly settlement administration costs. Miller Decl. ¶ 5. Considering that

---

[10] Courts in this district have ordered similar size bonds in other cases. *See CCF I*, 2010 WL 1253741, at *3 (allowing taxable costs of $50,000); *CCF II,* 2012 WL 3879924, at *3 (granting $25,000 taxable costs); *IPO*, 721 F. Supp. 2d at 218 (granting taxable costs of $25,000); Tabacco Decl. Exs. 2-3 (granting taxable costs of $17,274.60).

the median length of appeals in the Second Circuit is about thirteen months and the claims administrator anticipates that, but for the appeal, the checks would be ready for distribution in four to six months,[11] these expenses will likely equal or exceed $49,000 ($7,000 x 7). *Id.* at ¶¶ 5-6.

While some courts in this district have declined to include the administrative costs as part of the appeal bond;[12] other district courts have included the administrative costs.[13] Lead Plaintiff submits these well reasoned authorities, in the circumstances here, provide a sound basis for the Court to include administrative costs in calculating a fair and appropriate bond amount.

//

//

---

[11] *See* Statistical Table B-4A published by the U.S. Courts of Appeals showing the "Median Time Intervals in Months for Merit Terminations of Appeals Arising From the U.S. District Courts, by Circuit, During the 12-Month Period Ending September 30, 2012," available at http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2012/appendices/B04ASep12.pdf, at p. 2 (for the Second Circuit, the median time interval between the filing of a Notice of Appeal to final disposition is 13 months).

[12] *AOL*, 2007 WL 2741033, at *3-4; *CCF I*, 2010 WL 1253741, at *3; *CCF II*, 2012 WL 3879924 at *3; *IPO*, 721 F. Supp. 2d at 216-17. However, the plaintiffs in those cases sought a large amount of delay costs often without factual support and the courts conclusively denied the administrative costs without separating them from the other delay-related costs. *See, e.g., AOL*, 2007 WL 2741033, at *4; *but cf. Miletak v. Allstate Ins. Co.*, No. C-06-3778-JW, 2012 WL 3686785, at *2 (N.D. Cal. 2012) (including $50,000 of administrative costs, but denying the "delay damages" of $406,789). Here, Lead Plaintiff seeks a reasonable amount of administrative costs and submits a declaration from the Claims Administrator to support this amount. Notably, the Second Circuit has not yet addressed this particular issue.

[13] *See Nutella Marketing & Sales Practices, supra*, ECF No. 122 (attached as Tabacco Decl. Ex. 4) (granting $20,000 administrative costs); *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, No. 11-md-2247-ADM-JJK, 2012 WL 3984542, at *4-5 (D. Minn. Sep. 11, 2012) (granting $20,000 administrative costs); *Miletak*, 2012 WL 3686785, at *2 (granting $50,000 administrative costs); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, at *1-2 (D. Me. Oct. 7, 2003) (granting $35,000 appeal bond including damages resulting from delay of settlement administration caused by a frivolous appeal in a Rule 7 bond).

## IV. CONCLUSION

Hampe's single objection threatens to substantially delay the distribution of settlement proceeds and cause the class to incur needless expenses. Accordingly, Lead Plaintiff respectfully requests that this Court order Hampe to post a $54,700 appeal bond within ten (10) business days to secure Lead Plaintiff's costs associated with the appeal.

Dated: November 20, 2013                                Respectfully submitted,

**BERMAN DEVALERIO**

*/s/ Joseph J. Tabacco, Jr.*
Joseph J. Tabacco, Jr. (JJT-1994)
Nicole Lavallee
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200

Glen DeValerio (admitted *pro hac vice*)
Kathleen M. Donovan-Maher (admitted *pro hac vice*)
Kristin J. Moody (admitted *pro hac vice*)
Steven J. Buttacavoli (admitted *pro hac vice*)
Daryl D. Andrews (admitted *pro hac vice*)
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300

Kyle G. DeValerio (admitted *pro hac vice*)
3507 Kyoto Gardens Drive, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 835-9400

*Lead Counsel for Lead Plaintiff
State Universities Retirement System of Illinois*

                LOWEY DANNENBERG COHEN & HART, P.C.
Richard W. Cohen
White Plains Plaza
One North Broadway
White Plains, NY 10601
Telephone: (914) 733-7239

*Liaison Counsel for the Lead Plaintiff State Universities Retirement System of Illinois*