```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
IN RE: GENERAL ELECTRIC COMPANY        :      09 Civ. 1951 (DLC)
SECURITIES LITIGATION                  :
                                       :          OPINION & ORDER
                                       :
                                       :
-------------------------------------- X
```

APPEARANCES:

For Plaintiff, State Universities Retirement System of Illinois:

Joseph J. Tabacco, Jr.
Berman DeValerio
One California Street, Suite 900
San Francisco, CA 94111

Glen DeValerio, Kathleen M. Donovan-Maher, Kristin J. Moody,
Steven J. Buttacavoli, Daryl D. Andrews
Berman DeValerio
One Liberty Square
Boston, MA 02109

Kyle G. DeValerio
Berman DeValerio
3507 Kyoto Gardens Drive, Suite 200
Palm Beach Gardens, FL 33410

Richard Wolfe Cohen and David Harrison
Lowey Dannenberg Cohen & Hart, P.C.
White Plains Plaza
One North Broadway
White Plains, NY 10601

For Pro Se Objector and Appellant, Clarke Hampe:

Clarke Hampe
6571 Furman Court
Tyler, TX 75703

DENISE COTE, District Judge:

This Opinion addresses a motion pursuant to Rule 7 of the Federal Rules of Appellate Procedure for an order compelling Clark Hampe, a pro se objector to the settlement in this class action securities case, to post an appeal bond for the amount of $54,700.  For the following reasons, the motion is granted.

BACKGROUND

This case has a long and tortured history.  It will be summarized here to put the objections made by Hampe to the settlement in context.

This litigation began on March 3, 2009, when a putative class consisting of all purchasers of stock of General Electric Company ("GE") between January 23 and February 27, 2009 filed a complaint against GE and various individual officers and directors of GE.  This complaint alleged violations of Section 10(b), Rule 10b-5, and Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").  The principal allegation was that the defendants disseminated materially false information regarding GE's financial health; when the truth regarding GE's financial health was later revealed in the form of a significantly reduced dividend, the stock price for GE fell sharply.  The matter was initially assigned to the Honorable Denny Chin.

2

In an Order of July 29, the action was consolidated with other related actions.  In addition to alleging fraud, these actions included strict liability claims premised on violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act") and named additional defendants, including various investment banks that served as underwriters to GE in a secondary public offering in October 2008.  In the same Order, the State Universities Retirement System of Illinois was appointed lead plaintiff ("Lead Plaintiff"), and its choice of counsel, Berman DeValerio, was approved ("Lead Counsel").

On October 2, the Lead Plaintiff filed a consolidated class action complaint.  For the Exchange Act claims, the putative class was expanded to all purchasers of GE stock between September 25, 2008 to March 19, 2009.  For the Securities Act claims, the putative class was all who purchased GE stock in the October 2008 secondary public offering.  The new class of defendants consisted of GE; the Chairman and Chief Executive Officer, Jeffrey Immelt ("Immelt"); the Vice Chairman and Chief Financial Officer, Keith Sherin ("Sherin"); various other officers; various directors; and the corporate underwriters. The principal allegation on all claims remained that the defendants made materially false statements regarding GE's financial health.

On November 24, the defendants moved to dismiss the

complaint.  The motion was fully submitted as of March 26, 2010.
On April 28, however, the case was reassigned to the Honorable
Richard J. Holwell, when Judge Chin assumed his seat on the
Second Circuit Court of Appeals.

On June 9, 2010, the Lead Plaintiff filed a Second
Consolidated Class Action Complaint ("SAC"), which is the
operative complaint here.  Defendants again moved to dismiss the
SAC.  This motion was fully submitted as of August 25, and oral
argument on the motion was heard on November 23.

