**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE GENERAL ELECTRIC CO. SECURITIES LITIGATION | ) ) ) ) | Civ. No. 09-CIV-1951 (DLC) ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF**
**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR ENTRY OF A DISTRIBUTION ORDER APPROVING ADMINISTRATIVE DETERMINATIONS AND DIRECTING DISTRIBUTION OF THE NET SETTLEMENT FUND**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

I. INTRODUCTION........................................................................................................1

II. BACKGROUND .........................................................................................................3

III. CLAIMS ADMINISTRATION ...................................................................................5

A. Procedures and Review ...................................................................................6

B. De Minimis, Rejected, and Disputed Claims ...................................................7

IV. RECOMMENDED DISTRIBUTION PLAN FOR NET SETTLEMENT FUND.......8

V. DISPOSITION OF ANY UNCLAIMED/UNCASHED BALANCE ...........................10

VI. FEES AND EXPENSES OF CLAIMS ADMINISTRATION .....................................10

VII. BAR DATE, RELEASE OF CLAIMS, AND DOCUMENT RETENTION ..............12

VIII. CONCLUSION .........................................................................................................13

# TABLE OF AUTHORITIES

**Page**

***Clark Hampe v. State Universities Ret. Sys. of Ill.*,**
**No. 13-3763**
**(2d Cir. March 11, 2014*)* ....................................................................................4**

***In re Crazy Eddie Sec. Litig.*,**
**906 F. Supp. 840 (E.D.N.Y. 1995) ....................................................................9**

Lead Plaintiff, State Universities Retirement System of Illinois ("Lead Plaintiff"), through its counsel, respectfully submits this memorandum in support of its Unopposed Motion for Entry of a Distribution Order Approving Administrative Determinations and Directing Distribution of the Net Settlement Fund in the above-captioned action ("Action"). Lead Plaintiff also submits the accompanying Declaration of Eric J. Miller in Support of Lead Plaintiff's Unopposed Motion for Entry of a Distribution Order Approving Administrative Determinations and Directing Distribution of the Net Settlement Fund ("Miller Declaration" or "Miller Decl.") on behalf of the Court-approved claims administrator, A.B. Data Ltd. ("A.B. Data" or "Claims Administrator") and a proposed Order Approving Administrative Determinations and Directing Distribution of the Net Settlement Fund (proposed "Distribution Order").

## I. INTRODUCTION

On September 6, 2013, the Court approved the Settlement with the Settling Defendants[1], totaling $40,000,000 in cash for the benefit of the Class. As of today, the claims administration process is virtually complete. A.B. Data has processed and analyzed more than 381,765 Proof of Claim and Release Forms ("Proofs of Claim") and is now in a position to recommend the Distribution Plan for the Net Settlement Fund. Miller Decl. ¶¶ 10, 30. Accordingly, Lead Plaintiff hereby applies for the Distribution Order, which will allow for the distribution of the Net Settlement Fund (*i.e.*, the Settlement Amount plus accrued interest less all Court-approved fees and expenses), pursuant to the terms of the Court-approved Plan of Allocation to approximately 52,268 currently eligible Authorized Claimants, and, if necessary, further distributions of any remaining funds due to such reasons as uncashed checks or returned funds. Miller Decl. ¶¶ 35, 46-7.

---

[1] "Settling Defendants" refers to General Electric, Corp. ("GE" or the "Company"), its Chief Executive Officer, Jeffery R. Immelt ("Immelt"), and its Chief Financial Officer, Keith S. Sherin ("Sherin").

If entered, the accompanying proposed Distribution Order will, *inter alia*:

(i) Approve the administrative determinations concerning the acceptance and rejection of the Proofs of Claim submitted, including the determination to accept otherwise valid Proofs of Claim submitted after the October 11, 2013 deadline but before July 17, 2014, and the determination to reject wholly ineligible or otherwise deficient claims, as recommended by the Claims Administrator, A.B. Data, in the Miller Declaration;

(ii) Direct distribution of the Net Settlement Fund to the Authorized Claimants pursuant to the Court-approved Plan of Allocation in accordance with the Distribution Plan described below and in the Miller Declaration;

(iii) Adopt the recommended plan described in the Miller Declaration for the remaining funds following the initial distribution;

(iv) Authorize payment to A.B. Data for its outstanding fees and expenses incurred in connection with the administration of the Settlement;

(v) Establish July 16, 2014 as the bar date beyond which no new claims will be allowed and bar any further claims to the Settlement Fund or related to the claims administration process after July 16, 2014; and

(vi) Authorize destruction of (a) paper records of Proofs of Claim one year after the distribution is complete and (b) electronic copies of the Proofs of Claim three years after the distribution is complete.