In an Opinion of January 12, 2012, the motion to dismiss
was granted in part ("January Opinion").  In re General Elec.
Co. Secs. Litig., 857 F. Supp. 2d 367 (S.D.N.Y. 2012).  The
Securities Act and Exchange Act claims survived in large part.
On January 26, two sets of defendants brought separate motions
for partial reconsideration of the January Opinion with respect
to both the surviving Securities Act claims and the surviving
Exchange Act claims.  On February 7, 2012, this matter was
reassigned to this Court.  Following a March 6 conference that
clarified that the motions for reconsideration should also be
construed as motions for judgment on the pleadings, pursuant to
Rule 12(c), Fed.R.Civ.P., the parties completed briefing.  These
motions were fully submitted on March 23.

In an Opinion of April 18, the motion for partial
reconsideration and judgment on the pleadings for the Securities

4

Act claims was granted.  In re General Elec. Co. Secs. Litig.,
856 F. Supp. 2d 645 (S.D.N.Y. 2012) ("April Opinion").  As
explained in the April Opinion, among other things, the recent
Second Circuit decision in Fait v. Regions Fin. Corp., 655 F.3d
105, 110 (2d Cir. 2011), required dismissal of the Securities
Act claims.  The motion for partial reconsideration and judgment
on the pleadings for the Exchange Act claims was denied.  The
upshot of the April Opinion was the dismissal of all strict
liability claims and all claims against the underwriter banks,
the corporate directors, and all but two of the corporate
officers.  The remaining defendants were GE, Immelt, and Sherin.
A subsequent motion to amend the SAC was denied on July 12.  In
re General Electric Co. Secs. Litig., 09 Civ. 1951 (DLC), Docket
No. 167 (S.D.N.Y. July 12, 2012).

On November 2, 2012, the Lead Plaintiff again moved for
leave to amend the SAC.  The proposed Third Consolidated Class
Action Complaint dramatically altered the Lead Plaintiff's
theory of the case, and permitting the amendment at that late
stage raised the genuine possibility of prejudicing the
defendants, for reasons explained in detail on the record at a
January 11, 2013 conference.  Additionally, whether leave to
amend were granted or not, the Lead Plaintiff stated that it
intended to shorten the class period substantially because it
could not prove damages for the full class period.  Following

the conference, on January 25 the defendants moved for judgment on the pleadings, arguing that defendants should prevail on a loss causation defense given the shortened class period.  This motion was fully submitted as of February 15, 2013.

On April 29, the Lead Plaintiff filed a motion for preliminary approval of a $40 million settlement, approval of notice to the putative class, and preliminary approval of certification of a settlement class.  On May 8, a conference was held to discuss preliminary approval of the settlement, as well as to review the proposed class notice.  On May 30, preliminary approval was granted for a $40 million settlement.  A fairness hearing was scheduled for August 16, 2013, notice of exclusion decisions was due by July 27, and objections were due in writing by August 2.  These dates were later extended for those who received a tardy notice, and the fairness hearing was rescheduled for September 6, 2013.

Millions of postcard notices were mailed out, and tens of thousands of full notices were also mailed.  Approximately one hundred requests to opt-out of the settlement class were received.  Eight objections were also received.  One of the eight objections was submitted by Clarke Hampe ("Hampe"), who purchased 0.06 shares of GE stock during the class period.  The details of Hampe's objections are discussed below.

On September 6, the Court considered all objections, the

6

Grinell factors,[1] and the Goldberger factors.[2]  Although a $40 million settlement amounted to $0.01 per share for the class, in light of the history of the case and the serious risks to the class in proceeding with the litigation, the settlement was approved as fair and reasonable.  The Lead Plaintiff's request for approximately $4.1 million in attorney's fees was reduced, albeit slightly.  These issues will also be discussed in detail below.

On October 1, 2013, Hampe filed a timely notice of appeal.

---

[1] In evaluating the substantive fairness of a class action settlement in this Circuit, district courts must consider "the nine Grinell factors set forth in Detroit v. Grinell Corp. [495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000)]: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." Charron v. Wiener, 731 F.3d 241, 247 (2d Cir. 2013).