Lead Plaintiff has confirmed that Settling Defendants do not oppose this Motion, and Lead Plaintiff is not aware of any other opposition to this Motion.

## II. BACKGROUND

The terms of the Settlement are embodied in the Stipulation and Agreement of Settlement dated April 29, 2013 ("Stipulation").[2] Pursuant to the Stipulation, the Settling Defendants paid a Settlement Amount of $40,000,000 to settle the claims alleged in the Action. The Settling Defendants deposited the Settlement Amount into an interest-bearing escrow account.

On May 30, 2013, this Court entered the Order Preliminarily Approving Proposed Settlement and Providing for Notice. (ECF No. 201) (the "Preliminary Approval Order").[3] Pursuant to the Preliminary Approval Order, Lead Counsel retained A.B. Data to print and mail copies of the Postcard Notice, Second Revised Full Notice of Pendency and Proposed Settlement of Class Actions ("Full Notice") and Proof of Claim to potential members of the Settlement Class,[4] to publish the Summary Notice of Pendency and Proposed Settlement of Class Actions ("Summary Notice"), to process the Proofs of Claim and to effectuate distribution of the Net Settlement Fund.

On September 6, 2013, this Court held a hearing to consider the proposed Settlement ("Final Approval Hearing"). By order and final judgment dated September 6, 2013 ("Judgment"), the Court finally approved the Settlement and the Plan of Allocation and directed

---

[2] All capitalized terms not otherwise defined herein have the same meaning as that set forth in the Stipulation (ECF No. 194-1). For convenience, certain capitalized terms are also defined in this Memorandum. To the extent there is any conflict between definitions of capitalized terms in this Memorandum and the Stipulation, the definition in the Stipulation controls.

[3] All references to ECF docket numbers refer to documents filed in the consolidated case, 09-CIV-1951 (DLC).

[4] The Preliminary Approval Order provisionally certified the Settlement Class as all Persons that, from September 25, 2008 through March 19, 2009, inclusive, purchased or otherwise acquired GE Common Stock either in the open market and/or pursuant or traceable to a registration statement. Excluded from the Settlement Class are: (i) the Defendants; the Officers and Directors of GE during the Class Period; the members of the Immediate Families of the Individual Defendants; any firm, trust, partnership, corporation, or entity in which any Defendant has a majority interest; the legal representatives, heirs, successors-in-interest, or assigns of any such excluded Person, provided that the Settlement Class shall not exclude any Investment Vehicle; and (ii) any Person that would otherwise be a Settlement Class Member but properly excludes himself, herself, or itself by submitting a valid and timely request for exclusion from the Settlement Class in accordance with the requirements set forth in the Preliminary Approval Order and in the Notice.

the parties to consummate the Settlement in accordance with the terms and provisions of the Stipulation. (ECF No. 223). The sole appeal of the Judgment was voluntarily dismissed by the appellant, effective on March 11, 2014. *See Clark Hampe v. State Universities Ret. Sys. of Ill.*, No. 13-3763 (2d Cir. Mar. 11, 2014) (ECF No. 65). Thus, under paragraph 52 of the Stipulation, the Effective Date for the Settlement has occurred, and distribution of the Net Settlement Fund can occur.

The initial claims administration has been completed. As detailed in the Miller Declaration, A.B. Data distributed over 2,720,012 copies of the Court-approved Postcard Notice to potential Class Members, 17,628 copies of the Court-approved Full Notice to potential Class Members, and 1,737,890 copies of the Supplemental Postcard Notice. *See* Miller Decl. ¶ 7. In response, A.B. Data received a total of 381,765 Proofs of Claim. *Id.*, ¶ 30. As described below and in the Miller Declaration, following A.B. Data's comprehensive claims administration, deficiency remedial procedures, and quality assurance procedures, A.B. Data and Lead Plaintiff recommend that approximately 52,268 of the Proofs of Claim should be accepted as valid, that 215,6857 of the Proofs of Claim should be rejected as ineligible, deficient or as having no Net Recognized Loss pursuant to the Court-approved Plan of Allocation, and that 113,812 of the Proofs of Claim be rejected as *de minimis*. *Id.,* ¶¶ 9-39.