[2] In evaluating the reasonableness of an attorney's fees award in this Circuit, district courts must consider the six Goldberger factors set forth in Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000): "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." Victor v. Argent Classic Convertible Arbitrage Fund L.P., 623 F.3d 82, 86 n.2 (2d Cir. 2010).

On November 20, the Lead Plaintiff moved for an order compelling Hampe to post an appeal bond in the amount of $54,700.  The motion was fully submitted as of December 11.


DISCUSSION

The principal legal question raised by the present motion is whether the administration expenses for a class action settlement may be included in an appeal bond under Rule 7, Fed.R.App.P. (referred to in this Opinion as a "Rule 7 Bond"). The Lead Plaintiff has sought such a bond, consisting of $5,700 in ordinary appellate costs[3] and $49,000 in administrative costs. The latter figure is an estimate of the incremental expenses of administering this class action settlement for the additional period of time resulting from Hampe's appeal.[4]  As Hampe does not object to providing a Rule 7 Bond for the $5,700 in ordinary appellate costs, the only issue is whether to include in this bond the $49,000 in settlement administration expenses.

To support the imposition of a Rule 7 Bond here, the Lead Plaintiff contends that Hampe's appeal is vexatious and meritless.  It presents evidence that Hampe is a professional

---

[3] The $5,700 expense is based solely on the cost of compiling and copying the appellate record.

[4] As an example of such an expense, assuming that Hampe's appeal will not be resolved by the Second Circuit for seven months, maintenance of the telephone hotline for the settlement during that period of time would cost approximately $5,000.

objector with a history of bringing frivolous appeals.  Finally,
it explains that Hampe's appeal will harm the class by delaying
distribution of the settlement and, more directly, reducing the
amount of net settlement funds to be distributed to class
members.  Hampe responds that settlement administration expenses
may not be included in a Rule 7 Bond because a Rule 7 Bond may
only be imposed when there is fee-shifting statute or when the
amount of the bond is set to cover taxable costs under Rule 39,
Fed.R.App.P.

I.   Inclusion of Settlement Administration Expenses in a Rule 7
     Bond

     The Second Circuit has not yet considered whether
settlement administration expenses may be included in a Rule 7
Bond.  The texts of the relevant rules of procedure and the
precedent addressed to those rules, however, demonstrate that
the Court of Appeals may impose an award of damages on an
appellant pursuing a frivolous appeal, and a district court may
consider that likelihood is assessing the scope and amount of a
Rule 7 Bond.

     A.  Scope of a Rule 7 Bond

     Unlike a supersedeas bond, which is retrospective in its
focus, a Rule 7 Bond is prospective.  Adsani v. Miller, 139 F.3d
67, 70 n.2 (2d Cir. 1998).  A Rule 7 Bond "relates to the

potential expenses of litigating an appeal." Id. Rule 7 provides that "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed.R.App.P. 7.

The term "costs" in Rule 7 refers to "all costs properly awardable under the relevant substantive statue or other authority. In other words, all costs properly awardable in an action are to be considered within the scope of [the] Rule." Adsani, 139 F.3d at 72 (applying the Marek v. Chesny, 473 U.S. 1, 9 (1985), discussion of Fed.R.Civ.P 68 to Rule 7). As the Court of Appeals explained in Adsani, the "purpose of Rule 7 appears to be to protect the rights of appellees brought into appeals courts." Id. at 75. It added that it did "not think it either bizarre or anomalous for the amount of the bond to track the amount the appellee stands to have reimbursed." Id. In setting the amount of a Rule 7 Bond, a district court may "prejudge[]" the case's chances on appeal. Id. at 79. "A district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal." Id.

In reaching its conclusion about the scope of a Rule 7 Bond, the court explicitly rejected a definition of costs that would limit it to those costs enumerated in Rule 39,

Fed.R.App.P.  Id. at 74-75.  It concluded that Rule 39 does not define "costs" for all of the rules of the Federal Rules of Appellate Procedure, much less for all the rules of the Federal Rules of Civil Procedure.  Id.