As of August 1, 2014, the approximate value of the Settlement Fund (after deduction for Court-awarded attorneys' fees and expenses and escrow fees), was $31,105,999.57. Pursuant to paragraph 17 of the Stipulation, Lead Plaintiff now requests that the Court authorize the distribution of the Net Settlement Fund (after payment of the Claims Administrator expenses as discussed below, and payment of, or reserve for, taxes, tax preparation fees and escrow fees) to Authorized Claimants. If the Court approves A.B. Data's fees and expenses described below, the

Settlement Fund will have approximately $29,762,893.98 to distribute to shareholders. The Court retained jurisdiction over matters relating to the Settlement, including, but not limited to, distribution of the Settlement Fund.

## III. CLAIMS ADMINISTRATION

A.B. Data mailed more than 2,737,640 Postcard Notices, Full Notices and Proof of Claim forms to potential Class Members and nominees. Miller Decl. ¶ 7. Under the terms of the Stipulation, the Postcard Notice and the Full Notice, all potential Class Members wishing to participate in the distribution of the Net Settlement Fund were required to submit Proofs of Claim no later than October 11, 2013. *Id.*, ¶ 9. As of October 11, 2013, A.B. Data received 317,681 Proofs of Claim. *Id.*, ¶31, Between October 12, 2013 and July 16, 2014, A.B. Data received 64,084 Proofs of Claim. *Id.*, ¶ 32. In total, A.B. Data has received and processed more than 381,765 Proofs of Claim. *Id.*, ¶¶ 10, 30.

As a result of A.B. Data's careful review and processing of the Proofs of Claim, as detailed in the sections below, A.B. Data has prepared detailed administrator reports of:

a. valid and timely submitted Proofs of Claim, with each claimant's Recognized Loss amount;

b. Proofs of Claim that were valid, but submitted after the Court-approved submission deadline of October 11, 2013, and prior to July 17, 2014, with each claimant's Recognized Loss amount;

c. only the valid Proofs of Claim from above whose estimated distribution amounts greater than $10.00, with each claimant's Recognized Loss amount;

d. the rejected Proofs of Claim and the reasons for rejection; and

e. the Proofs of Claim that calculated to "No Recognized Loss."

These reports are annexed as Exhibits H through L to the Miller Declaration. Miller Decl. ¶ 42.

**A. Procedures and Review**

With respect to A.B. Data's extensive review process, Proofs of Claim submitted by mail were sorted into categories, prepped and batched, and scanned into an electronic system. Miller Decl. ¶ 12 (b-e). The Proofs of Claim were then evaluated and processed according to a complex claim code procedure to identify the types and conditions of the Proofs of Claim. *Id.*, ¶ 12 (b-i). Additionally, of the over 381,765 Proofs of Claim received and processed, approximately 308,669 were submitted electronically. *Id.*, ¶ 10. These electronic Proofs of Claim were reviewed and evaluated by an Electronic Filing Team and coded similarly to the manually filed Proofs of Claim. *Id.*, ¶¶ 11-2. A.B. Data's computer staff also designed numerous programs for each stage of the administration, as needed, to facilitate efficient processing of the claims. *Id.*

A.B. Data next made substantial efforts, by way of deficiency or rejection letters and an outreach campaign, to cure any Proofs of Claim with deficiencies. Miller Decl. ¶¶ 13-24 and Exs.[5] A through E (sample deficiency and rejection letters). A.B. Data mailed or emailed thousands of deficiency and rejection letters and followed-up with telephone calls to claimants. *Id.*, ¶¶ 14, 19-24. Responses to the deficiency letters were then reviewed and processed. *Id.*, ¶ 29. All deficiency and rejection letters advised claimants that if the claimant disputed A.B. Data's administrative determination, the claimant could request this Court's review of the determination. *Id.*, ¶¶ 16, 21. The process was designed to cure as many Proofs of Claim as possible and advise claimants of their rights.

[5] All references to "Ex." are to Exhibits to the Miller Declaration unless otherwise identified.