In setting the proper amount for a Rule 7 Bond, however, a district court must not create an impermissible barrier to appeal.  To be valid, the requirements of security for an appeal to protect appellees must be "reasonably tailored to achieve these ends and uniformly and nondiscriminatorily applied."  Id. at 78 (citation omitted).  A Rule 7 Bond may not be "automatically assessed" since that would discriminate against litigants who cannot afford to post a bond.  Id.  An appellant asserting that the size of the Rule 7 Bond presents a financial barrier to an appeal must, however, make a sufficient showing in support of that assertion.  Id. at 76.  Conclusory statements will not suffice.  Id.

B.  Court of Appeals' Authority to Award Damages

The text of Rule 38 of the Federal Rules of Appellate Procedure, as well as the Advisory Committee Notes that accompany the rule, support a broad reading of the authority of the courts of appeals to award damages to appellees who are confronted with frivolous appeals.  Beekman Paper Co. v. National Paper Prods., 909 F.2d 67, 69-70 (2d Cir. 1990) (per curiam).  Rule 38 provides "[i]f a court of appeals determines

11

that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed.R.App.P. 38.  The 1967 Advisory Committee Notes to Rule 38 state that "[d]amages are awarded by the court in its discretion in the case of a frivolous appeal as a matter of justice to the appellee and as a penalty against the appellant." Such damages can therefore, in the appropriate circumstances, be included in a Rule 7 Bond.  See Adsani, 139 F.3d at 73; see also Skolnick v. Harlow, 820 F.2d 13, 15 (1st Cir. 1987) (per curiam).

The damages that an appellee class incurs when confronted with a frivolous appeal from a judgment entered pursuant to a class action settlement include those additional administrative costs that are associated with the delay in distribution of a settlement fund.  Those costs decrease the amount of the settlement funds available for distribution to the class and represent a quantifiable amount of damages.  As one district judge has observed, professional objectors to class action settlement may extort payments from a class simply by filing frivolous appeals.

> Repeat objectors to class action settlements can
> make a living simply by filing frivolous appeals and
> thereby slowing down the execution of settlements.
> The larger the settlement, the more cost-effective it
> is to pay the objectors rather than suffer the delay

12

of waiting for an appeal to be resolved (even an
expedited appeal).  Because of these economic
realities, professional objectors can levy what is
effectively a tax on class action settlements, a tax
that has no benefit to anyone other than to the
objectors.  Literally nothing is gained from the cost:
Settlements are not restructured and the class, on
whose behalf the appeal is purportedly raised, gains
nothing.
    Under these circumstances, Fed. R. App. P. 7
makes perfect sense: by requiring objectors to post a
bond that would cover the costs of losing the appeal,
the burden of litigating frivolous appeals shifts to
them instead of to the class.  Posting a bond
sufficient to ensure that the class can recoup the
costs of appeal provides the class with an appropriate
incentive to litigate the appeals and establish their
lack of merit.  And if the appeal turns out not to be
frivolous despite initially appearing so, the
objectors will get almost the entirety of their bond
back.

Barnes v. Fleetboston Fin. Corp., No. 01-10395 (NG), 2006 WL

6916834, at *1 (D. Mass. Aug. 22, 2006); see also O'Keefe v.

Mercedes-Benz USA, LLC, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003)

("Federal courts are increasingly weary of professional

objectors: some of the objections were obviously canned

objections filed by professional objectors who seek out class

actions to simply extract a fee by lodging generic, unhelpful

protests." (citation omitted)).

    Many district courts have determined that settlement

administration expenses may be properly awarded as "damages"

under Rule 38, Fed.R.App.P.  See In re Pharm. Indus. Average

Wholesale Price Litig., 520 F. Supp. 2d 274, 279 (D. Mass. 2007)

(collecting cases).  Other district courts have included such

13

expenses in Rule 7 Bonds without specifying the exact authority on which they were relying.  See, e.g., In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 124, 127-28 (S.D.N.Y. 1999). Cf. In re Cardizem CD Antitrust Litig., 391 F.3d 812, 815-18 (6th Cir. 2004) (including settlement administration expenses as damages in a Rule 7 Bond, albeit not under Rule 38).