The administration was also subject to A.B. Data's rigorous Quality Assurance review processes at each stage of the project, from the initial proofs of claim handling to a final project "wrap-up." *Id.*, ¶¶ 28-9. These efforts enabled accurate review of the claims and ensured A.B. Data made correct eligibility determinations.

**B. *De Minimis*, Rejected, and Disputed Claims**

Pursuant to the Stipulation and Court-approved Full Notice and Plan of Allocation, no distributions will be made to Settlement Class Members that are entitled to receive less than $10.00 due to the administrative expenses of processing and mailing such checks. *See* Stipulation at ¶ 33; Full Notice at 2, 5 and 9. Claimants falling within the *de minimis* category were so notified. Miller Decl. ¶¶ 25-6 and Exs. F-G.

After deficiencies were processed and/or cured, a total of 14,774 Claims were administratively rejected for reasons including that Proofs of Claim: (a) had no purchase(s) of GE Common Stock during the Class Period; (b) were duplicates; (c) were submitted on behalf of Underwriter Defendants or an entity in which an Underwriter Defendant has a majority interest; (d) were withdrawn per written correspondence from the claimant; (e) had uncured deficiencies; (f) were Questionable Claims in that the supporting documentation may not be authentic. Miller Decl. ¶ 36. A.B. Data notified all the claimants, as described above, of the disposition of their Claims with the appropriate notice of rejection or ineligibility. *Id.*, ¶ 40.

In addition, 200,911 Claims have calculated to "No Recognized Loss" pursuant to the Plan of Allocation. Miller Decl. ¶ 41. These Claims were not deficient, duplicative, or intrinsically ineligible – rather, the Plan of Allocation provided for "No Recognized Loss" for GE Common Stock purchased and sold on or after a certain date, and for GE Common Stock

purchased and subsequently sold for a gain. *See* Full Notice at 9-11; Miller Decl. ¶ 41; *see also id.* at Ex. C.

The deficiency and rejection letters mailed by A.B. Data specifically stated that claimants had twenty days to contest A.B. Data's administrative determination rejecting their Proofs of Claim and to request review by the Court. Miller Decl. ¶¶ 16, 20-1 and Exs. A-E. To date, two (2) claimants objected to their rejected status. A.B. Data contacted these claimants by telephone and/or written correspondence and resolved the objections. Miller Decl. ¶ 16. On May 5, 2014, A.B. Data received from Sherri R. Lowe a Motion to Intervene with Settlement Agreement Distribution ("Motion to Intervene") (ECF No. 241), which appeared to be in response to A.B. Data's mailing Ms. Lowe a Final Disposition Notice informing her that her Recognized Loss calculated to zero and that she would not be entitled to receive a distribution from the Net Settlement Fund. The Court docketed the Motion to Intervene on May 19, 2014. Lead Plaintiff filed an opposition on May 23, 2014, and the Court denied Ms. Lowe's Motion to Intervene on May 27, 2014 (ECF Nos. 242, 243). Miller Decl. ¶ 17.

To date, A.B. Data has not received any other requests for judicial review from claimants. Miller Decl. ¶ 17.

## IV. RECOMMENDED DISTRIBUTION PLAN FOR NET SETTLEMENT FUND

Among the more than 381,766 Proofs of Claim received and processed to date, A.B. Data determined that 166,080 were eligible in whole or in part to receive a payment from the Net Settlement Fund. Miller Decl. ¶¶ 31-32 and Exs. H, I. A total of 14,774 were administratively rejected after exhaustion of the deficiency process (these claimants have not requested judicial review). *Id.*, ¶ 36. An additional 200,911 claims were calculated to have "No Recognized Loss" pursuant to the Plan of Allocation. *Id.*, ¶ 41.