At least one district court in this Circuit has concluded that an increase in settlement administration expenses associated with an appeal must be addressed through a supersedeas bond, as opposed to a Rule 7 Bond.  In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., 02 Civ. 5575 (SWK), 2007 WL 2741033, at *4 n.4 (S.D.N.Y. Sept. 20, 2007).  This concern does not prevent imposition of a Rule 7 Bond.  Additional costs accrued pending appeal are prospectively incurred new damages and may not be recovered through a supersedeas bond.  Adsani, 139 F.3d at 70 n.2.

A supersedeas bond provides a means by which the appellant acquires, "as a matter of right," a stay of the district court judgment pending appeal.  11 Charles Alan Wright, Arthur R. Miller, & Mary Kaye Kane, Federal Practice & Procedure § 2905 (3d ed.); see also Fed.R.Civ.P. 62(d) (setting forth the function of a supersedeas bond); Fed.R.App.P. 8 (describing the procedure for moving for a supersedeas bond).  If an appellant does not post the supersedeas bond, or otherwise obtain a stay

in the enforcement of the judgment, the party who has obtained a judgment may immediately commence enforcement action to collect on the judgment.  <u>See</u> 11 Charles Alan Wright, Arthur R. Miller, & Mary Kaye Kane, <u>Federal Practice & Procedure</u> § 2905 (3d ed.) ("In the absence of a stay obtained in accordance with Rule 62(d), the pendency of an appeal does not prevent the judgment creditor from acting to enforce the judgment."); <u>see, e.g.,</u> <u>Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara</u>, 500 F.3d 111, 116 (2d Cir. 2007).  The parties in this action who have incurred the obligation to pay the judgment are the defendants.  They have already paid those monies into the settlement fund, and are not contesting their obligation to pay under the terms of the settlement agreement.  All that remains to be done before the fund may be distributed is for the judgment to become final.

There is a second reason why a supersedeas bond is not the appropriate vehicle to protect against damages incurred from a frivolous appeal.  A district court cannot <u>force</u> an appellant to post a supersedeas bond.  Under the plain language of Rule 62(d), Fed.R.Civ.P., and Rule 8, Fed.R.App.P., a district court "approves" a party's motion for a supersedeas bond.  The district court may not <u>sua sponte</u> order the appellant to post such a bond.  <u>See, e.g.,</u> <u>In re American Investors Life Ins. Co.</u> <u>Annuity Marketing and Sales Practices Litig.,</u> 695 F. Supp. 2d

157, 161-62 (E.D. Pa. 2010).

Thus, where an objector lodges a frivolous appeal to a class action settlement, a district court may impose a Rule 7 Bond in the amount of the additional administrative expenses that are reasonably anticipated from the pendency of the appeal. The next issue to address is whether such a bond shall be imposed in this case.

## II.  Imposition of Settlement Administration Expenses in this Case

There are at least three factors that are relevant in assessing whether a Rule 7 Bond should be imposed.  They are: (1) the appellant's financial ability to post the bond; (2) whether the appeal is frivolous; and (3) whether the appellant has engaged in any bad faith or vexatious conduct.  Of these, the first two are of the greatest importance.  See Adsani, 139 F.3d at 76-79.

In this case, all three factors support requiring Hampe to post an appeal bond for the $49,000 in settlement administration expenses.  The first factor can be quickly addressed.  Hampe has provided no evidence suggesting that he would be financially unable to post $54,700 for an appeal bond.