Of the total 166,080 eligible Proofs of Claim, 39,033 are, but for their late submission, otherwise eligible. Miller Decl. ¶ 32. While these claims were late, they were received while the processing of timely claims was ongoing. *Id.*, ¶ 33. Due to the amount of time needed to process the timely claims received, the processing of these late claims did not delay the claims administration process nor will it delay the distribution of the Net Settlement Fund. *Id.* The late but otherwise valid claims have a total Recognized Loss of $66,802,743.55 and comprise approximately 3.5% of the overall total Recognized Loss of timely valid claims plus late but otherwise valid claims ($1,906,482,860.12). *Id.*, ¶ 32. Lead Plaintiff respectfully requests that these late but otherwise valid Proofs of Claim be approved as eligible for payment.[6]

Further, pursuant to the Full Notice and Plan of Allocation 113,812 of the 166,080 valid Proofs of Claim are not entitled to receive any distribution due to the *de minimis* nature of these claims. *Id.*, ¶¶ 25, 34-5. Accordingly, Lead Plaintiff respectfully requests that the Court authorize distribution of the Net Settlement Fund to the 52,268 eligible Authorized Claimants identified by A.B. Data, and reject those designated for rejection. The total Recognized Loss for these valid Claims is $1,885,063,211.87. *Id.*, ¶¶ 34-5.

Lead Plaintiff submits that the administration of the Settlement and the proposed Distribution Plan fully complies with the terms of the Stipulation and the Plan of Allocation approved by the Court. Accordingly, Lead Plaintiff respectfully requests that the Court enter the accompanying proposed Distribution Order.

---

[6] The Court has discretion to accept Proofs of Claim submitted after the approved filing deadline under the terms of the Plan of Allocation and the Stipulation. *See In re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 847 (E.D.N.Y. 1995). The Plan of Allocation set out in the Full Notice provides that the "Court may approve the Plan [of Allocation], or modify it without additional notice to the Settlement Class." Full Notice at 9. The Stipulation provides that "Any Settlement Class Member who fails timely to submit a valid Proof Claim . . . will not be entitled to receive any of the proceeds from the Net Settlement Fund, *except as otherwise ordered by the Court* . . . ." Stipulation ¶ 31 (emphasis added); *see also* Stipulation ¶ 34(b) (allowing for late claims to be accepted by order of the Court or in the discretion of Lead Counsel).

## V. DISPOSITION OF ANY UNCLAIMED/UNCASHED BALANCE

It is expected that not all of the checks to be distributed to Authorized Claimants will be cashed. In order to encourage Authorized Claimants to promptly cash their distributions, A.B. Data and Lead Plaintiff recommend that all the distribution drafts should bear the notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY 120 DAYS AFTER ISSUE DATE." Miller Decl. ¶ 46.

In order to allow a final distribution of any balance that may remain in the Settlement Fund after the initial distribution, whether by reason of returned funds, tax refunds, interest, uncashed drafts, or otherwise, Lead Plaintiff requests that the Court approve the following plan for distribution of the remaining funds, if any, as set forth in the Miller Declaration ¶¶ 46-7:

> If there is any balance remaining in the Net Settlement Fund after six (6) months from the date of the initial distribution of the Net Settlement Fund (whether by reason of returned checks, tax refunds, uncashed checks, or otherwise), A.B. Data shall, if feasible and economical, redistribute the remaining funds on a pro rata basis to the Eligible Claimants who cashed their initial distribution checks and who would receive at least $25.00 from such redistribution.
>
> With respect to any remaining funds after the initial distribution or the redistribution(s) of the Settlement Fund, if any, and after payment of taxes and reasonable claims administration fees and expenses incurred, and after A.B. Data has made reasonable and diligent efforts to contact Eligible Claimants who have not cashed their checks, further to the Stipulation, A.B. Data will distibute the balance in equal amounts to the following non-sectarian not-for-profit charitable organizations serving the public interest, without further Order of the Court: New York Legal Assistance Group; Food Bank for New York City; American Cancer Society; American Heart Association; and American Red Cross.

## VI. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

Pursuant to Paragraph 16 of the Stipulation, the Settlement Fund shall be used to pay fees and expenses incurred in connection with the administration and distribution of the Settlement. A.B. Data was retained to provide notice to the Settlement Class and administer the claims received with regard to the Settlement. In connection with that work, A.B. Data disseminated a

total of 2,720,012 Postcard Notices, 17,628 Full Notices, and 1,737,890 Supplemental Postcard Notices; received and responded to thousands of telephone communications from potential Class Members; and received and evaluated more than 381,765 Proofs of Claim. *See* Miller Decl. ¶¶ 4, 7- 8, 10-2.