The Lead Plaintiff has also shown that Hampe's identified grounds for an appeal are frivolous.  An argument is "frivolous"

16

for purposes of Rule 38, Fed.R.App.P., when it is "totally lacking in merit, framed with no relevant supporting law, conclusory in nature, and utterly unsupported by the evidence." T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 341 (2d Cir. 2010) (citation omitted).  In his statement of objections to the settlement, presented in a letter filed in advance of the fairness hearing, Hampe made three conclusory objections: (1) that the proponents of the settlement did not prove commonality, predominance, superiority, and adequacy of class counsel and class representatives; (2) that the award of attorney's fees is excessive, whether under a lodestar or percentage of recovery basis, and further that the award is unsupported by a detailed fee application; and (3) that the release was overly broad because it precluded class members from ever taking legal action even in light of new evidence of wrongdoing.[5]

All three objections are frivolous, and thus Hampe's appeal is also frivolous.  Hampe's first objection reads, in its entirety, as follows: "I also object to the proponents of the

---

[5] Hampe also generally objected to any "procedures or requirements" that demanded more information than his letter of objection provided.  This objection cannot excuse Hampe's failure to describe any objection to the settlement in greater detail.  Hampe was provided with an opportunity to provide written objections and to be heard orally at the fairness hearing, which he did not attend.  He was required to sufficiently identify his objections to permit the Court to evaluate them.

settlement not sustaining their burden of proof on commonality, predominance, superiority, and adequacy of class counsel and class representatives under application federal law."  This single-sentence attack on all aspects of class certification, devoid of specific factual arguments and legal citation, is conclusory and likely not preserved for appellate review.  See Cuoco v. Moritsugu, 222 F.3d 99, 112 n.4 (2d Cir. 2000) ("This single, conclusory, one-sentence argument is insufficient to preserve any issue for appellate review.").

Moreover, it is totally lacking in merit.  This securities fraud case is a standard securities class action, brought on behalf of thousands of class members, all of whose claims depend on the common contention that defendants made material misstatements under the Exchange Act.  This easily meets the requirements of commonality, predominance, and superiority. Although the case settled just prior to formal class certification, this Court acknowledged during the fairness hearing, when addressing the sixth Grinnell factor, that this case would have certainly proceeded as a class action.  Nor has Hampe identified any reason to find that the Lead Plaintiff has not adequately represented the class's interests, or that class counsel failed to fulfill their responsibilities to the class.

Hampe's second objection reads as follows:

Objection is made based on the award of attorney's

18

fees, which are excessive under both a lodestar method
and a percentage of recovery basis.  Additional
objection is made for the failure of class counsel to
make a detailed attorney fee application sufficient
for the class to evaluate fees.  A fee application of
12% of a $40 million fund, when considering the $2
million applied for in expenses, is excessive given
the size of this fund and in the paltry return to
class members.

As a preliminary matter, Hampe's assertion that counsel

failed to provide a detailed fee application is simply wrong.

This information can be found as an exhibit to the July 17, 2013

motion for attorney's fees.  Not surprisingly, given the length

of the litigation, the lodestar figure was substantially greater

than the amount of fees awarded here.  The lodestar calculation

was $11.4 million, and Lead Counsel's request was for 38% of

that figure.

Lead Counsel's requested attorney's fees was based on an

11.32% recovery figure found in the retainer agreement, i.e.,

approximately $4.1 million.  Where, as here, the Lead Plaintiff

is a sophisticated institutional investor, deference to this

bargained-for fee award is appropriate.  See In re WorldCom,

Inc. Sec. Litig., 02 Civ. 3288 (DLC), 2004 WL 2591402, at *20

(S.D.N.Y. Nov. 12, 2004) (where as "experienced lead plaintiff

in complex securities class actions" has "negotiated a detailed

retainer agreement on behalf of the class" and "conscientiously

supervised the work of Lead Counsel and gives its endorsement to

the fee request," "the requested fee is entitled to a

presumption of reasonableness").

There is an additional reason why this objection to the fee award is frivolous:

> What constitutes a reasonable fee is properly committed to the sound discretion of the district court, and will not be overturned absent an abuse of discretion, such as a mistake of law or a clearly erroneous factual finding.  Indeed "abuse of discretion" -- already one of the most deferential standards of review -- takes on special significance when reviewing fee decisions.  The district court, which is intimately familiar with the nuances of the case, is in a far better position to make such decisions than is an appellate court, which must work from a cold record.