The total fees and expenses for A.B. Data's work is $4,288,850.44.[7] *See* Miller Decl. ¶¶ 49-50; *see also id.* ¶¶ 7, 8, 12-41 (detailing work performed); and Ex. M. This amount includes all paid and unpaid fees and expenses that A.B. Data incurred to date and those that it expects to incur through the distribution of the Net Settlement Fund under the terms of the proposed Distribution Plan. This amount includes the additional cost of $505,160.00 to mail 1.7 million Supplemental Postcards Notices pursuant to the Court Order dated August 6, 2013 (ECF No. 212). Miller Decl. ¶ 49. The Supplemental Postcards Notices notified shareholders who received the Postcard Notice on or after July 15, 2013 that the deadline to elect exclusion from or object to the Settlement was extended from July 26, 2013 and August 2, 2013, respectively, to August 22, 2013, due to the failure of several large brokerage houses that had sole possession of street (actual class member) names and addresses, to timely either provide the lists or forward the notices to the class member account holders.

[7] This amount slightly exceeds the estimated $4 million in administrative fees and expenses by $288,850.44. *See* September 6, 2013 Final Approval Hearing Transcript at 22-23 (Dkt No. 226). The good faith estimate of $4 million was based on the fact that with only five weeks until the deadline to file a Proof of Claim, A.B. Data had received 57,400 Proofs of Claim. While there was an expectation that the claims submissions would increase substantially as the claims deadline approached, A.B. received 317,682 Proofs of Claim, which substantially exceeded expectations for anticipated claims submissions – as of the September 6, 2013 Final Approval Hearing. Finally, it should be noted, that Lead Counsel audited the A.B. Data invoices and confirmed that the rates charged per claim for processing matched the rate per claim quoted by A.B. Data in their Request for Proposal submission as attested to in the accompanying Miller Declaration. Miller Decl. ¶50.

If the Court approves A.B. Data's fees and expenses, the Settlment Fund will have approximately $29,762,893.98 to distribute to shareholders. Lead Plaintiff respectfully requests that the Court approve all of A.B. Data's outstanding fees and expenses.

## VII. BAR DATE, RELEASE OF CLAIMS, AND DOCUMENT RETENTION

As recommended by A.B. Data, in order to facilitate the efficient distribution of the Net Settlement Fund, there must be a final cut-off date after which no other claims may be accepted. *See* Miller Decl. ¶ 33. Additionally, all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or Net Settlement Fund, should be released and discharged from any and all claims arising out of such involvement. Accordingly, Lead Plaintiff respectfully requests that the Court order that no Proof of Claim received after July16, 2014 be eligible for payment for any reason whatsoever, and release and discharge from any and all claims arising out of the claims administration of all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing claims submitted herein, or otherwise involved in the administration of the Settlement Fund or the Net Settlement Fund.

Finally, Lead Plaintiff respectfully requests approval of A.B. Data's document retention plan, under which A.B. Data will destroy (i) all paper copies of Proofs of Claim and all supporting documentation one year after all funds in the Net Settlement Fund have been distributed and (ii) all electronic copies of Proofs of Claim three years after all funds in the Net Settlement Fund have been distributed. *See* Miller Decl. ¶ 51(c).

## VIII. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Distribution Order.

Dated: August 18, 2014

Respectfully submitted,

**BERMAN DEVALERIO**

*/s/ Joseph J. Tabacco, Jr.*
Joseph J. Tabacco Jr. (JJT-1994)
Nicole Lavallee
One California Street, Suite 900
San Francisco, CA 94111
Tel: (415) 433-3200

Glen DeValerio (admitted *pro hac vice*)
Kathleen M. Donovan-Maher (admitted *pro hac vice*)
Kristin J. Moody (admitted *pro hac vice*)
Steven Buttacavoli (admitted *pro hac vice*)
Daryl D. Andrews (admitted *pro hac vice*)
One Liberty Square
Boston, MA 02109
Tel: (617) 542-8300

Kyle G DeValerio (admitted *pro hac vice*)
3507 Kyoto Gardens Drive, Suite 200
Palm Beach Gardens, FL 33410
Tel: (561) 835-9400

*Lead Counsel for Lead Plaintiff*
*State Universities Retirement Systems of Illinois*

**LOWEY DANNENBERG COHEN & HART, P.C.**
Richard W. Cohen
White Plains Plaza
One North Broadway
White Plains, NY 10601
Tel: (914) 733-7239

*Liaison Counsel for Lead Plaintiff*
*State Universities Retirement System of Illinois*