Goldberger, 209 F.3d at 47-48 (citations omitted).  The final attorney's fees award reflected a careful balancing of interests based on the specific circumstances of the case.  Balancing these interests, this Court reduced the requested attorney's fees sufficiently to ensure that the class recovered at least $30 million of the $40 million settlement fund.[6]

Hampe's third objection reads as follows: "Objection is made to the overly broad release granted to Defendant in this settlement.  It precludes class members from ever taking legal action even in light of new evidence of wrongdoing."  This objection is also frivolous.

First, the suggestion that the release was overly broad because it does not permit future claims based on new evidence

---

[6] The remaining $10 million were divided between administrative costs, litigation expenses, and attorney's fees.

of wrongdoing reflects a fundamental misunderstanding of the purpose of class action releases.  Such releases are meant to waive all future claims, even if new evidence of wrongdoing is uncovered.  Indeed, one reason that most corporate defendants are willing to settle a class action case is a desire for litigation peace; in return for the settlement funds, the plaintiff class provides such peace by releasing its claims, which generally includes both present and future claims for the course of conduct that was the subject of the litigation.  See, e.g., In re American Exp. Fin. Advisors Secs. Litig., 672 F.3d 113, 135-36 (2d Cir. 2011); Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 106 (2d Cir. 2005).

Second, the scope of the release was the subject of careful review in this action, and there is no basis to find it was overly broad.  At the May 8, 2013 conference prior to preliminary approval of the settlement, the Court reviewed the specific language of the release to ensure that "no members of the plaintiff class would be barred beyond what would be reasonable and appropriate in the litigation."  Defense counsel confirmed on the record that only claims arising out of a transaction in GE common stock during the class period were being released.  Hampe's conclusory assertion of an overly broad release, notwithstanding the Court's close attention to the issue, demonstrates his clear disregard for the record.

In sum, the Second Circuit is likely to conclude that Hampe's appeal is frivolous.  It is also likely, as a result, to impose appropriate sanctions under Rule 38, Fed.R.App.P.

Finally, Lead Plaintiff has shown that Hampe's appeal is brought in bad faith.  Hampe has a history of vexatious conduct through frivolous settlement objections.  Recently, in In re Nutella Marketing & Sales Practices, No. 11-1086 (FLW), 2012 WL 6013276, at *2 (D.N.J. Nov. 20, 2012), the district court found that Hampe's appeal of an objection to a class action settlement was meritless.  That court observed that Hampe's papers failed "to put forth any cogent argument" why the appeal would not be frivolous and referred to another legal matter -- as if he had simply copied and pasted his opposition papers from another proceeding.  Id.  Most relevant for present purposes, the court noted that Hampe "appear[s] to . . . repeatedly raise objections in class actions around the country."  Id.  Lead Plaintiff points to at least two other cases in which Hampe has filed conclusory objections to other class action settlements and appealed those objections.  Kardonick v. J.P. Morgan Chase & Co., No. 10-cv-23235 (WMH) (S.D. Fla. objection filed Aug. 19, 2011, notice of appeal filed Oct. 17, 2011); McDonough v. Toys "R" Us, Inc., No. 06-cv-242 (AB), ECF Nos. 752, 796 (E.D. Pa. objection filed June 6, 2011, notice of appeal filed Jan. 18, 2012).

Moreover, while Hampe is appearing pro se before this Court, he admits that he is "represented in this matter" by attorney Christopher A. Bandas ("Bandas"), who has been repeatedly admonished for pursuing frivolous appeals of objections to class action settlements.  The Honorable Samuel Conti of the Northern District of California has stated: "Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct."  In re Cathode Ray Tube (CRT) Antitrust Litig., 281 F.R.D. 531, 533 (N.D. Cal. 2012) (citation omitted).  Even more recently, the Honorable Barry Ted Moskowitz of the Southern District of California conducted an evidentiary hearing regarding Bandas's practices in order to determine whether to strike an objection.  After hearing testimony from Bandas and other witnesses, he struck the objection, having determined that "Mr. Bandas was attempting to pressure the parties to give him $400,000 as payment to withdraw the objections and go away" and that "Mr. Bandas was using the threat of questionable litigation to tie up the settlement unless the payment was made."  In re Hydroxycut Marketing and Sales Practices Litig., 2013 WL 5275618, at *5 (S.D. Cal. Sept. 17, 2013).  Hampe's relationship with Bandas, a known vexatious appellant, further supports a finding that Hampe brings this

appeal in bad faith.

In judging the legitimacy of Hampe's motives in filing an appeal, it is also helpful to evaluate Hampe's personal stake in this class action.  It is virtually non-existent.  He is a member of the class because he purchased 0.06 shares of GE stock during the class period.  Even had the settlement amount been $40 billion, and no attorney's fees awarded, he would have been entitled to less than $1.00, which would not have cleared the $10.00 threshold required for a claim payout.  His legal interest in the outcome of this proceeding is therefore de minimis.

The Lead Plaintiff has shown that a Rule 7 Bond in the amount of the additional administrative expenses that will accrue during this frivolous appeal should be imposed on Hampe. None of Hampe's arguments in opposition to this motion alter this conclusion.

In opposition to this motion, Hampe does not dispute any of the foregoing analysis.  He does not dispute that he can post the bond in the amount sought here; he does not contend that any of his objections to the settlement have merit; he does not deny that he and his counsel are professional objectors who seek to extort a settlement from the Lead Plaintiff and who have been admonished by courts in the past for filing frivolous appeals in similar circumstances.  Instead, in his two-page opposition to

this motion, Hampe makes several legal arguments.

Hampe argues that settlement administration expenses cannot be included in a Rule 7 Bond because these expenses are not provided for in Rule 39, Fed.R.App.P.  This argument is foreclosed by Adsani.  In Adsani, the plaintiff also argued that Rule 39 defines the "costs" that are covered in Rule 7.  The Second Circuit rejected this argument, holding that Rule 39 does not define "costs" in Rule 7.  Adsani, 139 F.3d at 75.

Hampe relies as well on a district court decision from the Northern District of California that refused to impose settlement administration expenses through a Rule 7 Bond.  In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litig., No. 10-ML-2151 (JVS), 2013 WL 5775118, at *2 (C.D. Cal. Oct. 21, 2013).  Beyond string-citing Toyota and the district court decisions cited in Toyota, Hampe makes no substantive argument as to why settlement administration expenses should not be included in a Rule 7 Bond.  His unexplained argument merits no response.  In any event, Toyota and the district court decisions cited in Toyota generally refused to include settlement administration expenses in a Rule 7 Bond because they were concerned that such expenses belong in a supersedeas bond.  That concern has been addressed above.

Finally, Hampe argues that settlement administration

25

expenses cannot be included in a Rule 7 Bond in the absence of
an applicable fee-shifting statute authorizing such expenses.
Hampe is incorrect.   In Adsani, the Second Circuit held that the
term "costs" in Rule 7 refers to "all costs properly awardable
under the relevant substantive statue or other authority.   In
other words, all costs properly awardable in an action are to be
considered within the scope of [the] Rule."   Adsani, 139 F.3d at
73 (applying the Marek v. Chesny, 473 U.S. 1, 9 (1985),
discussion of Fed.R.Civ.P 68 to Rule 7).   The authority to award
costs is not limited to the costs awarded under a fee-shifting
statute.   Rule 7 costs also include damages imposed under Rule
38, Fed.R.App.P.   See Sckolnick, 820 F.2d at 15.


CONCLUSION

        The November 20 motion for an appeal bond in the amount of
$54,700 is granted.


SO ORDERED:

Dated:    New York, New York
          February 11, 2014


_____
                    DENISE COTE
          United States District Judge